BENJAMIN VAUGHN, DC Bar #999347
E-mail: Benjamin.vaughn@cfpb.gov
Phone: (202) 435-7964
GABRIEL HOPKINS, NY Bar #5242300
Email: Gabriel.hopkins@cfpb.gov
Phone: (202) 435-7842
1700 G Street, NW
Washington, DC 20552
Fax: (202) 435-7722

LEANNE E. HARTMANN, CA Bar #264787 - Local Counsel
E-mail: Leanne.hartmann@cfpb.gov
301 Howard St., Suite 1200
San Francisco, CA  94105
Phone: (415) 844-9787
Fax: (415) 844-9788

*Attorneys for Plaintiff Bureau of Consumer Financial Protection*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Bureau of Consumer Financial Protection, <br><br> Plaintiff, <br><br> vs. <br><br> Certified Forensic Loan Auditors, LLC; Andrew Lehman; and Michael Carrigan, <br><br> Defendants. | Case No.: <br><br> COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF |

**<u>Introduction</u>**

1. The Bureau of Consumer Financial Protection (Bureau) brings this action under §§ 1031, 1036(a), 1054, and 1055 of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531, 5536(a), 5564, 5565, and under § 626 of the Omnibus Appropriations Act, 2009 (as amended by § 1097 of the CFPA), 12 U.S.C. § 5538, and its implementing regulation, the Mortgage Assistance Relief Services Rule (Regulation O), 12 C.F.R. pt. 1015. This Court has subject-matter

1. jurisdiction over this action because it is brought under "Federal consumer financial law," 12 U.S.C. § 5565(a)(1), presents a federal question, 28 U.S.C. § 1331, and is brought by an agency of the United States, 28 U.S.C. § 1345.

2. The Bureau brings this action against Defendants Certified Forensic Loan Auditors, LLC (CFLA) and Andrew Lehman in connection with their offering, advertising, marketing, and selling of purported financial-advisory and mortgage-assistance-relief services, and against Defendant Michael Carrigan in connection with his substantial assistance in furtherance of CFLA's and Lehman's unlawful conduct.

## Venue

3. Venue is proper in this district because Defendants are located, reside, or do business in this district. 12 U.S.C. § 5564(f).

## Parties

4. The Bureau is an independent agency of the United States charged with regulating the offering and provision of consumer-financial products or services under "Federal consumer financial law," including the CFPA and Regulation O. 12 U.S.C. §§ 5481(12)(Q), 5481(14), 5491(a), 5531, 5538.

5. The Bureau is authorized to initiate proceedings, by its own attorneys, to enjoin violations of the CFPA and Regulation O and to secure such relief as may be appropriate in each case. 12 U.S.C. §§ 5564(a)-(b), 5565. This includes the rescission or reformation of contracts, the refund of moneys paid, restitution, disgorgement or compensation for unjust enrichment, payment of damages or other monetary relief, and civil money penalties. *Id.* § 5565(a)(2).

6. At all times relevant to this Complaint, CFLA was a limited-liability company incorporated under the laws of the State of California, with business

COMPLAINT
2

1  locations at 13101 W. Washington Blvd., Suite 444, Los Angeles, CA 90066 and
2  2600 South Shore Blvd., Suite 300, League City, TX 77573. CFLA offered or sold
3  financial-advisory or mortgage-assistance-relief services to consumers nationwide,
4  including within the State of California. CFLA is currently not in good standing and
5  has been suspended by the California Franchise Tax Board for failing to meet its
6  state tax obligations.

7.  At all times relevant to this Complaint, Lehman was CFLA's president and sole owner. Lehman had managerial responsibility for CFLA and directed every facet of its business, including participating in the development, marketing, and sale of CFLA's financial-advisory and mortgage-assistance-relief services. Lehman also set fees and oversaw ongoing interactions with consumers after financial-advisory and mortgage-assistance-relief services were sold, including managing payment collections from consumers, responding to regulatory and commercial inquiries (including from the Better Business Bureau), managing and responding to consumer complaints, and managing requests for refunds.

8.  Lehman co-mingled his finances with CFLA, including by withdrawing all excess funds from the company for personal use instead of taking a salary, and by filing combined tax returns on behalf of himself and CFLA. Under Lehman's direction, CFLA ignored corporate formalities. Lehman failed to keep accurate financial records for CFLA. And Lehman failed to meet CFLA's state tax requirements.

9.  At all times relevant to this Complaint, Carrigan was CFLA's sole auditor. Carrigan is a resident of the State of California and performed work for CFLA while residing in this district.

10. CFLA and Lehman, each acting alone or in concert with others, offer, provide, or arrange for others to provide "mortgage assistance relief services," as defined in Regulation O, 12 C.F.R. § 1015.2, and provide "financial advisory

services" within the meaning of the CFPA, 12 U.S.C. § 5481(15)(A)(viii), including but not limited to providing or offering to provide loan modification and foreclosure relief services.

11. Carrigan, in his role as an auditor working on CFLA's behalf, provided substantial assistance regarding the activities described in paragraph 10, within the meaning of Regulation O, 12 C.F.R. § 1015.6, and within the meaning of the CFPA, 12 U.S.C. § 5536(a)(3).

### CFLA's Business Practices

12. Since at least 2014, CFLA and Lehman have marketed and sold purported financial-advisory and mortgage-assistance-relief services to consumers. These services include what Defendants refer to as "Securitization Audits" (Audits) and litigation documents, which CFLA marketed together as a "Quiet Title Package." CFLA and Lehman claimed that these services would help consumers avoid foreclosures or negotiate loan modifications.

13. CFLA's Audits are reports that purport to summarize information about a borrower's mortgage, mortgage lender, mortgage servicer, and an asset-backed securitization trust that may have acquired the borrower's mortgage. The Audits are constituted largely of template materials and contain legal conclusions and recommendations. While there is some variation in the recommendations across the Audits, a set of core legal conclusions about mortgage securitization and its impacts on foreclosure are reproduced essentially verbatim in all of the Audits.

14. CFLA's litigation documents are templates of pleadings that CFLA and Lehman claim can be filed in connection with a homeowner's response to a foreclosure proceeding. They include a civil complaint, lis pendens, and temporary restraining order.

15. CFLA and Lehman charge and collect $1,495 from consumers before producing and delivering an Audit and its litigation documents, and before CFLA or Lehman obtain any mortgage-assistance-relief for consumers.

16. Since 2014, CFLA and Lehman sold, either directly or through intermediaries, more than 2,000 Audits to consumers.

17. On its website, in marketing emails, and on marketing telephone calls, CFLA and Lehman tell consumers that the Audits and litigation documents will provide them an effective defense to a foreclosure action brought by their lenders or help them obtain loan modifications from their lenders.

18. On its website, in marketing emails, and on marketing telephone calls, CFLA and Lehman tell consumers that the Audits and litigation documents will contain certain specific categories of cutting-edge, advanced analyses. CFLA and Lehman also tell consumers that the Audits will uncover information that will find defects in the assignment of a consumer's mortgage or in the securitization of the consumer's mortgage.

19. Testimonials on CFLA's website tout the effectiveness of the Audits, including claims that consumers were able to "beat the bank in court to save house [sic] and prevent eviction."

20. Statements CFLA and Lehman have made regarding its Audits and litigation documents include representations that:
   a. the Audits and litigation documents are a "Complete turn-key lawsuit to sue your lender for damages";
   b. the Audits will stop foreclosure;
   c. the Audits will keep homeowners in their homes;
   d. the Audits and litigation documents are a "Complete system" that "works with Pre-Foreclosure, During Foreclosure, or Post-Foreclosure";

  e. the Audits and litigation documents "prevent foreclosure [and] is [sic] a powerful and successful legal means of bringing suit against your mortgage lender";

  f. "90%" of CFLA's customers ended up obtaining favorable settlements with their lenders, which could involve delaying foreclosure, modifying the customer's mortgage, and even getting the property free and clear;

  g. the Audits are "advanced," "cutting edge," and tailored to each consumer;

  h. "Quiet Title Audits stop foreclosure and keep homeowners in their homes";

  i. the Audits contain "trade secrets"; and

  j. the Audits are "the most advanced Audit Report on Residential Mortgages in Existence."

21. These representations are misleading or false.

22. Reasonable consumers facing the prospect of losing their homes to foreclosure are likely to be misled by these representations.

23. These representations are material to consumers facing the prospect of losing their homes to foreclosure.

24. CFLA and Lehman made these or similar representations from at least July 2014 through the present.

25. Before August 2017, CFLA and Lehman made no effort to determine whether the Audits or litigation documents lead to their advertised outcomes.

26. Defendants make no effort to determine whether their Audits could help a consumer prevent foreclosure or obtain a favorable settlement either based on the consumer's jurisdiction or based on the consumer's circumstances. The form, structure, and content of each Audit and package of litigation documents are substantially similar to all others. Defendants make relatively minor changes to

particularize each Audit and package of litigation documents to each borrower such as the borrower's name, address, and specific mortgage lenders and servicers.

27. CFLA and Lehman knew the Audits were meritless and Lehman called some conclusions contained in the Audits "boilerplate" and "garbage."

28. Carrigan prepared the Audits from pre-drafted templates provided by CFLA, and he did not always read Audits in full before completing them.

29. Carrigan does not understand whether his conclusions are relevant to foreclosure, and he is generally unfamiliar with much of the content of the Audits. The conclusions contained in the Audits have no apparent support in current case law, which has led courts to excoriate CFLA's Audits.

30. CFLA and Lehman, through the website, on marketing calls, and in emails with consumers, make misleading claims, in various formulations, that the Audits and litigation documents are prepared by multiple experts with significant and particularized experience in the residential-mortgage industry.

31. Statements CFLA and Lehman made regarding the qualifications of CFLA's experts while marketing the Audits and litigation documents include claims that:

  a. the Quiet Title Package is prepared by the "Nation's Most Well Respected Attorneys in the Foreclosure Defense industry";
  b. CFLA has multiple experts on staff, and that Carrigan manages a team of 25 auditors;
  c. Carrigan is a "leading" expert in the residential-mortgage industry, with eight different licenses and certifications;
  d. CFLA is attorney-owned and operated;
  e. "CFLA is a subscriber of Bloomberg and uses the latest search";
  f. attorneys are involved in preparing the Audits and litigation documents;

COMPLAINT
7

  g. "CFLA Auditors have been admitted as Experts in nearly every jurisdiction nationwide";

  h. CFLA Auditors have "a minimum of 10 years of industry related experience [and] 40 Hours of Classroom Training on Mortgage Securitization"; and

  i. CFLA's Auditors have been "certified through the Nationally Recognized Mortgage Securitization Auditor Training Certification Class."

32. These representations are misleading or false.

33. Reasonable consumers facing the prospect of losing their homes to foreclosure are likely to be misled by these representations.

34. These representations are material to consumers facing the prospect of losing their homes to foreclosure.

35. Defendants made these or similar representations from at least July 2014 through the present.

36. CFLA does not have multiple experts performing Audits. At all times relevant to this Complaint, Carrigan has been CFLA's sole auditor.

37. CFLA is not a subscriber of Bloomberg, and does not have a subscription to a Bloomberg terminal.

38. Attorneys are not involved in the preparation of the Audits and litigation documents.

39. CFLA is not attorney-owned and operated.

40. Carrigan does not have any specialized and particularized experience in the residential-mortgage industry.

41. CFLA and Lehman concealed material facts regarding the Audits and litigation documents from consumers and misrepresented the effectiveness of the Audits and the qualifications of the individual that performed them in order to

convince consumers to purchase CFLA's services.

### Regulation O

42. Regulation O defines "mortgage assistance relief service" as "any service, plan, or program, offered or provided to the consumer in exchange for consideration, that is represented, expressly or by implication, to assist or attempt to assist the consumer with . . . [s]topping, preventing, or postponing any mortgage or deed of trust foreclosure sale for the consumer's dwelling, any repossession of the consumer's dwelling, or otherwise saving the consumer's dwelling from foreclosure or repossession … [or] [n]egotiating, obtaining, or arranging a modification of any term of a dwelling loan, including a reduction in the amount of interest, principal balance, monthly payments, or fees."  12 C.F.R. § 1015.2.

43. Regulation O defines "mortgage assistance relief service provider" as "any person that provides, offers to provide, or arranges for others to provide, any mortgage assistance relief service," other than the dwelling loan holder, the servicer of a dwelling loan, or any agent or contractor of such individual or entity. 12 C.F.R. § 1015.2.

44. Throughout the relevant period, Lehman controlled and participated in CFLA's acts and practices.

45. CFLA and Lehman are "mortgage assistance relief provider[s]" engaged in the provision of "mortgage assistance relief services" as those terms are defined in Regulation O. 12 C.F.R. § 1015.2. Lehman either personally provided Audits to consumers, or he arranged for CFLA to do so.

46. Carrigan provides substantial assistance, as that term is defined in Regulation O, 12 C.F.R. § 1015.6, to "mortgage assistance relief provider[s]" CFLA and Lehman.

47. Regulation O is a "Federal consumer financial law," as that term is

defined in the CFPA. 12 U.S.C. § 5481(12)(Q), (14).

48. Section 1036(a)(1)(A) of the CFPA provides that it is "unlawful . . . for any covered person or service provider . . . to offer or provide to a consumer any financial product or service not in conformity with Federal consumer financial law, or otherwise commit any act or omission in violation of a Federal consumer financial law." 12 U.S.C. § 5536(a)(1)(A).

49. A violation of Regulation O by a "covered person," as that term is defined in § 1002(6) of the CFPA, also constitutes a violation of § 1036(a)(1)(A) of the CFPA. 12 U.S.C. §§ 5481(6), 5536(a)(1)(A).

### The CFPA

50. Sections 1031 and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531, 5536(a)(1)(B), prohibit "covered person[s]" from engaging in any "unfair, deceptive, or abusive act or practice." Section 1036(a)(1)(A) also prohibits "covered person[s]" from "offer[ing] or provid[ing] to a consumer any financial product or service not in conformity with Federal consumer financial law, or otherwise commit[ting] any act or omission in violation of a Federal consumer financial law." 12 U.S.C. § 5536(a)(1)(A).

51. CFLA is a "covered person" within the meaning of the CFPA because it offers or provides consumer-financial products or services, including financial-advisory services, such as providing services to assist a consumer with debt management or debt settlement, modifying the terms of any extension of credit, or avoiding foreclosure. 12 U.S.C. § 5481(5), (6), (15)(A)(viii).

52. Section 1002(25) of the CFPA defines the term "related person" to mean "any director, officer, or employee charged with managerial responsibility for, or controlling shareholder of," or "any shareholder . . . or other person . . . who materially participates in the conduct of the affairs of" a non-bank provider of a

consumer-financial product or service. 12 U.S.C. § 5481(25)(C). Section 1002(25) further provides that a "related person" shall be "deemed to mean a covered person for all purposes of any provision of Federal consumer financial law." 12 U.S.C. § 5481(25)(B).

53. Lehman is a "related person" and a "covered person" within the meaning of the CFPA because he is CFLA's president and sole owner and has managerial responsibility for CFLA. 12 U.S.C. § 5481(6), (25)(B).

54. Section 1036(a)(3) of the CFPA prohibits any person from "knowingly or recklessly provid[ing] substantial assistance to a covered person or service provider in violation of the provisions of section 1031" and that "the provider of such substantial assistance shall be deemed to be in violation of that section to the same extent as the person to whom such assistance is provided." 12 U.S.C. § 5536(a)(3).

55. Carrigan provides substantial assistance, as that term is defined in § 1036(a)(3) of the CFPA, to covered persons CFLA and Lehman. 12 U.S.C. § 5536(a)(3).

## Count I

### Advance Fees in Violation of Regulation O

### (Defendants CFLA and Lehman)

56. The allegations in paragraph 1 through 55 are incorporated here by reference.

57. Regulation O prohibits any provider of mortgage-assistance-relief services from requesting or receiving payment of any fee or other consideration until the consumer has executed a written agreement between the consumer and the consumer's loan holder or servicer that incorporates the offer that the provider obtained from the loan holder or servicer. 12 C.F.R. § 1015.5(a).

58. In the course of providing, offering to provide, or arranging for others to provide mortgage-assistance-relief services, CFLA and Lehman requested or received payment from consumers before those consumers executed a written agreement with their loan holder or servicer that incorporated any offer of mortgage-assistance-relief that CFLA or Lehman obtained from the loan holder or servicer, in violation of Regulation O. 12 C.F.R. § 1015.5(a).

## Count II

### Prohibited Representations in Violation of Regulation O
### (Defendants CFLA and Lehman)

59. The allegations in paragraph 1 through 55 are incorporated here by reference.

60. Regulation O prohibits any provider of mortgage-assistance-relief services from misrepresenting, expressly or by implication: "the likelihood of negotiating, obtaining, or arranging any represented service or result." 12 C.F.R. § 1015.3(b)(1).

61. Regulation O also prohibits making a representation about, among other things, the benefits, performance, or efficacy of any mortgage-assistance-relief service unless, at the time such representation is made, the provider "possesses and relies upon competent and reliable evidence that substantiates that the representation is true." 12 C.F.R. § 1015.3(c).

62. In the course of providing, offering to provide, or arranging for others to provide mortgage-assistance-relief services, CFLA and Lehman misrepresented, expressly or by implication, material aspects of their services, including but not limited to the likelihood of obtaining mortgage-loan modifications, the likelihood of successfully defending against foreclosure actions, and the likelihood of successfully bringing an affirmative action against mortgage lenders.

63. When CFLA and Lehman made those representations they were not in possession of, nor did they rely upon, competent and reliable evidence that substantiated that the representations were true.

64. CFLA's and Lehman's representations, as set forth above, are prohibited representations in violation of Regulation O. 12 C.F.R. §§ 1015.3(b)(1), 1015.3(c).

## Count III

### Deceptive Acts or Practices in Violation of the CFPA

### (Defendants CFLA and Lehman)

65. The allegations in paragraph 1 through 55 are incorporated here by reference.

66. The CFPA prohibits deceptive acts or practices in connection with the offering of consumer-financial products or services. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

67. A representation or omission is deceptive if it is likely to mislead consumers acting reasonably under the circumstances and the information is material to consumers.

68. In numerous instances in connection with offering or providing mortgage-assistance-relief services, CFLA and Lehman have represented, expressly or by implication, that:

    a. the Audits and litigation documents will help consumers avoid foreclosure, obtain settlements to foreclosure proceedings, remain in their homes, or negotiate loan modifications; and

    b. the Audits are prepared by experts.

69. In fact, CFLA's Audits and litigation documents are not prepared by experts and are not an effective means to avoid foreclosure, obtain settlements to

foreclosure proceedings, to negotiate loan modifications, or for consumers to otherwise remain in their homes.

70. These representations are material and likely to mislead consumers acting reasonably under the circumstances.

71. CFLA's and Lehman's representations, as set forth above, constitute deceptive acts or practices in violation of the CFPA. 12 U.S.C. §§ 5531, 5536.

## Count IV

### Abusive Acts or Practices in Violation of the CFPA

### (Defendants CFLA and Lehman)

72. The allegations in paragraph 1 through 55 are incorporated here by reference.

73. The CFPA prohibits abusive acts or practices, including taking unreasonable advantage of a consumer's "lack of understanding . . . of the material risks, costs, or conditions of the product or service." 12 U.S.C. §§ 5531(d)(2)(A), 5536.

74. CFLA's consumers generally did not understand all of their rights and obligations under relevant foreclosure law and other laws implicating residential mortgages.

75. Consumers generally did not understand the complexities of the residential-mortgage industry and foreclosure-defense law.

76. Consumers generally lacked the expertise to determine the effectiveness of CFLA's Audits and litigation documents, or otherwise evaluate the Audit's value, or utility, or the risks associated with purchasing or using the Audit.

77. Consumers generally did not understand and were not in a position to evaluate the accuracy of CFLA's and Lehman's marketing representations or the quality of the mortgage-assistance-relief services that CFLA and Lehman sold.

78. CFLA and Lehman promised consumers, expressly and by implication, a solution to their mortgage problems.

79. By marketing and selling Audits and litigation documents that were not effective and did not contain the information described, CFLA and Lehman took unreasonable advantage of consumers' inability to understand the material risks, costs, and conditions of the services CFLA and Lehman were selling.

80. A reasonable consumer with an understanding of issues relevant to foreclosure would not purchase a CFLA Audit. CFLA and Lehman concealed material facts regarding the Audits and litigation documents from consumers and misrepresented the effectiveness of the Audits and the qualifications of the individual that performed them in order to convince consumers to purchase CFLA's services.

81. Consumers did not have the opportunity to detect that concealment because they paid for the Audits and litigation documents before they were delivered.

82. Even then, the Audits appeared, on their face, to be legitimate documents with comprehensive legal analyses of mortgages and the mortgage industry.

83. Ultimately, CFLA and Lehman were able to sell the Audits to consumers because consumers lacked the ability to parse the conclusions and analysis in the Audits and discover their lack of merit.

84. CFLA's and Lehman's marketing, production and sale of Audits and litigation documents took unreasonable advantage of consumers' lack of understanding of the material risks, costs, and conditions of the Audits and supporting litigation documents, in violation of the CFPA's prohibition on abusive acts or practices. 12 U.S.C. §§ 5531(d)(2)(A), 5536.

## Count V

## Violations of the CFPA Arising from Regulation O Violations

## (Defendants CFLA and Lehman)

85. The allegations in paragraph 1 through 55 are incorporated here by reference.

86. Section 1036(a)(1)(A) of the CFPA provides that it is "unlawful . . . for any covered person or service provider . . . to offer or provide to a consumer any financial product or service not in conformity with Federal consumer financial law, or otherwise commit any act or omission in violation of a Federal consumer financial law." 12 U.S.C. § 5536(a)(1)(A).

87. Because CFLA and Lehman are "covered persons" who violated Regulation O, they also violated § 1036(a)(1)(A) of the CFPA. 12 U.S.C. § 5536(a)(1)(A).

## Count VI

## Substantial Assistance of

## CFLA's and Lehman's Deceptive and Abusive Acts or Practices

## (Defendant Carrigan)

88. The allegations in paragraph 1 through 55 are incorporated here by reference.

89. Section 1036(a)(3) of the CFPA prohibits any person from "knowingly or recklessly provid[ing] substantial assistance to a covered person or service provider in violation of the provisions of section 1031" and that "the provider of such substantial assistance shall be deemed to be in violation of that section to the same extent as the person to whom such assistance is provided." 12 U.S.C. § 5536(a)(3).

90. As CFLA's sole auditor and individual responsible for producing the

Audits, Carrigan provided substantial assistance to CFLA and Lehman in their deceptive and abusive acts or practices.

91. Carrigan knew or recklessly avoided knowing that the Audits were not an effective defense in foreclosure.

92. Carrigan knew or recklessly avoided knowing that CFLA and Lehman were engaged in making deceptive representations to consumers regarding the effectiveness, content, and expertise of the individuals engaged in the preparation of the Audits.

93. To the extent Carrigan was not actually aware of the marketing methods CFLA and Lehman used to sell the Audits, he recklessly avoided knowing what those marketing methods were, including by failing to review CFLA's website.

94. Carrigan knew or recklessly avoided knowing that the conclusions in the Audits lacked merit.

95. Carrigan knew or recklessly avoided knowing that the Audits contained factual inaccuracies.

96. Carrigan knew or recklessly avoided knowing that the Audits were created from templates and only minimally tailored to an individual borrower's circumstances.

97. To the extent Carrigan was not actually aware of the contents of the Audits he produced, he recklessly avoided knowing their contents, including by:
   a. not systematically reviewing the Audits;
   b. failing to review the Audits for accuracy;
   c. failing to review his affidavits for accuracy;
   d. failing to assess the appropriateness or correctness of the conclusions in the Audits; and
   e. failing to review descriptions of the Audits on CFLA's website.

98. Carrigan knew or recklessly avoided knowing that he was not an

expert in the residential mortgage industry or in foreclosure defenses.

99. Carrigan provided substantial assistance to CFLA and Lehman in their deceptive and abusive acts or practices, in violation of § 1036(a)(3) of the CFPA. 12 U.S.C. § 5536(a)(3).

## Count VII
## Substantial Assistance of CFLA and Lehman's Prohibited Representations
## (Defendant Carrigan)

100. The allegations in paragraph 1 through 55 are incorporated here by reference.

101. Regulation O provides that it is a violation "for a person to provide substantial assistance or support to any mortgage-assistance-relief service provider when that person knows or consciously avoids knowing that the provider is engaged in any act or practice that violates" the rule. 12 C.F.R. § 1015.6.

102. Carrigan knew or consciously avoided knowing that CFLA and Lehman were engaged in making deceptive representations to consumers regarding the effectiveness, content, and expertise of the individuals engaged in the preparation of the Audits.

103. To the extent Carrigan was not actually aware of the marketing methods CFLA and Lehman used to sell the Audits, he consciously avoided knowing what those marketing methods were, including by failing to review CFLA's website.

104. Carrigan knew or consciously avoided knowing that the Audits were not a legitimate or effective source of foreclosure defenses.

105. Carrigan knew or consciously avoided knowing that CFLA's customers were generally homeowners in foreclosure.

106. Carrigan knew or consciously avoided knowing that CFLA used deceptive representations to sell the Audits to homeowners in foreclosure.

107. To the extent Carrigan was not actually aware of the contents of the Audits he produced, he consciously avoided knowing their contents, including by:

    f. not systematically reviewing the Audits;

    g. failing to review the Audits for accuracy;

    h. failing to review his affidavits for accuracy;

    i. failing to assess the appropriateness or correctness of the conclusions in the Audits; and

    j. failing to review descriptions of the Audits on CFLA's website.

108. Carrigan provided substantial assistance or support to CFLA and Lehman when Carrigan knew or consciously avoided knowing that CFLA and Lehman were engaged in prohibited representations in violation of Regulation O. 12 C.F.R. § 1015.6.

## Prayer for Relief

WHEREFORE, the Bureau requests that the Court:

    a. permanently enjoin Defendants from committing future violations of Regulation O and the CFPA and enter such other injunctive relief as appropriate;

    b. award restitution, jointly and severally, against Defendants in the amount of all unlawfully collected fees;

    c. order disgorgement of ill-gotten revenues against Defendants or compensation for unjust enrichment;

    d. assess civil money penalties against Defendants;

    e. order the rescission or reformation of contracts where necessary to redress injury to consumers;

    f. order payment of damages or other monetary relief;

    g. order limits on the activities or functions of Defendants;

    h. award costs against Defendants; and

      i. award additional relief as the Court may determine to be just and proper.

Dated September 6, 2019

Respectfully Submitted,

/s/ Leanne E. Hartmann
Leanne E. Hartmann
Benjamin Vaughn (pro hac pending)
Gabriel Hopkins (pro hac pending)

Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552

*Attorneys for Plaintiff*
*Bureau of Consumer Financial Protection*