UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Bureau of Consumer Financial Protection, )<br><br>Plaintiff, )<br><br>vs. )<br><br>Certified Forensic Loan Auditors, LLC; )<br>Andrew Lehman; and Michael Carrigan, )<br><br>Defendants. )<br> ) | Case No.: 2:19-cv-07722-ODW (JEMx)<br><br>STIPULATED FINAL JUDGMENT AND ORDER AS TO DEFENDANT MICHAEL CARRIGAN |

The Bureau of Consumer Financial Protection ("Bureau") commenced this civil action on September 5, 2019 to obtain injunctive relief, restitution, and civil penalties from Certified Forensic Loan Auditors, LLC (CFLA), Andrew Lehman, and Michael Carrigan. The Complaint alleges violations of sections 1031(a) and 1036(a) of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531(a), 5536(a)(1)(A), and Regulation O, 12 C.F.R. §§ 1015.3(c) and 1015.5(a) (2011) against CFLA and Lehman in connection with their offering, advertising, marketing, and selling of purported financial-advisory and mortgage-assistance-relief services, and against

Defendant Michael Carrigan in connection with his substantial assistance in furtherance of CFLA's and Lehman's unlawful conduct.

The Bureau and Defendant Carrigan, agree to entry of this Stipulated Final Judgment and Order ("Order"), without adjudication of any issue of fact or law, to settle and resolve all matters in dispute arising from the conduct alleged in the Complaint.

**THEREFORE, it is ORDERED:**

## <u>FINDINGS</u>

1. This Court has jurisdiction over the parties and the subject matter of this action and venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) and (c), and 12 U.S.C. § 5564(f).

2. The Complaint alleges claims upon which relief may be granted.

3. The relief provided in this Order is appropriate and available pursuant to sections 1054 and 1055 of the CFPA, 12 U.S.C. §§ 5564 and 5565.

4. Defendant Carrigan waives all rights to seek judicial review or otherwise challenge or contest the validity of this Order and any claim he may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order. Each Party agrees to bear its own costs and expenses, including, without limitation, attorneys' fees.

5. Defendant Carrigan neither admits nor denies any allegations in the Complaint, except as specified in this Order. For purposes of this Order, Defendant Carrigan admits the facts necessary to establish the Court's jurisdiction over Defendant Carrigan and the subject matter of this action.

6. Entry of this Order is in the public interest.

## <u>DEFINITIONS</u>

7.     The following definitions apply to this Order:

a.  "**Affected Consumers**" includes any consumer who, since July 1, 2014, purchased a Securitization Audit and/or a Quiet Title Package from CFLA.

b.  "**Assisting Others**" means helping, aiding, training, or providing support to others, including but not limited to:

   i.   consulting in any form whatsoever;

   ii.  formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including, but not limited to, any telephone sales script, direct mail solicitation, or the text of any Internet website, email, or other electronic communication;

   iii. providing names of, or contributing to the generation of, potential customers; and

   iv.  participating in or providing services related to the offering, sale, or servicing of a product, or the collection of payments for a product.

c.  "**CFLA**" means Certified Forensic Loan Auditors, LLC, and its successors and assigns.

d.  "**Defendant Carrigan**" means Michael Carrigan, and any other names by which he might be known;

e.  "**Defendant Lehman**" means Andrew Lehman, and any other names by which he might be known;

f.  "**Effective Date**" means the date on which the Order is entered by the Court.

g.  "**Enforcement Director**" means the Assistant Director of the Office of Enforcement for the Consumer Financial Protection Bureau, or his or her delegate.

h.  "**Financial Product or Service**" is synonymous in meaning and equal in scope to the definition of the term, as of the Effective Date, in Section 1002(15) of the Consumer Financial Protection Act, 12 U.S.C. § 5481(15), and, subject to applicable limitations on the Bureau's enforcement authority, includes, but is not limited to:

   i.  providing financial advisory services to consumers on individual financial matters or relating to proprietary financial products or services;

   ii.  providing credit counseling to any consumer;

   iii.  providing services to assist a consumer with debt management or debt settlement, modifying the terms of any extension of credit, or avoiding foreclosure; and

   iv.  auditing, reviewing, or analyzing the origination, transfer, or securitization of residential mortgages.

i.  "**Mortgage Assistance Relief Service**" is synonymous in meaning and equal in scope to the definition of the term, as of the Effective Date, in Regulation O, 12 C.F.R. 1015.2, and includes, but is not limited to:

   i.  Any service, plan, or program, offered or provided to the consumer in exchange for consideration, that is represented, expressly or by implication, to assist or attempt to assist the consumer with any of the following:

      1.  Stopping, preventing, or postponing any mortgage or deed of trust foreclosure sale for the consumer's dwelling, any

repossession of the consumer's dwelling, or otherwise saving the consumer's dwelling from foreclosure or repossession;

    2. Negotiating, obtaining, or arranging a modification of any term of a dwelling loan, including a reduction in the amount of interest, principal balance, monthly payments, or fees; and

    ii. Obtaining any forbearance or modification in the timing of payments from any dwelling loan holder or servicer on any dwelling loan.

j. **"Related Consumer Action"** means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against Defendant based on substantially the same facts as described in the Complaint.

k. **"Relevant Period"** includes the period from July 1, 2014 to the Effective Date.

l. **"Securitization Audit"** means the audits of residential mortgages that CFLA marketed and sold from July 1, 2014 to the Effective Date.

m. **"Quiet Title Package"** means the package of Securitization Audit and supporting litigation documents that CFLA marketed and sold from July 1, 2014 to the effective date.

## <u>ORDER</u>

## CONDUCT RELIEF

## I.

## Permanent Ban on Offering or Providing Mortgage Assistance Relief Services and Consumer Financial Products or Services

**IT IS ORDERED that:**

8. Defendant Carrigan, whether acting directly or indirectly, is permanently restrained from:

    a. providing, advertising, marketing, promoting, offering for sale, selling, or producing any Mortgage Assistance Relief Service or Financial Product or Service; and

    b. Assisting Others in, or receiving any remuneration or other consideration from, the provision, advertising, marketing, promoting, offering for sale, sale or production of any Mortgage Assistance Relief Service or Financial Product or Service.

Nothing in this Order shall be read as an exception to this Paragraph with the sole exception that Defendant Carrigan is not restrained from engaging in activities as a person that performs income tax preparation activities for consumers as defined by 12 U.S.C. § 5481(23), or from providing state or local income tax preparation services to consumers.

## II.

### Customer Information

**IT IS FURTHER ORDERED that:**

9. Defendant Carrigan whether acting directly or indirectly, may not:

    a. disclose, use, or benefit from customer information, including the name, address, telephone number, email address, Social Security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that Defendant Carrigan obtained before the Effective Date in

connection with providing Mortgage Assistance Relief Services and Financial Products or Services;

    b.   attempt to collect, sell, assign, or otherwise transfer any right to collect payment from any consumer who purchased or agreed to purchase Mortgage Assistance Relief Services or Financial Products or Services from Defendants.

*However*, customer information may be disclosed if requested by a government agency or required by law, regulation, or court order.

## MONETARY PROVISIONS

## III.

## Order to Pay Civil Money Penalty

**IT IS FURTHER ORDERED** that:

10.    Under Section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law alleged in the Complaint and continuing until the Effective Date, and taking into account the factors in 12 U.S.C. § 5565(c)(3), Defendant Carrigan must pay a civil money penalty of $493,403.04 to the Bureau; *however*, full payment of this civil money penalty will be suspended upon satisfaction of the obligations in this Section, and Section V, Additional Monetary Provisions; and subject to Section IV, Effect of Misrepresentation or Omission of Financial Condition, of this Order.

11.    Within 10 days of the Effective Date, Defendant Carrigan must pay a civil money penalty in the amount of $5,000 by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions, in partial satisfaction of the civil money penalty referenced in Paragraph 10 of this Section.

12.     The civil money penalty paid under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by Section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

13.     Defendant Carrigan must treat the civil money penalty paid under this Order as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, Defendant Carrigan may not:

      a.  Claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

      b.  Seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

Defendant Carrigan agrees that the civil penalty imposed by the Order represents a civil penalty owed to the United States Government, is not compensation for actual pecuniary loss, and, thus, as to Carrigan, it is not subject to discharge under the Bankruptcy Code under 11 U.S.C. § 523(a)(7).

## IV.

**Effect of Misrepresentation or Omission Regarding Financial Condition**

**IT IS FURTHER ORDERED** that:

14.     The suspension of the civil money penalty in Section III of this Order is expressly premised on the truthfulness, accuracy, and completeness of Defendant Carrigan's affirmed financial statements and supporting documents submitted to the Bureau on or about June 2, 2019, which Defendant Carrigan asserts are truthful, accurate, and complete, and which include:

      a.   Financial Statements of Defendant Carrigan, including the attachments, signed on June 2, 2019 and submitted to the Bureau on or about June 2, 2019;

      b.   Defendant Carrigan's oral testimony provided on January 8, 2019.

15.    If upon motion by the Bureau, the Court determines that Defendant Carrigan has failed to disclose any material asset or that any of his financial statements or oral testimony contain any material misrepresentation or omission, including materially misstating the value of any asset, the Court shall terminate the suspension of the civil money penalty entered in Section III and, without further adjudication, shall reinstate the civil money penalty entered in Section III and the full civil money penalty of $493,403.04 shall be immediately due and payable, less any amounts paid to the Bureau under Section III of this Order.

16.    If the Court terminates the suspension of the civil money penalty under this Section, the Bureau will be entitled to interest on the civil money penalty, computed from the date of entry of this Order, at the rate prescribed by 28 U.S.C. § 1961, as amended, on any outstanding amounts not paid.

17.    Provided, however, that in all other respects this Order shall remain in full force and effect unless otherwise ordered by the Court; and, provided further, that proceedings instituted under this provision would be in addition to, and not in lieu of any other civil or criminal remedies as may be provided by law, including any other proceedings that the Bureau may initiate to enforce this Order.

## V.

## Additional Monetary Provisions

**IT IS FURTHER ORDERED** that**:**

18.    In the event of any default on Defendant Carrigan's obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will

---

accrue on any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

19.    Defendant Carrigan relinquishes all dominion, control, and title to the funds paid under this Order to the fullest extent permitted by law and no part of the funds may be returned to Defendant Carrigan.

20.    The facts alleged in the Complaint will be taken as true and be given collateral estoppel effect, without further proof, in any proceeding based on the entry of the Order, or in any subsequent civil litigation by or on behalf of the Bureau in a proceeding to enforce its rights to any payment or monetary judgment under this Order.

21.    The facts alleged in the Complaint establish all elements necessary to sustain an action by the Bureau under to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and for such purposes this Order will have collateral estoppel effect against each Defendant, even in such Defendants' capacity as debtor-in-possession.

22.    Under 31 U.S.C. § 7701, Defendant Carrigan, unless he already has done so, must furnish to the Bureau his taxpayer identifying numbers, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

23.    Within 30 days of the entry of a final judgment, Order, or settlement in a Related Consumer Action, Defendant Carrigan must notify the Enforcement Director of the final judgment, Order, or settlement in writing. That notification must indicate the amount of redress, if any, that Defendant Carrigan paid or is required to pay to consumers and describe the consumers or classes of consumers to whom that redress has been or will be paid.

24.    To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, Defendant Carrigan may not argue that he is entitled to, nor may Defendant Carrigan benefit by, any offset or reduction of any monetary remedies imposed in the Related Consumer Action because of the civil money penalty paid in this

action or because of any payment that the Bureau makes from the Civil Penalty Fund. If the court in any Related Consumer Action offsets or otherwise reduces the amount of compensatory monetary remedies imposed against Defendant Carrigan based on the civil money penalty paid in this action or based on any payment that the Bureau makes from the Civil Penalty Fund, Defendant Carrigan must, within 30 days after entry of a final order granting such offset or reduction, notify the Bureau and pay the amount of the offset or reduction to the U.S. Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

25.    Under Section 604(a)(I) of the Fair Credit Reporting Act, 15 U.S.C.§ 168l b(a)(1), any consumer reporting agency may furnish a consumer report concerning any Defendant to the Bureau, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

## COMPLIANCE PROVISIONS
### VI.
### Reporting Requirements

**IT IS FURTHER ORDERED** that:

26.    Defendant Carrigan must notify the Bureau of any development that may affect compliance obligations arising under this Order, including but not limited to, the filing of any bankruptcy or insolvency proceeding by or against Defendant Carrigan; or a change in Defendant Carrigan's name or address. Defendant Carrigan must provide this notice at least 30 days before the development or as soon as practicable after the learning about the development, whichever is sooner.

27.    Within 7 days of the Effective Date, Defendant Carrigan must:

a.  Designate at least one telephone number and email, physical, and postal address as points of contact, which the Bureau may use to communicate with Defendant Carrigan;

b.  Identify all businesses for which Defendant Carrigan is the majority owner, or that Defendant Carrigan directly or indirectly controls, by all of their names, telephone numbers, and physical, postal, email, and Internet addresses;

c.  Describe the activities of each such business, including the products and services offered, and the means of advertising, marketing, and sales.

d.  Identify Defendant Carrigan's telephone numbers and all email, Internet, physical, and postal addresses, including all residences;

e.  Describe in detail Defendant Carrigan's involvement in any business for which he performs services in any capacity or which he wholly or partially owns, including Defendant Carrigan's title, role, responsibilities, participation, authority, control, and ownership.

28.  Defendant Carrigan must report any change in the information required to be submitted under Paragraph 27 at least 30 days before the change or as soon as practicable after learning about the change, whichever is sooner.

29.  Within 90 days of the Effective Date, and again one year after the Effective Date, Defendant Carrigan must submit to the Enforcement Director an accurate written compliance progress report affirmed under penalty of perjury (Compliance Report), which, at a minimum:

a.  Lists each applicable paragraph and subparagraph of the Order and describes in detail the manner and form in which Defendant Carrigan has complied with each such paragraph and subparagraph of this Order;

b.  Attaches a copy of each Order Acknowledgment obtained under Section VII, unless previously submitted to the Bureau.

After the one-year period, Defendant Carrigan must submit to the Enforcement Director additional Compliance Reports within 14 days of receiving a written request from the Bureau.

## VII.

## Order Distribution and Acknowledgment

**IT IS FURTHER ORDERED** that,

30.     Within 7 days of the Effective Date, Defendant Carrigan must submit to the Enforcement Director an acknowledgment of receipt of this Order, affirmed under penalty of perjury.

31.     For 5 years from the Effective Date, Defendant Carrigan, for any business for which he is the majority owner or which he directly or indirectly controls, must deliver a copy of this Order to any business entity resulting from any change in structure referred to in Section VI, Reporting Requirements, any future board members and executive officers, as well as to any managers, employees, Service Providers, or other agents and representatives who will have responsibilities related to the subject matter of the Order before they assume their responsibilities.

32.     Defendant Carrigan must secure a signed and dated statement acknowledging receipt of a copy of this Order, ensuring that any electronic signatures comply with the requirements of the E-Sign Act, 15 U.S.C. § 7001 *et seq.*, within 30 days of delivery, from all persons receiving a copy of this Order under this Section.

## VIII.

## Recordkeeping

**IT IS FURTHER ORDERED** that

33.     Defendant Carrigan, for any business for which Defendant Carrigan is a majority owner or which he directly or indirectly controls, must create, for at least ten (10) years from the Effective Date, the following business records: all documents and records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Bureau.

34.     Defendant Carrigan must retain these documents for at least ten (10) years after creation and make them available to the Bureau upon the Bureau's request.

## IX.

### Notices

**IT IS FURTHER ORDERED** that:

35.     Unless otherwise directed in writing by the Bureau, Defendant Carrigan must provide all submissions, requests, communications, or other documents relating to this Order in writing, with the subject line, "CFPB v. Certified Forensic Loan Auditors, LLC, et al., Case No. [Docket #]," and send them by overnight courier or first-class mail to the below address and contemporaneously by email to Enforcement_Compliance@cfpb.gov:

Assistant Director for Enforcement

Bureau of Consumer Financial Protection

ATTENTION: Office of Enforcement

1700 G Street, N.W.

Washington D.C. 20552

# X.

## Cooperation with the Bureau

**IT IS FURTHER ORDERED** that:

36. Defendant Carrigan must cooperate fully to help the Bureau determine the identity and location of, and the amount of injury sustained by, each Affected Consumer. Defendant Carrigan must provide such information in his or his agents' possession or control within 14 days of receiving a written request from the Bureau.

37. Defendant Carrigan must cooperate fully with the Bureau in this matter and in any investigation related to or associated with the conduct described in the Complaint, including the identification of CFLA's current and former employees and contractors and current and former customers. Defendant Carrigan must provide truthful and complete information, evidence, and testimony. Defendant Carrigan must appear for interviews, discovery, hearings, trials, and any other proceedings that the Bureau may reasonably request upon 10 days written notice, or other reasonable notice, at such places and times as the Bureau may designate, without the service of compulsory process.

# XI.

## Compliance Monitoring

**IT IS FURTHER ORDERED** that, to monitor Defendant Carrigan's compliance with this Order, including the financial representations upon which part of the civil money penalty was suspended:

38. Within 14 days of receipt of a written request from the Bureau, Defendant Carrigan must submit additional compliance reports or other requested non-privileged information, related to requirements of this Order, which must be affirmed under penalty

of perjury; provide testimony related to requirements of this Order and Defendant Carrigan's compliance with those requirements, which must be affirmed under penalty; or produce non-privileged documents related to requirements of this Order and Defendant Carrigan's compliance with those requirements.

39.    For purposes of this Section, the Bureau may communicate directly with Defendant Carrigan, unless Defendant Carrigan or counsel he retains notifies the Bureau that he has retained counsel related to these communications.

40.    Defendant Carrigan must permit Bureau representatives to interview about the requirements of this Order and Defendant Carrigan's compliance with those requirements any employee or other person affiliated with Defendant Carrigan who has agreed to such an interview. The person interviewed may have counsel present.

41.    Nothing in this Order will limit the Bureau's lawful use of compulsory process, under 12 C.F.R. § 1080.6.

## XII.
## Retention of Jurisdiction

**IT IS FURTHER ORDERED** that:

42.    The Court will retain jurisdiction of this matter for the purpose of enforcing this Order.

## XIII.

### Service

**IT IS FURTHER ORDERED that:**

43.    This Order may be served upon Defendant Carrigan by electronic mail, certified mail, or United Parcel Service, either by the United States Marshal, the Clerk of the Court, or any representative or agent of the Bureau.

**IT IS SO ORDERED**.

October 29, 2019

_____

Otis D. Wright, II
United States District Judge