Maryam Atighechi, Esq. SBN 249318
maryam@familylaw-firm.com
ATIGHECHI LAW GROUP
9465 Wilshire Blvd., Suite 300
Beverly Hills, California 90212
Telephone: (424) 284-4258
Facsimile:  (310) 773-4541

Attorney(s) For Defendants,
CERTIFIED FORENSIC
LOAN AUDITORS, LLC, AND
ANDREW P. LEHMAN

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| BUREAU OF CONSUMER FINANCIAL PROTECTION, <br><br> Plaintiff, <br><br> vs. <br><br> CERTIFIED FORENSIC LOAN AUDITORS, LLC, a Texas Corporation, ANDREW P. LEHMAN, ET AL., <br><br> Defendants. | CASE NO.: 2:19−cv−07722 <br><br> DEFENDANT ANDREW LEHMAN AND CERTIFIED FORENSIC LOAN AUDITORS LLC NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF <br><br> DATE:  December 9, 2019 <br> TIME:  1:30 p.m. <br> DEPT.:  5D <br> JUDGE: Honorable Otis D. Wright II |

TO THE CLERK OF THE COURT, ALL INTERESTED PARTIES HEREIN, AND, TO THEIR RESPECTIVE ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that, on December 9, 2019 in Department  5D of the above-entitled court located at 350 W. 1st Street, Los Angeles, CA 90012, 5th Floor, Los Angeles, CA 90012-3332, Los Angeles, California 90012, Defendants will hereby move the court for Under Federal Rules of Civil Procedure 12(b)(6) for a motion to dismiss Plaintiff's Complaint failure to state a claim upon which relief may be granted.  This motion is made following conferences of counsel, pursuant to C.D.

Cal.R. 7-3, which took place on October 28, 2019, October 29, 2019, October 30, 2019 and November 1, 2019.

## I.     **RELIEF REQUESTED**

A.  Dismissal of all claims as the Bureau of Consumer Financial Protection ("CFPB") is an unconstitutional establishment as it violates the separation of powers;

B.  Dismissal of Count I, II and III as Defendant Andrew Lehman and CFLA do not provide "mortgage relief assistance" therefore are not under the authority of CFPB and are not in Violation of Regulation O; 12 C.F.R. Section 1015.

C.  Dismissal of Count I, II and III as Defendant Andrew Lehman and CFLA do not do business with consumers as defined under 12 U.S.C. Section 5536.

D.  Dismissal of Count I, II and III as Defendant Andrew Lehman and CFLA do not provide "consumer financial products or services" as defined under 12 U.S.C. Section 5531(a).

E.  Dismissal of Count III and IV as Plaintiff Has No authority under 12 U.S.C. Section 5531 (a) to bring a claim as Defendants have not engaged in a practice that is likely to cause substantial injury to consumers and the any such alleged substantial injury is outweighed by countervailing benefits to consumers or to competition.

F.  Dismissal of Count IV of the CFPB's Claims of Abusive Acts or Practices in Violation of the CFPA Since the CFPB Has No Authority Under The CFPA to Declare An Act or Practice Abusive Under 12 U.S.C. Section 5531 Because CFLA Does Not Materially interfere with the ability of a consumer to understand a term or condition of a consumer financial product or service; CFLA Does Not take unreasonable advantage of— a lack of understanding on the part of the consumer of the material risks,

costs, or conditions of the product or service; CFLA Does Not take unreasonable advantage of—the inability of the consumer to protect the interests of the consumer in selecting or using a consumer financial product or service; CFLA Does Not take unreasonable advantage of—the reasonable reliance by the consumer on a covered person to act in the interests of the consumer.

Dated:  November 4, 2019                    Respectfully submitted,


                                            _____/s/Maryam Atighechi_____
                                            By: Maryam Atighechi, Esq.
                                            ATIGHECHI LAW GROUP
                                            Attorney(s) For Defendants,
                                            CERTIFIED FORENSIC
                                            LOAN AUDITORS, LLC, AND
                                            ANDREW P. LEHMAN

# TABLE OF CONTENTS

I.      THE CFPB IS UNCONSTITUTIONAL BY ITS OWN ADMISSION…..........4

II.     REVELEVANT BACKGROUND OF CFPB………………………......….5

III.    PROCEDURAL HISTORY…………………...…………………..……….7

IV.     SUMMARY OF FACTS………………………………………………….8

    A. Bloomberg Property Securitization Audit……………………………...……..8

    B. Complaint Package…………………………………………...……………..10

    C. Bank Fraud Necessitated the Audit……………………………………….10

V.      SUMMARY OF ARGUMENT……………………………..………………...11

VI.     LEGAL STANDARD…………………………………….……………..12

       1. AN UNCONSTITUTIONAL AGENCY CANNOT BRING
         SUIT AGAINST DEFENDANTS THEREFORE IT CANNOT
         STATE A    CLAIM UPON WHICH RELIEF MAY
         BE GRANTED…..........................................................................……...13

       2. THE DIRECTOR'S ENTIRE ESTABLISHMENT IS
         UNCONSTITUTIONAL AS SHE HAS A PARTISAN, SOLE ROLE
         WITH SWEEPING AUTHORITY THAT ENCROACHES UPON ALL
         THREE BRANCHES OF GOVERNMENT THEREFORE THIS CASE
         MUST BE DISMISSED AS TO PROCEED WITH VIOLATE THE
         CONSTITUTIONAL RIGHTS OF ALL CITIZENS…………………14

       2. AN AUDIT IS FACTUAL DATA AND ON ITS OWN DOES
         NOT PROVIDE MORTGAGE RELIEF SERVICES THEREFORE
         LEHMAN AND CFLA ARE NOT WITHIN THE CLASS OF
         REGULATION O AND CFPB. ………………….………………16

           i.      Defendants Cannot be Considered Mortgage Assistance
                 Relief Service Providers within the Scope of Regulation
                 O…………………………………….……………………17

       4. PURUSANT TO 12 U.S.C. SECTION 5531 (C) CFPB HAS NO
         AUTHORITY TO BRING THIS CLAIM AS CFLA HAS NOT
         CAUSED SUBSTANTIAL INJURY TO CONSUMERS OR THE
         SUBSTANTIAL INJURY IS NOT OUTWEIGHED BY
         COUNTERVAILING BENEFITS TO THE HOMEOWNER……....18

i

i.      The CFPB Cannot and, Has Not Established that
        Defendants Have Engaged in a Practice Likely to Cause
        Substantial Injury to the Consumer............................19

ii.     The CFPB Cannot Establish that any Substantial Injury to
        the Consumers is not Outweighed by the Countervailing
        Benefits to the Consumers or to Competition...............20

5.  The CFPB HAS NO AUTHORITY UNDER CFPA TO   DECLARE
    THE CONDUCT OF CFPA ABUSIVE AS IT DOES NOT MEET
    THE REQUIREMENTS UNDER 12 USC SECTION
    5531(D)…………………………………………………………...21

        i.      CFLA Does Not Materially Interfere with the Ability of a
                Consumer to Understand a Term or Condition of a
                Consumer Financial Product or Service.....................21

        ii.     CFLA Does Not Take Unreasonable Advantage of-
                a Lack of Understanding on the Part of the Consumer
                of the Material Risks, Costs or Conditions of the Produce
                or Service……………………………………………………21

        iii.    CFLA Does Not take unreasonable advantage of—
                the inability of the consumer to protect the interests
                of the consumer in selecting or using a consumer financial
                 product or service…………………………………….…..22

        iv.     CFLA Does Not take unreasonable advantage of—the
                reasonable reliance by the Consumer or Covered Person
                to Act in the Interest of the Consumer……………….....22

    6.      CFLA AND LEHMAN DO NOT PROVIDE CONSUMER
            FINANCIAL PRODUCTS AND SERVICES AS DEFINED
            UNDER 12  U.S.C. SECTION 5531 (A)………………………..23

        i.      Defendants Do Not Do Business With Consumers as
                Defined Under 12 U.S.C. Section 5536…………………..23

        ii.     CFLA Never Consults with the Dwelling Lien Holder or
                Obtains an Agreement with the Consumer Dwelling
                Lien Holder at any Time………………………………….24

ii

iii.    To Force Defendants to Obtain an Agreement with
        Consumers Dwelling Lien Holders Violates Public
        Policy……………………………………………………..24

VII.   CONCLUSION……….…………………………..………..………………25

# TABLE OF AUTHORITIES

*Seila Law LLC v. Consumer Financial Protection Bureau*,

Case No. 19-7, 2019 U.S. LEXIS 6486 (Resp. brief Pg. 7)…….….……….4,5,6,10


*Consumer Financial Protection Act*,

Pub. L. 111-203, Title X, § 1051 et seq., July 21, 2010, 124 Stat. 2018……….…..5


*Consumer Financial Protection Bureau v. Seila Law*,

Separation of Powers Scholars US 19-7, filed July 29, 2019,

Pg. 28 of brief or 36 on court file…………………….….………………………5,14


*Humphrey's Executor v. United States*,

295 U.S. 602 at 619 (1935)……………………………….……….…..5,6,10,14


*Navarro v. Block*,

 250 F.3d 729, 732 (9th Cir. 2001)…………………………………………...12


*Williams ex rel. Tabiu v. Gerber Products Co.*,

 523 F.3d 934, 938 (9th Cir. 2008)…………………………………………...12


*Bell Atlantic Corp. v. Twombley*,

550 U.S., 127S.Ct.1955, 1974, 167 L.Ed 29 929 (2007)………….………...12,13


*Thompson v. Davis*,

295 F.3d 890, 895 (9th Cir.2002)…………………………………...…….…13


*Ileto v. Glock, Inc.*,

349 F.3d 1191, 1200 (9th Cir. 2003)……………………………………………13

*Morley v. Walker*,

175 F.3d 756, 759 (9th Cir.1999)…….……………………………………………...13

*PHH Corp. v. CFPB*,

839 F.3d 1, 17 (D.C. Cir. 2016)………….…………………………………………13

1

# **STATUTES**

2

3  *Federal Rule of Civil Procedure 12(b)(6)* …………………………………………3

4  *12 U.S.C. § 5581(a)*……………………………………………………………3,5

5  *12 U.S.C. § 5563(a)*…………………………………………...…………………3,5

6  *12 U.S.C. § 5562(b)(1)*…………………………...…………………….…………3,5

7  *12 U.S.C. § 5565(a)(2)* …………………………………………...…………3,5

8  *12 U.S.C. § 5491(c)(1)*………………………...…………...………...…………3,5

9  *12 U.S.C. § 5491(c)(3)*………………………….………….……………………3,4,5

10  *12 U.S.C. § 5491(c)(2)*………………………………………...……………………4,5

11  *12 U.S.C. § 5497(a)*…………………………………………………………4, 5

12  *12 USC § 5531(a)* …………………………………………………5,11,17,20

13  *12 USC § 5531(c)*…………………………………………………………18

14  *12 U.S.C. § 5532 (a),*…………………………………………………6,12

15  *12 C.F.R. § 1015.2*…………………………………………………6,11,16,17

16  *12 USC. § 5531 (d)*…………………………………………6,12,20,21

17  *Federal Rule of Civil Procedure 24 (B)* ………….…………………….7

18  *12 U.S.C. § 5491(c)(3)* ……………………………………...……….8,14,15

19  *12 U.S.C. § 5497(a)(1)* ………………………………………………8

20  *12 U.S.C. § 5497(a)(2)(C)*……………………………………………8

21  *12 U.S.C. §  5491(c)(1)* …………………………….……………………8

22  *12 U.S.C. §  5581(a)(1)(A)*……………………………………………8

23  *12 U.S.C. § 5481(14)*…………………………………………………8

24  *12 U.S.C. §  5581(b)*…………………………………………………8

25  *12 U.S.C. §§ 5511(a)*……………………………………………7

26  *12 U.S.C. 5562*…………………………………………………8

27  *12 U.S.C. § 5563*…………………………………………………8,14

28  *12 U.S.C. § 5564*………………………………...…………………8

    *12 U.S.C. § 5565*………………………...…………………………8

1

*12 U.S.C. § 5536* …………………………………..…………………..…………………18,19,20

*12 C.F.R. § 1015* …………………………..…………………..…….…………18,19,20

12 C.F.R. § 1015.2. …………………..……………………………………………..21

*12 C.F.R. §1015.7* ……………………………………………………….…………22

*12 C.F.R. § 1015.3*…………………………………………………….…………22

*12 U.S.C. § 5531 (d)*..…………………………...…………………………………23

7

8

**CONSTITUTION**

*U.S. Const. art. II, §§ 1 & 3*……………………..……………………..…………5,9

*U.S. Const. art. I, § 7, cl. 1 & § 8, cl. 1*..……….…………………………..…11

*U.S. Const. amend. V* …………………………………….…………….…………13

12

13

**OTHER AUTHORITY**

*See Consumer Financial Protection Act*,

Pub. L. 111-203, Title X, § 1051 et seq.,

July 21, 2010, 124 Stat. 2018 (the "CFPA")……………..…………………….......3,4

S. Rep. No. 176, 111th Cong., 2d Sess. 2 (2010)……………………………...6

18

19

20

21

22

23

24

25

26

27

28

## I.     THE CFPB IS UNCONSTITUTIONAL BY ITS OWN ADMISSION.

The Bureau of Consumer Financial Protection ("CFPB") has declared itself unconstitutional.  Notwithstanding its unconstitutional authority it brings an action against Certified Forensic Loan Auditors, a Texas Limited Liability Company Organized under the Laws of the State of Texas ("CFLA") and Andrew Lehman ("Lehman").  The Director of the CFPB conceded that "the statutory restriction on the President's authority to remove the Director violates the constitutional separation of powers." *Seila Law LLC v. Consumer Financial Protection Bureau*, Case No. 19-7, 2019 (Resp. brief Pg. 7, filed Sept. 17, 2019).   This issue is now before the United States Supreme Court as Writ of Certiorari was granted for review on the issues of:

(1) Whether the vesting of substantial executive authority in the Consumer Financial Protection Bureau, an independent agency led by a single director, violates the separation of powers; and

(2) Whether, if the Consumer Financial Protection Bureau is found unconstitutional on the basis of the separation of powers, 12 U.S.C. §5491(c)(3) can be severed from the Dodd-Frank Act.  *Id.* at U.S. No. 19-7, LEXIS 6486.

The remedy due to the unconstitutionality of the CFPB is for the United States Supreme Court to decide.   This instant action should be dismissed, or in the alternative stayed, because it was brought by an unconstitutional agency that impedes on the separation of powers vested in the constitution.

CFPB filed its Complaint against CFLA and Lehman on September 9, 2019. On September 17, 2019 the Director filed her Responsive Brief in the United States Supreme Court action conceding her unconstitutional authority. *Supra.*  CFPB knew at the time of bringing this enforcement action that it had no constitutional authority to do so as its entire establishment was a violation of the separation of powers. Defendants constitutional rights have been violated as a result and this action must be dismissed as it is the fruit of a poisonous tree.

4

## II.    RELEVANT BACKGROUND OF THE CFPB

In July 2010, the President signed into law the Dodd-Frank Wall Street Reform and Consumer Protection Act ("CFPA").  (Dodd-Frank Act), Pub. L. No. 111-203, 124 Stat. 1376. This Act established the Consumer Financial Protection Bureau ("CFPB") headed by a single director ("Director"). *CFPB v. Seila Law LLC*, U.S. Case No. 19-7 (Resp. brief pg.1) citing to *Consumer Financial Protection Act*, Pub. L. 111-203, Title X, § 1051 et seq., July 21, 2010, 124 Stat. 2018.

Congress gave the CFPB broad authority "to prescribe rules or issue orders or guidelines pursuant to any Federal consumer financial law" previously administered by seven different agencies. *12 U.S.C. § 5581(a).* The CFPB may "conduct hearings and adjudication proceedings," "issue subpoenas," and pursue a broad range of legal and equitable relief, including "civil money penalties." *Id., § 5563(a), 5562(b)(1), & 5565(a)(2).* The Director serves a five-year term. Id. *§ 5491(c)(1).* The Director enjoys power without presidential supervision, because he or she is removable only "for inefficiency, neglect of duty, or malfeasance in office"— only for cause. Id. *§ 5491(c)(3).* The Director's term extends "until a successor has been appointed and qualified." Id. *§ 5491(c)(2).* The Director also sets the CFPB's budget. Id. *§ 5497(a).* Despite this overreaching power of quasi-executive, quasi-legislative and quasi-judicial authority the only qualification required for the Director is that he or she be a United States Citizen. *12 U.S.C. § 5481 (c)(1)-(2).*

When the Federal Trade Commission ("FTC") was enacted by Congress its establishment was similar in that "any commissioner may be removed by the President for inefficiency, neglect of duty or malfeasance in office"- for cause. *Consumer Financial Protection Bureau v. Seila Law*, Separation of Powers Scholars US 19-7, (filed July 29, 2019, Pg. 28 of brief or 36 on crt. file).  However, it was also established to be "non-partisan" and act with "impartiality." *Id.* citing to *Humphrey's Executor v. United States*, 295 U.S. 602 at 619 (1935).  Congressional intent was to "create a body of experts- a body which shall be independent of executive authority" *Id.*

The Court in *Humphrey's* further reasoned that the "commissioner is to be non-partisan, and it must from the very nature of its duties, act with entire impartiality... its duties are neither political nor executive but predominately quasi-judicial and quasi legislative."   *Id.* In Humphrey's, the court concluded that congressional intent is to "create a body of experts who shall gain experience by length of experts- a body which shall be independent of executive authority."   *Id.* Congress may only limit the power of the President to remove the Director if it is a multi-member "body of bi-partisan experts." *See Humphrey's Executor v. United States,* 295 U.S. 602, 624 (1935)

As stated in support of Appellant Seila Law LLC and as against the constitutionality of CFPB "if the exception to the presidential removal power is to apply [12 U.S.C. §5491(c)(3) ] it can only apply when all factors supplied by *Humphrey's Executor* are present." *Supra at 36.*  "This includes a multimember body of "experts" from different political parties who are to be "nonpartisan" and act "impartially."  *Id.* The CFPB has one partisan Director who makes all decisions and "who enjoys a sweeping portfolio over all the nation's consumer protection laws" and this is "far removed" from such requirements.  *Id.*

Given the CFPB has one director who is quasi-legislative, quasi-executive, quasi-judicial *and* partisan, the entire CFPB is unconstitutional and it reaches farther than just the removal exception.  The entire agency is unconstitutional, and the remedy cannot be to sever the "removal" exception from the Dodd Frank Act.

Aside from the unconstitutionality of the CFPB which results in this entire case to be unconstitutional and warrants a dismissal is that the CFPB was created as "a direct and comprehensive response to the financial crisis that nearly crippled the U.S. economy beginning in 2008" *CFPB v. Seila Law*, U.S. 19-971, Rsp. Brief (filed Sep. 17, 2019, Pg.1) citing to S. Rep. No. 176, 111th Cong., 2d Sess. 2 (2010).  The same financial crises that resulted from the banking industry dumping worthless mortgage backed securities on the retirement accounts of the unsuspecting public. CFPB was enacted by President Obama to ensure "that the consumer have access to

markets for consumer financial products and services and that markets for [such] products and services are fair, transparent, and competitive." 12 U.S.C 5511 (a).

However, the CFPB has filed fewer and fewer enforcement actions against the financial industry and now target CFLA, an organization that helps consumers fight the same financial institutions that created the financial crisis by defrauding millions of homeowners. CFLA reveals the true ownership of securitized mortgages by relating them back to a specific mortgage backed securities trust vehicle that would otherwise be hidden by the financial institution (e.g. Audit).

### III.   PROCEDURAL HISTORY

The Complaint is the latest effort by the CFPB in its quixotic quest against CFLA and Lehman, which will as on January 2020 be in its fourth (4) year.

On or about August of 2017, CFLA was served in its League City, TX Office with a Civil Information Demand ("CID"), which required immediate Production of Documents and Interrogatories in compliance with very precise instructions set forth in the CID. CFLA and Lehman produced more than 2,000 Bloomberg Securitization Audits with dates, recorded documents, and quiet title litigation packages, as well as more than 750,000 emails all in Native Format, and a combined nearly 500,000 individually bates stamped PDF Documents. Additionally, CFLA provided full and complete responses to more than a hundred Interrogatories; all under compulsory order of the CFPB, and all while the CFPB threatened criminal prosecution if the documents were not produced timely.

In or about March of 2019, Lehman was deposed in Houston, TX for over two (2) days and the unconstitutional Director of the CFPB executed and issued a Notice & Opportunity to Respond ("NORA") letter outlining what the CFPB considered were purported violation of legal issues. CFLA disagreed, and thus the instant Complaint for Damages & Injunctive Relief was filed by the CFPB, naming Lehman, and CFLA, and Carrigan, all as Defendants, and simultaneously filing and Order for Stipulation of Entry of Judgment between CFPB and Carrigan, who was Lehman's lead auditor for eight (8) years at CFLA.

## IV.   SUMMARY OF FACTS

Since 2007, CFLA has globally served attorneys, investors, hedge funds, and licensed brokers with Mortgage Backed Securities Data through proprietary searches using the best available technology, including the use of the Bloomberg, LP Terminal.  CFLA has maintained a strict policy as a business-to-business provider of these Auditing Services, turning away homeowners and consumers from purchasing the Bloomberg Securitization Audit (hereinafter "Audit").

CFLA also sold lawyers quiet title services which is essentially a complaint package that includes an Ex Parte template to stop a trustee sale and Lis Pendens (hereinafter "complaint package").  CFLA ensured that every sale of the Audits was to licensed professionals in the real estate or investor industry but also ensured that every sale of the Complaint Package was to a licensed attorney.

CFLA has also performed more than 50 State Bar Approved Continuing Education 6-hour MCLE Seminars about Mortgage Securitization & Foreclosure Defense Strategies in the following States: CA, NV, TX, FL, NY, NJ, IL, and HI (hereinafter "MCLE Seminars").

Further, CFLA also pioneered the Mortgage Securitization Analyst Training Class and Ambassador Mortgage Securitization Analyst Class (with more than 2,000 Graduates) wherein trainees are taught how to track residential & commercial Mortgage Backed Securities Data on the Bloomberg Terminal as well as the SEC.GOV site to correctly ascertain the "consumer dwelling lien holder" for the Attorney (hereinafter "training classes").

### A.   CFLA Bloomberg Property Securitization Audit:

The Bloomberg Terminal provides access to a robust database of commercial and residential mortgage-backed securities which, in recent years, has been enhanced by providing loan level details on individual mortgage loans that serve as the source of cash flow and collateral for these securities. For many decades, consumers had been kept in the dark with respect to how their mortgage loans were sold into the secondary market and securitized. It was not until the 2007 mortgage

meltdown along with the ensuing tsunami of foreclosures that consumers —and the attorneys who represent them— realized that there had been a paradigm shift in the mortgage finance industry that they needed to understand.  In its simplest terms, a securitization analysis is to a residential mortgage loan, what a title search is to a real estate transaction.

For example, a securitization analysis traces the assignment, purchase, sale and transfer of the mortgage loan among the participants in the securitization; whereas a title search documents vesting rights and chain of title to real property as well as liens, encumbrances, deed restrictions, etc. The title examiner will begin his search by accessing the appropriate registry of deeds through the online database of recorded documents and expand the search from there. The securitization analyst will begin by accessing a database of residential mortgage backed securities such as the Bloomberg Terminal followed by online research using the Securities and Exchange Commission's EDGAR database of registered securities. The Bloomberg Terminal is preferred by securitization analysts because it contains access to information and documentation that is not otherwise available to the public.

Licensed Attorneys Nationwide have (1) attended the CFLA Workshops, (2) Seminars, and (3) utilized the CFLA Bloomberg Securitization Audit successfully in their law practice.  Attorneys in many States still utilize the Audit report to this very day all over the United States.  Additionally, the CFLA Bloomberg Audit has now become a high demand commodity in the UK, Ireland, Australia, and South Africa, as their banking systems have copied the American model of defrauding its own citizens to pilfer profits out of the housing market.

The Audit has been crucial to foreclosure and real estate lawyers.

As Opined by Texas Foreclosure Defense Attorney Jeff Jackson, Esq., of Jackson & Elrod, PC.

> *"Many times, the CFLA audit is the only way I can identify which securitized trust to sue to stop a non-judicial sale...And Without the audit, there is more often than not no way for me to identify the trust and the securitization parties for the trust before a lawsuit is filed.*

And Opined by California Foreclosure Defense Lawyer Patricia Rodriguez, Esq.

> "The Audit can provide a basis to go to court and at times stop the non-judicial foreclosure sale, Very effective in judicial foreclosure states where the bank has to prove standing to foreclose, In Judicial foreclosure states the securitization report is pivotal to showing the court the broken chain of title,"

### B.    CFLA Complaint Package:

Similar to all its other products, CFLA has a strict policy that it will only sell its complaint packages to Lawyers.  The complaint package contains a securitization complaint, Ex Parte template to stop a trustee sale and a Lis Pendens.  Many law firms, around the country, purchased the "Complaint Package" for use in their law practice to file a civil action, in both state and federal court.   Many of those law firms have been successful with the complaint package and in obtaining an injunction to stop a trustee sale by using the Ex Parte template or Lis Pendens to cloud title.

### C.    Bank Fraud Necessitated the CFLA Audit:

As a result of the banking fraud, some homeowners wished to know how their loan was securitized and if they were awarded restitution from a class settlement. The Securitization Audits were necessary to help homeowners determine whether the homeowners qualified for that settlement.   To this very day, CFLA helps uncover whether a consumer's mortgage was securitized by one of the Trusts that qualifies them for a monetary reward.  Without CFLA most Attorneys do not know how the loan which banking entity the loan is securitized.

## V.    SUMMARY OF ARGUMENT

CFPB has no vested authority upon it by the Consumer Financial Protection Act of 2010 ("CFPA") to bring forth this suit for several reasons:

First, the CFPB cannot state a claim upon which relief can be granted since the CFPB's Director has conceded that "the statutory restriction on the President's authority to remove the Director violates the constitutional separation of powers." *CFPB v. Seila Law LLC*, Case No. 19-7, 2019 U.S. LEXIS 6486 (Resp. brief Pg. 7).

As the Court in *Humphrey's v. United States of America held*, Congress may only limit the powers of the President to remove the Director if it is a "multimember, board of experts who are all bipartisan.  295 U.S. 602 at 619 (1935).  As the CFPB Director self-proclaims that her position is unconstitutional this action must be dismissed immediately to avoid further irreparable harm to Defendants who have suffered already four (4) years of intense investigation with the CFPB through a Civil Investigative Demand ("CID") and suffered financial losses from an unconstitutional agency.

Second, even if the CFPA were to be found constitutional, Regulation O does not govern CFLA as CFLA does not provide mortgage-assistance-relief services to consumers.   Pursuant to 12 C.F.R. §1015.2 a mortgage relief service provider provides "a service, plan or program." CFLA does not provide homeowners or businesses with a "service, plan or program." The Audit is factual data pertaining to a securitization of a home loan, similar to a title search.  CFLA does not service, plan or provide a program that assist the homeowner with obtaining a loan modification or stopping the foreclosure.   CFLA does not consult with the consumer, negotiate on behalf of the consumer or act in any way as an agent of the consumer.  CFLA sells Securitization Audits, that contain information, to mortgage brokers, lawyers and hedge funds. CFLA sells Complaint Packages to lawyers like a paralegal service.  CFPB has failed to sufficiently plead that Defendants offer a service, plan or program as a mortgage service relief provider.

Third, even if the CFPB were constitutional, the CFPB does not have authority Under *12 USC § 5531 (a)* to bring a claim against CFLA or Lehman as they have 1) not engaged in a practice that is likely to cause substantial injury to consumers, and 2) any such alleged substantial injury is outweighed by countervailing benefits to the consumer or to competition.   The CFPB has failed to address any substantial injury in its complaint.  No such injury exists. Further, if any such purported injury exists (which it does not) the countervailing benefits outweigh such injury.   Consumers have benefitted from their attorney having important

financial data pertaining to their loan.   This is pertinent data that the attorney otherwise would not have known.  Every homeowner should know how their loan is securitized.   Rather than being transparent about loan ownership, the banks intentionally conceal this information.

Fourth, the complaint fails to state a claim upon which relief may be granted as CFLA does not provide "Consumer Financial Products & Services" as defined Under *12 U.S.C. § 5532 (a)* and

Lastly, Under *12 USC § 5531 (d),* CFPB has no legal authority to pursue a cause of action for Abusive trade Practices as CFPB has failed to sufficiently plead that CFLA materially interfered with the ability of a consumer to make an informed reasoned choice to utilize the CFLA service,  as the section expressly states that the CFPB has no authority to declare an act or practice abusive in connection with the provision of a consumer financial product or service, unless the act or practice (1) materially interferes with the ability of a consumer to understand a term or condition of a consumer financial product or service or  (2) takes unreasonable advantage of— (A)  a lack of understanding on the part of the consumer of the material risks, costs, or conditions of the product or service;  (B) the inability of the consumer to protect the interests of the consumer in selecting or using a consumer financial product or service or (C) the reasonable reliance by the consumer on a covered person to act  in the interests of the consumer.

## VI.   LEGAL STANDARD

Under Fed. R. Civ. Proc. 12(b)(6), a motion to dismiss lies where the complaint reveals a "failure to state a claim upon which relief can be granted."  Such a motion is meritorious "where there is no cognizable legal theory, or an absence of facts alleged to support a cognizable legal theory."  (Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001)), or where the "plaintiffs have not 'pled enough facts to state a claim to relief that is plausible on its face"  ((*Williams ex rel. Tabiu v. Gerber Products Co.*, 523 F.3d 934, 938 (9th Cir. 2008), quoting *Bell Atlantic Corp. v. Twombley*, 550 U.S., 127S.Ct.1955, 1974, 167 L.Ed 29 929 (2007)).

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b) 6, the court must give no effect to "legal conclusions couched as "factual allegations." *Bell Atlantic Corp. v. Twombley*, 550 US, 127 S.Ct. 1955, 1974, 167 L.Ed. 29, 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." (*Id.*) "While a complaint attached by a Rule 12 (b) (6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation not provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (*Bell Atlantic*, *id*. At 1964-1965.)

A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." (*Twombley*, supra, 550 U.S., 127 S.Ct. 1955, 1969.) The factual allegations must be definite enough to "raise a right to relief above the speculative level." (*Id.* At 1965)

In reviewing a motion to dismiss under Rule 12 (b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. (*Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.2002). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *(Ileto v. Glock, Inc*., 349 F.3d 1191, 1200 (9th Cir. 2003)) Affirmative Defenses may be upheld if they are established on the face of the complaint. (See *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999).)

**1. AN UNCONSTITUTIONAL AGENCY CANNOT BRING AN ENFORCEMENT ACTION AS AGAINST DEFENDANTS AND THEREFORE CANNOT STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

The CFPB is an unconstitutionally structured agency that has aggregate legislative, executive and judicial power into the hands of one director. Id. *§§ 5563(a), 5562(b)(1), & 5565(a)(2).* As the district court properly stated in

addressing the unconstitutionality of the CFPB, "other than the President, the Director of the CFPB is the single most powerful official in the entire U. S. Government, at least when measured in terms of unilateral power." *PHH Corp. v. CFPB*, 839 F.3d 1, 17 (D.C. Cir. 2016). Yet, this powerful person only requires that he or she be a United States Citizen to qualify and is not elected into power. 12 U.S.C. 5491(b)(3). This kind of authority is dangerous as it "threatens, the individual liberty protected by the Constitution's separation of powers." *Supra*. Any direction that comes from this unconstitutional Director must be stricken and dismissed as a result of the fruit of a poisonous tree. The entire CID was unconstitutional, along with the NORA letter issued to Defendants and this instant Complaint must be dismissed. The Directors actions in this case, as in all cases, violates the constitutional liberty of the Defendants.

On September 17, 2019 the Director filed her responsive brief to the United States Supreme Court conceding that her position was unconstitutional. *Supra.* U.S 2019-7 (Resp. brief filed September 17, 2019, Pg. 7) On September 9, 2019, under her unconstitutional authority she directed the CFPB to file this instant action knowing she was before the United States Supreme Court to decide how to handle her unconstitutional position that violates the separation of powers. This enforcement action and this complaint was filed as a result of a violation of Defendants constitutional rights. CFPB has unclean hands and should not have brought an action against Defendants knowing that the Director violated the separation of powers. This action should be dismissed as it is the fruit of the poisonous tree.

///

///

///

**2.    THE DIRECTOR'S ENTIRE ESTABLISHMENT IS UNCONSTITUTIONAL AS SHE HAS A PARTISAN, LONE ROLE WITH SWEEPING AUTHORITY THAT ENCROACHES UPON ALL THREE BRANCHES OF GOVERNMENT THEREFORE THIS CASE MUST BE DISMISSED AS IT VIOLATES THE CONSTITUTIONAL RIGHTS OF ALL CITIZENS.**

Given the CFPB has one director who is quasi-legislative, quasi-executive, quasi-judicial and partisan, the entire CFPB is unconstitutional and it reaches farther than just the removal exception under 12 U.S.C. §5491(c)(3). *§5581(a), §5563(a), 5562(b)(1), & 5565(a)(2).* The entire agency is unconstitutional, and the remedy cannot be to sever the "removal" exception.   The "checks and balances" of the constitution allowing for separation of powers prevents tyranny, maintains democracy and to allow this sole director, who is partisan with quasi-legislative, quasi-judicial and quasi-executive authority to proceed would violate the separation of powers of the three branches of government and as such be a violation to the constitutional rights of all citizens.

When the Federal Trade Commission ("FTC") was enacted by Congress its establishment was similar in that "any commissioner may be removed by the President for inefficiency, neglect of duty or malfeasance in office" – in other words for cause. *Consumer Financial Protection Bureau v. Seila Law*, U.S. 19-7, Separation of Powers Scholars Brief of Amici Curiae, (filed July 29, 2019) Pg. 28 of brief or 35 on crt. file.  However, it was also established to be "non-partisan" and act with "impartiality." *Id.* citing to *Humphrey's Executor v. United States*, 295 U.S. 602 at 619 (1935).

Most importantly, the congressional intent of the commission was to "create a body of experts- a body which shall be independent of executive authority" *Id.*  The Court in *Humphrey's* further reasoned that "the commissioner is to be non-partisan, and it must from the very nature of its duties, act with entire impartiality… its duties are neither political nor executive but predominately quasi-judicial and quasi

legislative." *Id.* The Court in *Humphrey's* concluded that congressional intent is to "create a body of experts who shall gain experience by length of experts- a body which shall be independent of executive authority." *Id.* Further, the FTC is not executive.  It is only quasi-legislative and quasi-judicial. *Id.* It does not encroach upon all three branches of government.

As stated in support of Appellant, Seila Law LLC and as against the constitutionality of CFPB "if the exception to the presidential removal power is to apply [(12 U.S.C. §5491(c)(3)] it can only apply when all factors supplied by the Court in *Humprey's Executor* are present. *Supra.*  This includes a multimember "body of "experts" from different political parties who are to be "nonpartisan" and act "impartially." *Id.* The CFPB has one partisan Director who makes all decisions and "enjoys a sweeping portfolio over all the nation's consumer protection laws" and this is "far removed" from such requirements. *Id.*  The CFPB is an unconstitutional entity given too much power to one individual without any checks and balances therefore this case must be dismissed.

### 3.   AN AUDIT IS FACTUAL DATA AND ON ITS OWN DOES NOT PROVIDE MORTGAGE RELIEF SERVICES THEREFORE LEHMAN AND CFLA ARE NOT WITHIN THE CLASS OF REGULATION O AND CFPB.

12 C.F.R. §1015.2 or "Regulation O" prohibits "mortgage relief service providers from requesting or receiving an advanced fee."  CLFA cannot be a "mortgage relief service provider" as it is defined under the statute as "any service, plan, or program, offered or provided to the consumer in exchange for consideration, that is represented, expressly or by implication, to assist or attempt to assist the consumer with… stopping, preventing or postponing the mortgage."  12 C.F.R. §1015.2

CFPB has failed to sufficiently plead facts that CFLA is a mortgage relief service provider.  CFPB pleads in its complaint that "LEHMAN either personally provided Audits to consumers, or he arranged for CFLA to do so." (Complaint Page

16

9 Line 46).  To plead that CFLA and Lehman sold Audits is not enough to meet the definition of a mortgage relief assistant provider.  An Audit on its own does not provide mortgage relief services.  An audit, on its own, is factual informative material- that is it.  In its simplest terms, a securitization analysis is to a residential mortgage loan, what a title search is to a real estate transaction.  A document such as a title search, are not included in the definition of a mortgage relief service provider and cannot on its own be a "mortgage relief service provider" and does not meet the definition under 12 C.F.R. § 1015.2.

### i. Defendants Cannot Be Considered Mortgage Assistance Relief Service Providers Within the Scope of Regulation O; Codified at 12 C.F.R. § 1015.

Mortgage Assistance Relief Service means any "service, plan, or program" offered or provided to the consumer in exchange for consideration that is represented, expressly or by implication, to assist or attempt to assist the consumer with any of the following: (1) Stopping, preventing, or postponing any mortgage or deed of trust foreclosure sale for the consumer's dwelling, any repossession of the consumer's dwelling, or otherwise saving the consumer's dwelling from foreclosure or repossession" 12 C.F.R. § 1015.2.

CFPB has failed to plead facts that CFLA and Lehman are engaged in the "stopping, preventing, or postponing any mortgage or deed of trust foreclosure sale for the consumer's dwelling, any repossession of the consumer's dwelling or otherwise saving the consumer's dwelling from foreclosure or repossession"  12 C.F.R § 1015.2

CFLA states in the Retail Service Agreement Section 13 as follows: "*we do not transact on behalf of the Homeowner in any way, including sending letters, making phone calls, contacting banks, or filing and serving your legal documents. CFLA offers the Sale of Goods, and NOT Services*" The sale of good does not have the same character or conduct as the offering of a service to the consumer.  Once CFLA sells the Audit to the Attorney it has no other contact with anyone regarding

that loan.  CFLA sells goods and thus not a "services, plan, or program" as required under 12 C.F.R. § 1015.2.  Once the Attorney receives the Securitization Audit, the characterizations at the time of receipt of the Audit by the Attorney is a product and not a service, plan or program.  Attorneys are exempt from Regulation O under the "exemption provision of 12 C.F.R. §1015.7 (a).

The intent of this regulation as it was drafted, and by the definition of "mortgage relief service provider" within 12 C.F.R. § 1015.2 was enacted to prevent loan modification companies and like services from taking advantage of people. The statute does not include, nor contemplate, the merchant-to-merchant sale of a Securitization Audit which CFLA provides.

### 4.   PURSUANT TO 12 U.S.C. § 5531 (C) CFPB HAS NO AUTHORITY TO BRING THIS CLAIM AS CFLA HAS NOT CAUSED SUBSTANTIAL INJURY TO CONSUMERS OR THE SUBSTANTIAL INJURY IS NOT OUTWEIGHED BY COUNTERVAILING BENFITS TO THE HOMEOWNER

Count III of CFPB's complaint alleges a violation of 12 U.S.C. § 5531 (a) which provides that CFPA prohibits a covered person from engaging in "unfair, deceptive or abusive act or practice under Federal Law in connection with any transaction with a consumer for a consumer financial product or service, or the offering of a consumer financial product or service."

U.S Code § 5531  (c) (1) further provides that "The Bureau shall have **no** authority under this section to declare an act or practice in connection with a transaction with a consumer for a consumer financial product or service, or the offering of a consumer financial product or service, to be unlawful on the grounds that such act or practice is unfair, unless the Bureau has a reasonable basis to conclude that—

(A) the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers; and

(B) such substantial injury is not outweighed by countervailing benefits to consumers or to competition."

First, CFLA does not serve consumers or provide consumer financial products.  CFLA serves licensed professionals only such as lawyers, real estate brokers and hedge funds.

Secondly, CFBP has failed to sufficiently plead that CFLA engages in a practice that is likely to cause substantial injury to consumers and if there is any purported, substantial injury (which there is not) CFPB failed to show any such alleged injury is not outweighed by the benefit to consumers.  CFLA provides

    1) informative data through "securitization audits";

    2) complaint packages purchased by licensed Attorneys;

    3) training seminars on how to perform audits and

    4) State Bar Approved MCLE's.

*Where is the injury to homeowners?*  If Plaintiff conjured up some purported injury it failed to plead those facts in the Complaint.   CFBP is abusing its extreme and unconstitutional power (currently up for decision with the United States Supreme Court) by bringing this claim against CFLA absent any authority.

    **i.    The CFPB Cannot and, Has Not, Established That Defendants Have Engaged in a Practice Likely to Cause Substantial Injury to the Consumer.**

CFPB has failed to allege any substantial injury its Complaint. At no time, has an injury to a homeowner existed by selling any one of CFLA's Audits, or CFLA conducting any one of its training seminars or holding MCLE State Bar Approved seminars and selling legal templates to licensed Attorneys (from which many courts have ordered an injunction for a trustee sale).  At no time was a homeowner injured through any one of those services.

Through a Civil Information Demand ("CID"), CFPB has had the entire (a) email database, (b) every one of the Bloomberg Securitization Audits & Quiet Title Packages Produced by CFLA since 2014, (c) Copies of the Executed CFLA Service

Agreements, (d) Complete Customer Lists of CFLA Clients, (e) complete and full disclosure of all information since December of 2017  when CFLA produced more than 500,000 Bates Labeled PDF Documents to the CFPB, more than 750,000 emails to the CFPB in native format to the CFPB, and answered more than 100 Specially Prepared Interrogatories to the CFPB all without objection, and all without a referee or intermediary to maintain fairness and equality or balance of legal powers exercised by the CFPB and its multiple attorneys against CFLA and LEHMAN; both non-attorneys and unrepresented in that discovery process.   Through all that discovery obtained, CFPB cannot allege that homeowners have been injured as a result of CFLA's services.

### ii.     The CFPB Cannot Establish That Any Substantial Injury to the Consumers is Not Outweighed by Countervailing Benefits to Consumers or to Competition.

CFPB has failed to meet the first prong of 12 U.S.C Section 5531 (a) as it failed to show a substantial injury to homeowners but even if, *assuming for the sake of arguendo*, CFPB pleads an injury to homeowners it fails to further establish that any such purported injury is not outweighed by the benefit to consumers.

There is a great benefit to consumers having access to a securitization search of their mortgage.   There are judgments in which restitution is provided to homeowners depending on which securities bank owns the note.  For example, *in re Bear Stearns Mortgage Pass-Through Certificates Litigation*, Case No. 1:08-cv-08093-LTS (S.D.N.Y.), restitution was provided only to those homeowners who had a Bear Stearns Mortgage Backed Security note.  Without an Audit there is no way for a consumer, or their Attorney, to know whether they qualify.

The audits provide homeowners with transparency, data and information. Information is power.   Under no circumstance can facts be fraudulent.   The securitization audits inform Professionals as to pertinent data pertaining the securitization of a mortgage.  There is no substantial injury, CFPB failed to plead any such injury and failed to plead that any such injury.

**5.     THE CFPB HAS NO AUTHORITY UNDER CFPA TO DECLARE THE CONDUCT OF CFLA ABUSIVE AS IT DOES NOT MEET THE REQUIREMENTS UNDER 12 USC SECTION 5531(D)**

Under *12 U.S.C. § 5531 (d)* The Bureau shall have no authority under this section (i.e. the C.F.P.A.) to declare an act or practice abusive in connection with the provision of a consumer financial product or service, unless the act or practice—(1) materially interferes with the ability of a consumer to understand a term or condition of a consumer financial product or service; or (2) takes unreasonable advantage of— (A) a lack of understanding on the part of the consumer of the material risks, costs, or conditions of the product or service; (B) the inability of the consumer to protect the interests of the consumer in selecting or using a consumer financial product or service; or (C) the reasonable reliance by the consumer on a covered person to act in the interests of the consumer. *12 U.S.C. § 5531 (d).*

> **i.     CFLA Does Not Materially interfere with the ability of a consumer to understand a term or condition of a consumer financial product or service;**

CFPB has failed to sufficiently plead that CFLA materially interferes with the ability of a consumer to understand a term or condition of a consumer financial product pursuant to 12 U.S.C.§ 5531(d).  The professional purchases the Audit with the understanding that it is compilation of data found of the security of their home through a search, similar to a title search.  Further, lawyers have a wealth of understanding of the complaint package prior to purchasing.

> **ii.    CFLA Does Not take unreasonable advantage of— a lack of understanding on the part of the consumer of the material risks, costs, or conditions of the product or service;**

CFPB has failed to plead any facts in its compliant that CFLA has taken unreasonable advantage on the part of the consumer of the material risks, costs or

conditions of the product or service pursuant to 12 U.S.C § 5531 (d).   CFLA contracts with Attorneys and Licensed Brokers to sell "securitization Audits" CFLA gives its clients extensive agreements, in clear terms, to have their clients sign which states in clear terms all the material aspects of the Securitization Audit.   CFLA makes no guarantees as to the work product or the results of the work product and charges a very small fee for the securitization Audit (i.e. between $500 - $1,000) depending on the volume of client files that the Attorney is generating.   There are very few risks, if any, CFLA does not contact the dwelling lien holder, or transact on behalf of the consumer in any way.   The total risk is the cost of the service and the cost is very low considering the consumer would have to spend more than $10,000.00 to get a Bloomberg Terminal themselves and lookup the same information, and this assumes that the Consumer would have the advanced skills to navigate the terminal themselves.

> ### iii.   CFLA Does Not take Unreasonable Advantage of—the Inability of the Consumer to Protect the Interests of the Consumer in Selecting or Using a Consumer Financial Product or Service.

CFLA as a business to business provider cannot be reasonably considered to be taking advantage of its Law Firm Clients whose practice in this Industry is their expertise.   Now to allege the attenuation of the CFLA Client Attorney taking advantage of the ultimate consumer is to say that CFLA has taken unreasonable advantage of its Attorney client to the extent that CFLA has "brainwashed" its Client Attorney into taking unreasonable advantage of the consumer.

> ### iv.   CFLA Does Not take Unreasonable Advantage of—the Reasonable Reliance by the Consumer or a Covered Person to Act in the Interests of the Consumer.

Here, CFLA owes no fiduciary responsibility to the consumer.   CFLA has no interaction with the consumer.   Thus, the Consumer cannot as a practical matter, expect CFLA to act in the best interests of the consumer.

1

2   **6.   CLFA AND LEHMAN DO NOT PROVIDE "CONSUMER**
         **FINANCIAL PRODUCTS AND SERVICES AS DEFINED**
3        **UNDER 12 U.S.C § Section 5531 (A)**

4       The CFPB's complaint alleges Defendants' are Covered Persons Under 12

5   USC Section 5531 *(defined as any person that engages in offering or providing a*

6   *consumer financial product or service),* because Defendants' have engaged in  (viii)

7   providing financial advisory services including—(I)providing credit counseling to

8   any consumer;  and   (II)   providing   services   to   assist   a consumer with   debt

9   management or debt settlement, modifying the terms of any extension of credit, or

10  avoiding foreclosure*. [CFPB Complaint Para.51*]

11      CFLA and LEHMAN do not engage in any service of credit or debt

12  counseling or debt management to the consumer.  Defendants have never consulted

13  with, advised, or provided any advice to a consumer at any time.  CFLA sells factual

14  data to professionals.    CFPB fails to state specifically any actual consumers that

15  were advised, consulted, or offered any advice from CFLA.  Quite to the contrary,

16  CFLA makes its customers expressly acknowledge that CFLA does not offer any

17  advisory services, consulting or otherwise to any consumer at any time.  CFLA is

18  merely a source for Securitized Data for licensed Attorneys and Professionals.

19  Plaintiff's complaint fails to state a cognizable legal theory as to how CFLA is a

20  covered person and fails in its entirety.

21

22      **i.   Defendants' Do Not Do Business with Consumers as Defined**
             **Under 12 U.S.C. § 5536**
23

24      CFLA sells Only to Attorneys and Businesses its Bloomberg Securitization

25  Audits & Quiet Title Forms and has never been engaged in any Financial Advisory

26  Services or selling any products to any Consumer. CFLA States Clearly on its

27  Website with bold disclaimers, as well as in its Client Agreements that "CFLA Does

28  not Engage in any Loan Modification Services or Transact on behalf of the

Consumer in any way, including Negotiating With Any Consumer's Dwelling Lien

23

Holder," rather, it is CFLA advanced work product "The Bloomberg Property Securitization Report" that correctly identified for the Attorney or Licensed Real Estate Broker Who the actual "Consumer Dwelling Lien Holder Actually is." CFLA Does not, and has never, contracted with any unrepresented parties, even though services may be ordered over the internet the client must expressly acknowledge that (a) they Have an Attorney Representing them in the instant matter, and that (b) they are not requesting this Securitization Audit Report on their own personal residential owner occupied Residence."

It is the CFLA Bloomberg Securitization Audit Report which identifies the Residential Mortgage Backed Security upon which their Dwelling Lien Holder is found so that Attorneys and Loan Modification Professionals may "Secure an Agreement with the Dwelling Lien Holder. Most Attorneys come to CFLA for the purpose of identifying the Consumer's Dwelling Lien Holder, since this information is most often hidden, concealed, withheld from the Consumer. The Plaintiff herein CFPB hopes to keep it that way.

### ii.   CFLA Never Consults with the Consumer Dwelling Lien Holder or Obtains an Agreement with the Consumer Dwelling Lien Holder at Any Time

To ask CFLA a data service and auditing service provider to secure an agreement with a "consumers dwelling lien holder" would require CFLA to act outside the scope of its business model and violate public policy because it would create issues under the 10th Amendment for violating State Laws related to the Unlawful Practice of Law or unlicensed Debt Consulting.

### iii.   To Force Defendants to Obtain an Agreement with the Consumers Dwelling Lien Holder Violates Public Policy

Further, to require Defendants' to consult with Consumer's Dwelling Lien Holder and obtain an agreement on behalf of the consumer would violate public

24

1   policy as it would encourage Defendants' to violate 10th Amendment Rights
2   Afforded to the Respective States such as the Unlawful Practice of Law or other
3   Service requiring State Licensing and Specialization that Defendants Never Purport
4   to Possess.

5
6                              **VII. CONCLUSION**

7        In conclusion, Plaintiff CFPB is an unconstitutional agency that has
8   overreaching unconstitutional powers that are executive, judicial and legislative.  All
9   investigations and conduct stemming from Director must be dismissed, including
10  this Complaint, as it is the fruit of a poisonous tree and violates Defendants
11  constitutional rights.

12       Moreover, Plaintiff's Complaint is fundamentally defective and meritless.
13  Defendants Certified Forensic Loan Auditors, LLC, and Andrew P. Lehman
14  respectfully pray that the Court grant its motion for dismissal under Federal Rule of
15  Civil Procedure 12(b)(6), and that Plaintiff's complaint be dismissed in its entirety
16  with prejudice and that is take nothing by way of these claims or in the alternative,
17  the Court Stay this proceeding pending a resolution by the USC on the ripe issue of
18  the constitutionality of the CFPB,.

19
20
21                              Respectfully submitted,
                                By: Maryam Atighechi, Esq.
22                              ATIGHECHI LAW GROUP

23
                                   /s/ Maryam Atighechi
24                              Attorney(s) For Defendants,
                                CERTIFIED FORENSIC
25                              LOAN AUDITORS, LLC,  a Texas
26                              Limited Liability Company Organized
                                under the Laws of the State of Texas,
27                              and ANDREW P. LEHMAN
28

                                      25

**CERTIFICATE OF SERVICE**

     I hereby certify that a true and correct copy of the foregoing document was served upon the counsel of record listed below by the Central District of California ECF method or by certified mail, return receipt requested on the fourth (4th) day of November 2019.


                                               Defendant Michael Carrigan

Plaintiff , CFPB                     Michael.carrigan@rocketmail.com

1. Benjamin Vaughn, Esq
   Gabriel Hopkins, Esq.
   1700 G Street, NW
   Washington DC 20552
   Benjamin.vaughn@cfpb.gov
   Gabrield.hopkins@cfpb.gov


2. Leanne E. Hartmann, Esq.
   301 Howard St. Suite 1200
   San Francisco, CA 94105
   Leanne.hartmann@cfpb.gov