1   BENJAMIN VAUGHN, DC Bar #999347
    E-mail: Benjamin.vaughn@cfpb.gov
2   Phone: (202) 435-7964
    GABRIEL HOPKINS, NY Bar #5242300
3   Email: Gabriel.hopkins@cfpb.gov
    Phone: (202) 435-7842
4   1700 G Street, NW
    Washington, DC 20552
5   Fax: (202) 435-7722

6   LEANNE E. HARTMANN, CA Bar #264787 - Local Counsel
    E-mail: Leanne.hartmann@cfpb.gov
7   301 Howard St., Suite 1200
    San Francisco, CA  94105
8   Phone: (415) 844-9787
    Fax: (415) 844-9788
9
    *Attorneys for Plaintiff*

10

11                    UNITED STATES DISTRICT COURT
12                    CENTRAL DISTRICT OF CALIFORNIA

13

14  Bureau of Consumer Financial Protection,  )
                                              )   Case No.: 2:19−cv−07722 ODW (JEMx)
15          Plaintiff,                        )
                                              )   OPPOSITION TO MOTION TO STAY
16      vs.                                   )   PROCEEDINGS
                                              )
17  Certified Forensic Loan Auditors, LLC;    )
    Andrew Lehman; and Michael Carrigan,      )
18                                            )
            Defendants.                       )
19  _____ )

20          Plaintiff Consumer Financial Protection Bureau filed this action to address

21  serious ongoing violations of the Consumer Financial Protection Act (CFPA), 12

22  U.S.C. §§ 5531, 5536(a), as well as Regulation O, 12 C.F.R. pt. 1015, which governs

23  mortgage-relief services that purport to help homeowners facing foreclosure.

24  Defendants Certified Forensic Loan Auditors, LLC, and Andrew Lehman

25  (collectively, "Defendants") have now moved to stay all proceedings in this case for

26  the seven months or more it may take the Supreme Court to decide a different case

27  involving the constitutionality of a provision in the CFPA that limits the grounds on

28

1  which the Bureau's Director can be removed to "inefficiency, neglect of duty, or

2  malfeasance in office," 12 U.S.C. § 5491(c)(3). *See Seila Law LLC v. CFPB*, No. 19-

3  7 (U.S.).

4    This Court should deny that motion. No good purpose would be served by the

5  lengthy delay that Defendants seek because the Supreme Court's decision in *Seila*

6  *Law* is unlikely to dispose of the Bureau's claims here. A stay would also injure the

7  Bureau and the public interest by preventing the parties from beginning discovery

8  and, ultimately, delaying the just resolution of this matter and the adjudication of the

9  Bureau's claims for relief on behalf of consumers, including injunctive relief that it

10  intends to seek. A stay would also risk exposing consumers to additional injury from

11  Defendants' ongoing illegal practices. For their part, Defendants will suffer no harm

12  if their motion is denied beyond the ordinary cost of litigation, which the Ninth

13  Circuit has held is not enough to justify a stay. Finally, denying a stay in this case

14  while deferring final resolution of Defendants' constitutional argument would be

15  entirely consistent with the decisions of other courts that have also deferred final

16  resolution of the constitutional issue.

17    If the Court is inclined to grant a stay, however, it should at least give the

18  Bureau the opportunity to seek a preliminary injunction in order to prevent further

19  consumer harm while this matter is stayed.

20                          **LEGAL STANDARD**

21    "A district court has discretionary power to stay proceedings in its own court."

22  *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005). Among the factors

23  that courts weigh in deciding whether to issue a stay are: "[1] the possible damage

24  which may result from the granting of a stay, [2] the hardship or inequity which a

25  party may suffer in being required to go forward, and [3] the orderly course of justice

26  measured in terms of the simplifying or complicating of issues, proof, and questions

27  of law." *Id.* at 1110.

28

1    The moving party "must make out a clear case of hardship or inequity" from

2    being denied a stay "if there is even a fair possibility that the stay for which he prays

3    will work damage to some one else." *Landis v. North American Co.*, 299 U.S. 248,

4    255 (1936). "[B]eing required to defend a suit, without more, does not constitute a

5    'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer*, 398

6    F.3d at 1112.

7                                   **ARGUMENT**

8    **I.    The Supreme Court's Decision in *Seila Law* Is Not Likely to Dispose of**

9          **the Bureau's Claims in This Case**

10         Whatever the Supreme Court decides about the constitutionality of the

11   CFPA's removal provision is unlikely to preclude this case from moving forward.

12   There is thus no need for this Court to stay proceedings in their entirety until the

13   Supreme Court issues its decision—particularly given that, as described below, the

14   balance of equities in this case decisively favors this action moving forward in the

15   meantime.

16         The challenger in *Seila Law* argues that the Bureau's structure violates the

17   Constitution because the Bureau exercises significant executive authority and is

18   headed by a single Director, yet the President's authority to remove that Director is

19   limited by statute. The Bureau agrees that this restriction on the President's removal

20   power violates the Constitution. But whether or not the Supreme Court adopts that

21   view in *Seila Law*, its decision is unlikely to require dismissal of this action

22   (assuming that Defendants renew their constitutional argument in response to the

23   Bureau's First Amended Complaint, ECF No. 29). *Cf. Prime Healthcare Servs.-San*

24   *Dimas, LLC v. Price*, No. 2:16-cv-08101-ODW, 2017 WL 10581094, at *3 (C.D.

25   Cal. June 29, 2017) (denying motion for stay that was premised on other ongoing

26   cases that the Court concluded would not "necessarily dispose of the claims here").

27

28

1    If the Supreme Court concludes that the removal provision is constitutional,

2    that is of course no obstacle to the Bureau seeking relief in this case. And if the

3    Court holds the provision invalid, that is unlikely to pose an obstacle to the Bureau's

4    maintenance of this suit, either, because the Supreme Court's precedent in recent

5    comparable cases, as well as the express language of the statute here, call for simply

6    severing the provision from the CFPA while leaving the rest of the statute in place.

7    That is what the Supreme Court did in 2010 when it last confronted an

8    unconstitutional removal restriction (with no justice disagreeing that severance

9    would be the appropriate remedy). *See Free Enter. Fund v. Pub. Co. Accounting*

10   *Oversight Bd.*, 561 U.S. 477, 508-10 (2010). And that is what Congress provided for

11   here by including an express severability clause in the statute stating that "[i]f any

12   provision of this Act … is held to be unconstitutional, the remainder of this Act …

13   shall not be affected thereby." 12 U.S.C. § 5302. Indeed, one justice already reached

14   this conclusion with respect to the Bureau: While on the D.C. Circuit, then-Judge

15   Kavanaugh concluded that the CFPA's removal restriction is unconstitutional

16   (disagreeing with a majority of the en banc D.C. Circuit on that point) but indicated

17   that the appropriate remedy would be to sever it and allow the Bureau to "continue to

18   operate … as an executive agency." *PHH Corp. v. CFPB*, 881 F.3d 75, 200 (2018)

19   (en banc) (Kavanaugh, J., dissenting).

20   With the removal provision severed, the Bureau should then be given the

21   opportunity to choose to ratify this action as necessary. Assuming that the Bureau

22   determined that it was appropriate to do so, the case could then carry on with the

23   Bureau headed by a Director who is removable at will by the President. *See FEC v.*

24   *Legi-Tech, Inc.*, 75 F.3d 704, 708 (D.C. Cir. 1996) (dismissal of agency enforcement

25   action was "neither necessary nor appropriate" after court severed unconstitutional

26   statutory provision and agency ratified its decision to file suit); *cf. Collins v.*

27   *Mnuchin*, 938 F.3d 553 (5th Cir. 2019) (en banc) (any "ongoing injury" to plaintiffs

28

challenging the constitutionality of another independent agency headed by a single person "is remedied by a declaration that the 'for cause' restriction is declared removed").

Because there is little chance that *Seila Law* will dispose of the Bureau's claims in this case, this Court should simply defer decision on Defendants' constitutional argument (again, assuming that they renew it) while allowing the parties to proceed toward discovery in the meantime.[1] *See, e.g.*, Fed. R. Civ. P. 12(a)(4)(A), (i) (district court may postpone resolution of defenses raised on Rule 12 motion up until trial). This approach would be especially prudent here in light of the balance of equities, which tilts definitively against a stay of all proceedings.

## II. Halting All Proceedings in This Case for Months Would Harm the Bureau and the Public Interest

The Bureau is the primary enforcer of federal consumer financial laws. *See, e.g.*, 12 U.S.C. § 5511(a). It filed this action to address serious violations of the CFPA's prohibition on deceptive and abusive practices, *id.* §§ 5531, 5536, as well as Regulation O's provisions meant to protect often-desperate homeowners who are seeking help to avoid foreclosure, 12 C.F.R. pt. 1015. The Bureau has reason to believe that the violations at issue here are ongoing and is seeking injunctive relief.

Halting all proceedings in this case for the seven months or more it may take for a decision in *Seila Law* would harm both the Bureau's interests and the public interest. It can hardly be doubted that "the public has a strong interest in vigorous

---

[1]   Defendants' constitutional argument is contrary to a decision of this Circuit. *See CFPB v. Seila Law LLC*, 923 F.3d 680, 683 (9th Cir. 2019) (holding that "the CFPB's structure is constitutionally permissible"), *cert. granted*, No. 19-7 (2019). The Bureau now disagrees with the reasoning of the Court of Appeals in that decision, and the Supreme Court has granted certiorari to review it, but the existence of current circuit precedent foreclosing Defendants' argument hardly counsels in favor of granting a stay that is, in any event, contrary to the public interest. *Cf. In re Zermeno-Gomez*, 868 F.3d 1048, 1052 (9th Cir. 2017) (decision of the court of appeals remains "binding authority 'which must be followed unless and until overruled by a body competent to do so.'") (quoting *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc)).

1    enforcement of consumer protection laws." *John Doe Co. v. CFPB*, 235 F. Supp. 3d

2    194, 205 (D.D.C. 2017), *aff'd*, 849 F.3d 1129 (D.C. Cir.). More particularly, both the

3    Bureau and consumers have a strong interest in moving this case forward to

4    discovery so that the relevant facts can be assembled while evidence remains fresh

5    and, ultimately, so that the matter may reach final resolution expeditiously. [2]

6         The stay sought by Defendants would harm these important interests. It would

7    mean more time in which Defendants are not subject to the injunctive relief that the

8    Bureau seeks for the public's protection. (This case is a world away from one in

9    which the plaintiff is seeking only money damages for itself, *cf. Lockyer v. Mirant*

10   *Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (refusing to overturn stay where plaintiff

11   was seeking "only damages" and had "alleged no continuing harm and sought no

12   injunctive or declaratory relief")). It would mean more time in which Defendants'

13   assets may be depleted. And it would mean consumers would have to wait longer for

14   any redress they may be entitled to receive if and when the Court enters judgment in

15   the Bureau's favor. Moreover, because delay "inherently increases the risk that

16   witnesses' memories will fade and evidence will become stale," *Blue Cross & Blue*

17   *Shield of Ala. v. Unity Outpatient Surgery Ctr.*, 490 F.3d 718, 724 (9th Cir. 2007)

18   (internal quotations omitted), a stay could make it harder down the road for the

19   Bureau to secure any relief for consumers. All this for a decision in *Seila Law* that,

20   again, is unlikely to dispose of the Bureau's claims here.

21   **III.   Defendants Will Not Be Harmed by This Case Proceeding to Discovery**

22        Because there is, at minimum, a "fair possibility" that the stay Defendants

23   seek "will work damage to some one else," Defendants "must make out a clear case

24

25

26   [2]   Defendants grossly misstate the facts when they claim that the Bureau received evidence from
     CFLA nearly four years ago and "sat idle" for years. Mot. at 7, 10. In reality, the Bureau sent its
27   first investigative subpoena to CFLA in August 2017 and has worked diligently to advance its
     investigation every step of the way.
28

1    of hardship or inequity" from this litigation moving forward in order to secure a stay.

2    *Landis*, 299 U.S. at 255. Defendants cannot make that showing.

3         Defendants' primary claim of hardship is that the denial of a stay would work

4    "a huge constitutional deprivation of liberties" because the CFPA's removal

5    provision is unconstitutional. Mot. at 7. But even if the Supreme Court were to agree

6    that the provision is invalid, the most appropriate remedy for that unconstitutional

7    limitation—severing the removal provision—is, for the reasons already discussed,

8    unlikely to result in dismissal of the Bureau's claims.

9         Defendants also complain that they will "incur further legal expenses and

10   costs" from litigation if their request is denied. Mot. at 8. But that will always be the

11   case when a party is denied a stay. Accordingly, the Ninth Circuit has already held

12   that "being required to defend a suit, without more, does not constitute a 'clear case

13   of hardship or inequity' within the meaning of *Landis*" that would justify a stay.

14   *Lockyer*, 398 F.3d at 1112. What's more, because it is unlikely that the Supreme

15   Court's decision in *Seila Law* will warrant dismissal of the Bureau's claims here,

16   Defendants will likely incur the costs of continued litigation whether or not their

17   request is denied.

18   **IV.    Allowing This Case to Proceed While Deferring Final Resolution of the**

19   **       Constitutional Issue Is Entirely Consistent With Other Courts' Decisions**

20   **       to Defer Final Resolution of the Constitutional Issue**

21        Finally, Defendants err in suggesting that there would be any inconsistency

22   between the Court denying a stay in this case and the decisions by two courts of

23   appeals to defer their consideration of the constitutional claim at issue in *Seila Law*.

24   *See* Mot. at 10-11. In both of those cases, the courts of appeals were being asked to

25   resolve the constitutional challenge to the CFPA's removal provision, and they

26   appropriately decided to defer doing so until the Supreme Court issues its decision in

27   *Seila Law*. *See* Order, *CFPB v. Cashcall Inc.*, No. 18-55407 (9th Cir., Oct. 21,

28

1  2019); Order, *CFPB v. RD Legal Funding, LLC*, No. 18-2743 (2d Cir., Nov. 5,

2  2019). It would be equally appropriate, as well as consistent with those other

3  decisions, for this Court to defer final resolution of Defendants' constitutional

4  argument. Doing so would not, however, support putting any other aspect of this

5  litigation on hold in the interim.

6                                    **CONCLUSION**

7             For the foregoing reasons, the Court should deny Defendants' Motion to

8  Stay and instead simply apply the decision in *Seila Law* when it is handed down

9  while, in the meantime, allowing this case to proceed in the ordinary course. In the

10  event the Court were to conclude instead that a stay is warranted, it should first give

11  the Bureau a chance to seek a preliminary injunction.

12

13  Dated: November 18, 2019                    /s/ Benjamin Vaughn
                                                 Leanne E. Hartmann
14                                               Benjamin Vaughn (pro hac vice)
                                                 Gabriel Hopkins (pro hac vice)
15
                                                 Consumer Financial Protection Bureau
16                                               1700 G Street, NW
                                                 Washington, DC 20552
17
                                                 *Attorneys for Plaintiff*
18                                               *Consumer Financial Protection Bureau*

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I, Benjamin Vaughn, hereby certify that the foregoing Opposition to Defendants' Motion to Stay was served electronically on the parties via the Court's electronic filing system.

/s/ Benjamin Vaughn
Benjamin Vaughn (pro hac vice)