Maryam Atighechi, Esq. SBN 249318
maryam@familylaw-firm.com
ATIGHECHI LAW GROUP
9465 Wilshire Blvd., Suite 300
Beverly Hills, California 90212
Telephone: (424) 284-4258
Facsimile: (310) 773-4541

Attorney(s) For Defendants,
CERTIFIED FORENSIC
LOAN AUDITORS, LLC TX, AND
ANDREW P. LEHMAN

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Bureua of Consumer Financial Protection,<br><br>Plaintiff,<br><br>vs.<br><br>Certified Forensic Loan Auditors (CA) and Certified Forensic Loan Auditors (TX). Andrew Lehman and Michael Carrigan,<br><br>Defendants. | CASE NO.: 2:19−cv−07722<br><br>DEFENDANT ANDREW LEHMAN AND CERTIFIED FORENSIC LOAN AUDITORS LLC (TX) NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OFPOINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>DATE:  January 13, 2020<br>TIME:   1:30 p.m.<br>DEPT.:  5D<br>JUDGE: Honorable Otis D. Wright II |

TO THE CLERK OF THE COURT, ALL INTERESTED PARTIES HEREIN, AND, TO THEIR RESPECTIVE ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that, on January 13, 2020 in Department 5D of the above-entitled court located at 350 W. 1st Street, Los Angeles, CA 90012, 5th Floor, Los Angeles, CA 90012-3332, Los Angeles, California 90012.  Defendant Andrew Lehman ("Lehman") and Certified Forensic Loan Auditors LLC, TX   ("CFLA") (collectively "Defendants") will hereby move the court for Under Federal Rules of Civil Procedure 12(b)(6) for a motion to dismiss Plaintiff's First Amended Complaint ("FAC") failure to state a claim upon which relief may be granted.  This motion is

made following conferences of counsel, pursuant to C.D. Cal.R. 7-3, which took place on October 28, 2019, October 29, 2019, October 30, 2019 and November 1, 2019 regarding the same issues present in the First Amended Complaint.

## I.   **RELIEF REQUESTED**

A.  Dismissal of all claims as the Bureau of Consumer Financial Protection ("CFPB") is an unconstitutional establishment as it violates the separation of powers;

B.  Dismissal of Count I, II and III as Defendant Andrew Lehman and CFLA do not provide "mortgage relief assistance" therefore are not under the authority of CFPB and are not in Violation of Regulation O; 12 C.F.R. Section 1015.

C.  Dismissal of Count I, II and III as Defendant Andrew Lehman and CFLA do not do business with consumers as defined under 12 U.S.C. Section 5536.

D.  Dismissal of Count I, II and III as Defendant Andrew Lehman and CFLA do not provide "consumer financial products or services" as defined under 12 U.S.C. Section 5531(a).

E.  Dismissal of Count III and IV as Plaintiff Has No authority under 12 U.S.C. Section 5531 (a) to bring a claim as Defendants have not engaged in a practice that is likely to cause substantial injury to consumers and the any such alleged substantial injury is outweighed by countervailing benefits to consumers or to competition.

F.  Dismissal of Count IV of the CFPB's Claims of Abusive Acts or Practices in Violation of the CFPA Since the CFPB Has No Authority Under The CFPA to Declare An Act or Practice Abusive Under 12 U.S.C. Section 5531 Because CFLA Does Not Materially interfere with the ability of a consumer to understand a term or condition of a consumer financial product or service; CFLA Does Not take unreasonable advantage of— a

lack of understanding on the part of the consumer of the material risks, costs, or conditions of the product or service; CFLA Does Not take unreasonable advantage of—the inability of the consumer to protect the interests of the consumer in selecting or using a consumer financial product or service; CFLA Does Not take unreasonable advantage of—the reasonable reliance by the consumer on a covered person to act in the interests of the consumer.

Dated:  December 4, 2019                                  Respectfully submitted,


                                                    _____/s/Maryam Atighechi_____
                                                    By: Maryam Atighechi, Esq.
                                                    ATIGHECHI LAW GROUP
                                                    Attorney(s) For Defendants,
                                                    Certified Forensic Loan Auditors,
                                                    LLC (Tx) and Andrew Lehman

# TABLE OF CONTENTS

I.  THE CFPB IS UNCONSTITUTIONAL BY ITS OWN ADMISSION…..........4

II.  REVELEVANT BACKGROUND OF CFPB………………………..…5

III.  PROCEDURAL HISTORY………………...……………………..……7

IV.  SUMMARY OF FACTS…….…………………………………………7

V.  SUMMARY OF ARGUMENT…………………………..…………..…8

VI.  LEGAL STANDARD……………………….…….…………………10

    1. An Unconstitutional Agency Cannot Bring an Enforcement Action Against Defendants and Therefore Cannot State a Claim Upon Which Relief Can be Granted …......………………………………...……12

    2. The CFPB's Establishment is Unconstitutional as the Director has a Partisan, Lone Role with Sweeping Authority that Encroaches Upon all Three Branches of Government Therefore the Case Must be Dismissed……………..……………………………………………12

    3. An Audit on Its Own Does Not Provide Mortgage Relief Services therefore Lehman and CFLA are Not Within the Class of Regulation O and CFPA…………………..……………….………………………14

        i.  Defendants Cannot be Considered Mortgage Assistance Relief Service Providers within the Scope of Regulation O; Codified as 12 C.F.R. Section 1015 …………..………14

    4. CFPB Has Failed to Plead Facts to Show a Substantial Injury to Consumers or that the Substantial Injury is not Outweighed by Countervailing Benefits to the Homeowner……………………..…...15

        i.  The CFPB Cannot and, Has Not Established that Defendants Have Engaged in a Practice Likely to Cause Substantial Injury to the Consumer……………………17

        ii.  The CFPB Cannot Establish that any Substantial Injury to the Consumers is not Outweighed by the Countervailing Benefits to the Consumers or to Competition……………17

i

5. The CFPB Has No Authority Under CFPA To Declare The
Conduct of CFPA Abusive as it Does not Meet the Requirements
Under 12 USC SECTION  5531(D)…………………………...………18

    i.    CFLA Does Not Materially Interfere with the Ability of a
Consumer to Understand a Term or Condition of a
Consumer Financial Product or Service…………………18

    ii.    CFLA Does Not Take Unreasonable Advantage of the
Consumer ……………..……………………………………19

    iii.    CFLA Does Not take Unreasonable Advantage of
the Interests of the Consumer in Selecting or Using a
Consumer Financial Product or Service………………..…19

    iv.    CFLA Does Not take unreasonable advantage of the
Reasonable Reliance by the Consumer…………………..20

6. CFLA and Lehman Do Not Provide "Consumer Financial Products and
Services as Defined Under 12 U.S.C. Section 5531(A)……………..…21

    i.    Defendants Do Not Do Business With Consumers as
Defined Under 12 U.S.C. Section 5536…………………..21

    ii.    CFLA Never Consults with the Dwelling Lien Holder or
Obtains an Agreement with the Consumer Dwelling Lien
Holder at any Time………………………………………21

    iii.    To Force Defendants to Obtain an Agreement with
Consumers Dwelling Lien Holders Violates Public
Policy…………………………………………………..22

VII.    CONCLUSION…………………………………..……………………..22

# TABLE OF AUTHORITIES

*Seila Law LLC v. CFPB*,
2019 U.S. S.CT. Rsp. Brf. Lexis 4516, 11……………………………….…4,5,6,13

*Consumer Financial Protection Act*,
Pub. L. 111-203, Title X, § 1051 et seq., July 21, 2010, 124 Stat. 2018……………...5

*CFPB v. Seila Law*,
2019 U.S.S. CT Briefs Lexis 2817, 24……………………….……...……5,10

*Humphrey's Executor v. United States*,
295 U.S. 602 at 619 (1935)………………………………….…….…..5,6,10,14

*Navarro v. Block*,
250 F.3d 729, 732 (9th Cir. 2001)………………………………………...12

*Williams ex rel. Tabiu v. Gerber Products Co.*,
523 F.3d 934, 938 (9th Cir. 2008)………………………………………...12

*Bell Atlantic Corp. v. Twombley*,
550 U.S., 127S.Ct.1955, 1974, 167 L.Ed 29 929 (2007)………………………...12,13

*Thompson v. Davis*,
 295 F.3d 890, 895 (9th Cir.2002)………………………………………13

*Ileto v. Glock, Inc.*,
349 F.3d 1191, 1200 (9th Cir. 2003)………………………………………13

*Morley v. Walker*,
 175 F.3d 756, 759 (9th Cir.1999)………………………………………...13

*PHH Corp. v. CFPB*,
839 F.3d 1, 17 (D.C. Cir. 2016)………………………………………..13

# STATUTES

*Federal Rule of Civil Procedure 12(b)(6)* …………………………………………3

*12 U.S.C. § 5581(a)*………………………………….……………………3, 5

*12 U.S.C. § 5563(a)*………………………………….……………………3, 5

1    *12 U.S.C. § 5562(b)(1)*……………………………...…………………………....3, 5

2    *12 U.S.C. § 5565(a)(2)* ………………………………………....……………....3,5

3    *12 U.S.C. § 5491(c)(1)*………………………...……………………....……....3,5

4    *12 U.S.C. § 5491(c)(3)*…………………………….……………………………3,4,5,

5    *12 U.S.C. § 5491(c)(2)*…………………………………………….……………4,5

6    *12 U.S.C. § 5497(a)*………………………………………………………4, 5

7    *12 USC § 5531(a)* …………………………………………….5, 11, 17,20

8    *12 USC § 5531(c)* ………………………………………… …… ……………18

9    *12 U.S.C. § 5532 (a)*,……………………………………………………6,12

10   *12 C.F.R. § 1015.2*…………………………………………….6,11,16,17

11   *12 USC. § 5531 (d)*…………………………………………………6,12,20,21

12   *Federal Rule of Civil Procedure 24 (B)* …………………………………7

13   *12 U.S.C. § 5491(c)(3)* …………………………………………8,14,15

14   *12 U.S.C. § 5497(a)(1)* …………………………………………………8

15   *12 U.S.C. § 5497(a)(2)(C)*……………………………………………8

16   *12 U.S.C. §  5491(c)(1)*………………………………………………8

17   *12 U.S.C. §  5581(a)(1)(A)*………………………….…………………8

18   *12 U.S.C. § 5481(14)*…………………………………………………8

19   *12 U.S.C. §  5581(b)*……………………………………………………8

20   *12 U.S.C. §§ 5511(a)* …………………………………………………7

21   *12 U.S.C. § 5562*…………………………………….........................8

22   *12 U.S.C. § 5563*…………………………………………………………8,14

23   *12 U.S.C. § 5564*………………………………………………………8

24   *12 U.S.C. § 5565*………………………………………………………8

25   *12 U.S.C. 5536* …………………………………………18, 19, 20

26   *12 C.F.R. § 1015* …………………………………………18, 19, 20

27   12 C.F.R. § 1015.2.  …………………………………………………21

28   *12 C.F.R. §1015.7* …………………………………………………22

     *12 C.F.R. § 1015.3*…………………………………………………22

iv

*12 U.S.C. § 5531 (d)*…………………………..………………………………………..23

**CONSTITUTION**

*U.S. Const. art. II, §§ 1 & 3*………………..…………………………………5, 9

*U.S. Const. art. I, § 7, cl. 1 & § 8, cl. 1*…….…..…………………………..11

*U.S. Const. amend. V* ……………………………………………………13

**OTHER AUTHORITY**

*See Consumer Financial Protection Act,*

Pub. L. 111-203, Title X, § 1051 et seq.,

July 21, 2010, 124 Stat. 2018 (the "CFPA")……………..…………………….......3,4

S. Rep. No. 176, 111th Cong., 2d Sess. 2 (2010)………………………………..6

## I.     THE CFPB IS UNCONSTITUTIONAL BY ITS OWN ADMISSION.

The Bureau of Consumer Financial Protection ("CFPB") has declared itself unconstitutional.  Notwithstanding its unconstitutional authority it brings an action against Certified Forensic Loan Auditors ("CFLA") and Andrew Lehman ("Lehman") (collectively "Defendants").  The CFPB conceded to its unconstitutional structure by stating "the statutory restriction on the President's authority to remove the Director violates the constitutional separation of powers." *Seila Law LLC v. CFPB*, 2019 U.S. S.CT. Rsp. Brf. Lexis 4516, 11.  This issue is now before the United States Supreme Court as Writ of Certiorari was granted for review on the issues of:

(1) Whether the vesting of substantial executive authority in the Consumer Financial Protection Bureau, an independent agency led by a single director, violates the separation of powers; and

(2) Whether, if the Consumer Financial Protection Bureau is found unconstitutional on the basis of the separation of powers, 12 U.S.C § 5491(c)(3) can be severed from the Dodd-Frank Act. *Seila Law,* U.S. No. 19-7, Lexis 6486.

The remedy due to the unconstitutionality of the CFPB is for the United States Supreme Court to decide.  This instant action should be dismissed, or in the alternative stayed, because it was brought by an unconstitutional agency that impedes on the separation of powers vested in the constitution.

CFPB filed its Complaint against CFLA and Lehman on September 9, 2019. On September 17, 2019 the CFPB filed its Responsive Brief in the United States Supreme Court wherein it conceded its unconstitutional authority. *Seila Law,*2019 U.S. S.CT. Rsp. Brf. Lexis 4516, 11.  CFPB knew at the time of bringing this enforcement action that it had no constitutional authority to do so as its entire establishment was a violation of the separation of powers.  Given Plaintiff is an unconstitutional agency this action must be dismissed as it is the fruit of a poisonous tree.

## II.   RELEVANT BACKGROUND OF THE CFPB

In July 2010, the President signed into law the Dodd-Frank Wall Street Reform and Consumer Protection Act ("CFPA").  (Dodd-Frank Act), Pub. L. No. 111-203, 124 Stat. 1376. This Act established the Consumer Financial Protection Bureau ("CFPB") headed by a single director ("Director").  *Seila Law,* at Lexis 4516, 1 citing to Consumer Financial Protection Act, Pub. L. 111-203, Title X, § 1051 et seq., July 21, 2010, 124 Stat. 2018.

Congress gave the CFPB broad authority "to prescribe rules or issue orders or guidelines pursuant to any Federal consumer financial law" previously administered by seven different agencies. 12 U.S.C. § 5581(a). The CFPB may "conduct hearings and adjudication proceedings," "issue subpoenas," and pursue a broad range of legal and equitable relief, including "civil money penalties." 12 U.S.C. §§§ 5581(a), 5563(a), 5562(b)(1), & 5565(a)(2). The Director serves a five-year term. §5491(c)(1). The Director enjoys power without presidential supervision, because he or she is removable only "for inefficiency, neglect of duty, or malfeasance in office"— only for cause. §5491(c)(3). The Director's term extends "until a successor has been appointed and qualified." §5491(c)(2). The Director also sets the CFPB's budget. §5497(a).   Despite this overreaching power of quasi-executive, quasi-legislative and quasi-judicial authority the only qualification required for the Director is that he or she be a United States Citizen.  12 U.S.C. §5481 (c)(1)-(2).

When the Federal Trade Commission ("FTC") was enacted by Congress its establishment was similar in that "any commissioner may be removed by the President for inefficiency, neglect of duty or malfeasance in office"- for cause.  *CFPB v. Seila Law*, 2019 U.S.S. CT Briefs Lexis 2817 at 24 citing to *Humphrey's Ex'r*, 295 U.S. at 619.  However, it was also established to be "non-partisan" and act with "impartiality." *Id.* Congressional intent was to "create a body of experts- a body which shall be independent of executive authority" *Seila Law*, Lexis 2817 at 24.

The Court in *Humphrey's* further reasoned that the "commissioner is to be non-partisan, and it must from the very nature of its duties, act with entire impartiality…

its duties are neither political nor executive but predominately quasi-judicial and quasi legislative." *Id.* at 624.  In *Humphrey's*, the court concluded that congressional intent is to "create a body of experts who shall gain experience by length of experts- a body which shall be independent of executive authority." *Id.*  Congress may only limit the power of the President to remove the Director if it is a multi-member "body of bi-partisan experts." *Id.*

"If the exception to the presidential removal power is to apply [12 U.S.C. §5491(c)(3) ] it can only apply when all factors supplied by *Humphrey's Executor* are present." *Seila Law,* Lexis 2817 at 36.  "This includes a multimember body of "experts" from different political parties who are to be "nonpartisan" and act "impartially."  *Id.* The CFPB has one partisan Director who makes all decisions and "who enjoys a sweeping portfolio over all the nation's consumer protection laws" and this is "far removed" from such requirements.  *Id.*

Given the CFPB has one director who is quasi-legislative, quasi-executive, quasi-judicial *and* partisan, the entire CFPB is unconstitutional and it reaches farther than just the removal exception.  The entire agency is unconstitutional, and the remedy cannot be to sever the "removal" exception from the Dodd Frank Act.

Aside from the unconstitutionality of the CFPB which results in this entire case to be unconstitutional and warrants a dismissal is that the CFPB was created as "a direct and comprehensive response to the financial crisis that nearly crippled the U.S. economy beginning in 2008." *Seila Law,* Lexis 4516 at 11 citing to S. Rep. No. 176, 111th Cong., 2d Sess. 2 (2010).  The same financial crises that resulted from the banking industry dumping worthless mortgage backed securities on the retirement accounts of the unsuspecting public.  CFPB was enacted by President Obama to ensure "that the consumer have access to markets for consumer financial products and services and that markets for [such] products and services are fair, transparent, and competitive."  12 U.S.C 5511 (a).

However, the CFPB now targets CFLA, an organization that helps consumers fight the same financial institutions that created the financial crisis by defrauding

6

1   millions of homeowners.  CFLA reveals the ownership of securitized mortgages by

2   relating them back to a specific mortgage backed securities trust vehicle that would

3   otherwise be hidden by the financial institution (e.g. Audit).   Many homeowners,

4   hedge funds, mortgage brokers and other professionals wish to know this information.

5   ### III.   PROCEDURAL HISTORY

6   The Complaint is the latest effort by the CFPB in its quixotic quest against

7   CFLA and Lehman, which will be over two (2) years.

8   On or about August of 2017, CFLA was served in its League City, TX Office

9   with a Civil Information Demand ("CID"), which required immediate production of

10   documents and Interrogatories with very precise instructions set forth in the CID.

11   CFLA and Lehman produced more than 2,000 Bloomberg Securitization Audits with

12   dates, recorded documents, and quiet title litigation packages, as well as more than

13   50,000 emails all in native format, and a combined approximately 750,000 pages of

14   documents.  Additionally, CFLA and Lehman provided full and complete responses

15   to Interrogatories, with numerous parts and discrete subparts, and were further

16   subjected to written interrogation of their private financial affairs; all under

17   compulsory order of the CFPB.

18   In or about March of 2019, Lehman was deposed in Houston, TX for two (2)

19   days and the CFPB then issued a Notice & Opportunity to Respond ("NORA") letter

20   outlining what it considered were purported violation of legal issues.   CFLA

21   disagreed, and thus the instant Complaint for Damages & Injunctive Relief was filed

22   by the CFPB, naming Lehman, and CFLA, and Carrigan, all as Defendants, and

23   simultaneously filing and Order for Stipulation of Entry of Judgment between CFPB

24   and Carrigan, who was Lehman's lead auditor for eight (8) years at CFLA.

25   ### IV.   SUMMARY OF FACTS

26   **The Audit**:  Since 2007, CFLA has globally served attorneys, investors, hedge

27   funds, and licensed brokers with Mortgage Backed Securities Data through

28   proprietary searches using the best available technology, including the use of the

Bloomberg, LP Terminal.   The Audit document provides loan securitization level

details on individual mortgage loans.  For example, a securitization analysis traces the assignment, purchase, sale and transfer of the mortgage loan among the participants of the securitization and documents that information in the Audit.  The Audit is nothing more than a compilation of data pertaining to the securitization of a real property loan.

**MCLE Seminars**:  CFLA has also performed State Bar Approved Continuing Education 6-hour MCLE Seminars about Mortgage Securitization & Foreclosure Defense Strategies in the following States: CA, NV, TX, FL, NY, NJ, IL, and HI (hereinafter "MCLE Seminars").

**Litigation Packages**:  CFLA also sold lawyers quiet title services which is essentially a complaint package that includes an Ex Parte template to stop a trustee sale and Lis Pendens (hereinafter "complaint package").

**Training Classes**:  Further, CFLA also pioneered the Mortgage Securitization Analyst Training Class and Ambassador Mortgage Securitization Analyst Class (with more than 2,000 Graduates) wherein trainees were taught how to track residential & commercial Mortgage Backed Securities Data on the Bloomberg Terminal as well as the SEC.GOV site to correctly ascertain the "consumer dwelling lien holder" for the Attorney (hereinafter "training classes").

## V.    SUMMARY OF ARGUMENT

CFPB has no vested authority upon it by the Consumer Financial Protection Act of 2010 ("CFPA") to bring forth this suit for several reasons:

First, the CFPB cannot state a claim upon which relief can be granted since the CFPB's Director has conceded that "the statutory restriction on the President's authority to remove the Director violates the constitutional separation of powers." *supra*.  As the Court in *Humphrey's* held, Congress may only limit the powers of the President to remove the Director if it is a "multimember, board of experts who are all bipartisan.  *Humphreys*, 295 U.S. at 619.  As the CFPB Director self-proclaims that her position is unconstitutional this action must be dismissed immediately to avoid further irreparable harm to Defendants who have suffered already over two (2) years

8

of intense investigation with the CFPB through a Civil Investigative Demand ("CID") and suffered financial losses as a result therefrom all from an unconstitutional agency.

Second, even if the CFPA were to be found constitutional, Regulation O does not govern Defendants as CFLA does not provide mortgage-assistance-relief services to consumers.  Pursuant to 12 C.F.R. §1015.2 a mortgage relief service provider provides "a service, plan or program." CFLA does not provide homeowners or businesses with a "service, plan or program." The Audit is the compilation of factual data from research pertaining to a securitization of a home loan, similar to a title search.  CFLA does not service, plan or provide a program that assist the homeowner with obtaining a loan modification or stopping the foreclosure.

Regulation O further does not apply, as CFLA does not consult with the consumer, negotiate on behalf of the consumer or act in any way as an agent of the consumer.  CFPB has failed to sufficiently plead that Defendants offer a service, plan or program as a mortgage service relief provider to consumers.

Third, even if the CFPB were constitutional, the CFPB does not have authority Under 12 USC § 5531 (a) to bring a claim against CFLA or Lehman as they have

1) not engaged in a practice that is likely to cause substantial injury to consumers, and

2) any such alleged substantial injury is outweighed by countervailing benefits to the consumer or to competition.   The CFPB has failed to address any substantial injury in its complaint.  No such injury exists. Further, if any such purported injury exists (which it does not) the countervailing benefits outweigh such injury.  Consumers have benefitted from their attorney having important financial data pertaining to their loan.  This is pertinent data that the attorney otherwise would not have known.  Every homeowner should know how their loan is securitized.  Rather than being transparent about loan ownership, the banks intentionally conceal this information.

Fourth, the complaint fails to state a claim upon which relief may be granted as CFLA does not provide "Consumer Financial Products & Services" as defined Under 12 U.S.C. § 5532 (a) and

Lastly, under 12 USC § 5531 (d), CFPB has no legal authority to pursue a cause of action for Abusive Trade Practices as CFLA has failed to sufficiently plead that CFLA materially interfered with the ability of a consumer to make an informed reasoned choice to utilize the CFLA service,  as the section expressly states that the CFPB has no authority to declare an act or practice abusive in connection with the provision of a consumer financial product or service, unless the act or practice

(1)  materially interferes with the ability of a consumer to understand a term or condition of a consumer financial product or service or

(2) takes unreasonable advantage of—

(A)  a lack of understanding on the part of the consumer of the material risks, costs, or conditions of the product or service;

(B) the inability of the consumer to protect the interests of the consumer in selecting or using a consumer financial product or service or

(C) the reasonable reliance by the consumer on a covered person to act in the interests of the consumer.

## VI.   LEGAL STANDARD

Under Fed. R. Civ. Proc. 12(b)(6), a motion to dismiss lies where the complaint reveals a "failure to state a claim upon which relief can be granted."  Such a motion is meritorious "where there is no cognizable legal theory, or an absence of facts alleged to support a cognizable legal theory."  (*Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)), or where the "plaintiffs have not 'pled enough facts to state a claim to relief that is plausible on its face" ((*Williams ex rel. Tabiu v. Gerber Products Co.*, 523 F.3d 934, 938 (9th Cir. 2008), quoting *Bell Atlantic Corp. v. Twombley*, 550 U.S., 127S.Ct.1955, 1974, 167 L.Ed 29 929 (2007)).

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b) 6, the court must give no effect to "legal conclusions couched as "factual allegations." *Bell*

*Atlantic Corp. v. Twombley*, 550 US, 127 S.Ct. 1955, 1974, 167 L.Ed. 29, 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." (*Id.*) "While a complaint attached by a Rule 12 (b) (6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation not provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (*Bell Atlantic*, *id*. At 1964-1965.)

A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." (*Twombley*, supra, 550 U.S., 127 S.Ct. 1955, 1969.)  The factual allegations must be definite enough to "raise a right to relief above the speculative level." (*Id.* At 1965)

In reviewing a motion to dismiss under Rule 12 (b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. (*Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.2002).  However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. (*Ileto v. Glock, Inc*., 349 F.3d 1191, 1200 (9th Cir. 2003)) Affirmative Defenses may be upheld if they are established on the face of the complaint. (See *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999).)

## 1.    An Unconstitutional Agency Cannot Bring an Enforcement Action Against Defendants and Therefore Cannot State a Claim Upon Which Relief Can be Granted.

The CFPB is an unconstitutionally structured agency that has aggregate legislative, executive and judicial power into the hands of one director. *Id.* §§ 5563(a), 5562(b)(1), & 5565(a)(2).  As the district court properly stated in addressing the unconstitutionality of the CFPB, "other than the President, the Director of the CFPB is the single most powerful official in the entire U. S. Government, at least when measured in terms of unilateral power." *PHH Corp. v. CFPB*, 839 F.3d 1, 17 (D.C. Cir. 2016).  Yet, this powerful person only requires that he or she be a United States Citizen to qualify and is not elected into power.  12 U.S.C. 5491(b)(3).  This kind of

authority is dangerous as it "threatens, the individual liberty protected by the Constitution's separation of powers." *PHH*, 839 F.3d at 17.  Any direction that comes from this unconstitutional agency must be stricken and dismissed as a result of the fruit of a poisonous tree.  The entire CID was unconstitutional, along with the NORA letter issued to Defendants and this instant Complaint must be dismissed.   The Directors actions in this case, as in all cases, violates the constitutional liberty of the Defendants.

On September 17, 2019 the CFPB filed its Responsive Brief in the United States Supreme Court in the *Seila Law* matter conceding that the Director's position  was unconstitutional. *Supra.*  On September 9, 2019, under the Director's unconstitutional authority the CFPB filed this instant action knowing it was before the United States Supreme Court to decide how to handle its unconstitutional structure that violates the separation of powers.  This enforcement action and this Complaint were filed as a result of a violation of Defendants constitutional rights.  CFPB has unclean hands and should not have brought an action against Defendants knowing that its structure violated the separation of powers.  This action should be dismissed as it is the fruit of the poisonous tree.

> **2.   The CFPB's Establishment is Unconstitutional as the Director has a Partisan, Lone Role with Sweeping Authority that Encroaches Upon all Three Branches of Government Therefore the Case Must be Dismissed.**

Given the CFPB has one director who is quasi-legislative, quasi-executive, quasi-judicial *and* partisan, the entire CFPB is unconstitutional and it reaches farther than just the removal exception under 12 U.S.C. §5491(c)(3). §5581(a), §5563(a), 5562(b)(1), & 5565(a)(2). The entire agency is unconstitutional, and the remedy cannot be to sever the "removal" exception as the structure is unconstitutional.   The "checks and balances" of the constitution allowing for separation of powers prevents tyranny, maintains democracy and to allow this sole director, who is partisan with quasi-legislative, quasi-judicial and quasi-executive authority to proceed would

violate the separation of powers of the three branches of government and as such be a violation to the constitutional rights of all citizens.

When the Federal Trade Commission ("FTC") was enacted by Congress its establishment was similar in that "any commissioner may be removed by the President for inefficiency, neglect of duty or malfeasance in office" – in other words for cause. *Seila Law*, 2019 U.S.S. CT Briefs. Lexis 2817 at 24 citing to *Humphrey's Ex'r*, 295 U.S. at 619.  However, it was also established to be "non-partisan" and act with "impartiality." *Seila Law*, 2019 U.S.S. CT Briefs. Lexis 2817 at 24.

Most importantly, the congressional intent of the commission was to "create a body of experts- a body which shall be independent of executive authority" *Id*.  The Court in *Humphrey's* further reasoned that "the commissioner is to be non-partisan, and it must from the very nature of its duties, act with entire impartiality… its duties are neither political nor executive but predominately quasi-judicial and quasi legislative." *Id*. The Court in *Humphrey's* concluded that congressional intent is to "create a body of experts who shall gain experience by length of experts- a body which shall be independent of executive authority." *Seila Law*, 2019 U.S.S. CT Briefs. Lexis 2817 at 24 citing to *Humphrey's Ex'r*, 295 U.S. at 619.  Further, the FTC is not executive.  It is only quasi-legislative and quasi-judicial. *Seila Law*, 2019 U.S.S. CT Briefs. Lexis 2817 at 24.  It does not encroach upon all three branches of government.

As stated against the constitutionality of CFPB "if the exception to the presidential removal power is to apply [(12 U.S.C. §5491(c)(3)] it can only apply when all factors supplied by the Court in *Humphrey's* are present. *Id*.  This includes a multimember "body of "experts" from different political parties who are to be "nonpartisan" and act "impartially." *Id*.  The CFPB has one partisan Director who makes all decisions and "enjoys a sweeping portfolio over all the nation's consumer protection laws" and this is "far removed" from such requirements. *Id*.  The CFPB is an unconstitutional entity given too much power to one individual without any checks and balances therefore this case must be dismissed.

### 3.     An Audit on Its Own Does Not Provide Mortgage Relief Services Therefore Lehman and CFLA are Not Within the Class of Regulation O and CFPA.

12 C.F.R. §1015.2 or "Regulation O" prohibits "mortgage relief service providers from requesting or receiving an advanced fee." CLFA cannot be a "mortgage relief service provider" as it is defined under the statute as "any service, plan, or program, offered or provided to the consumer in exchange for consideration, that is represented, expressly or by implication, to assist or attempt to assist the consumer with… stopping, preventing or postponing the mortgage." 12 C.F.R. §1015.2

CFPB has failed to sufficiently plead facts that CFLA is a mortgage relief service provider. CFPB pleads in its complaint that "LEHMAN either personally provided Audits to consumers, or he arranged for CFLA to do so." (Pltf.'s FAC Pg. 10 ¶ 49, L 15). Plaintiff's complaint is devoid of any factual allegations that CFLA is a "mortgage relief service provider." To plead that CFLA and Lehman sold Audits is not enough to meet the definition of a mortgage relief assistant provider. An Audit on its own does not provide mortgage relief services. An audit, on its own, is factual informative material- that is it. In its simplest terms, a securitization analysis is to a residential mortgage loan, what a title search is to a real estate transaction. A document such as a title search, are not included in the definition of a mortgage relief service provider and cannot on its own be a "mortgage relief service provider" and does not meet the definition under 12 C.F.R. § 1015.2.

### i.     Defendants Cannot Be Considered Mortgage Assistance Relief Service Providers Within the Scope of Regulation O; Codified at 12 C.F.R. § 1015.

Mortgage Assistance Relief Service means any "service, plan, or program offered or provided to the consumer in exchange for consideration that is represented, expressly or by implication, to assist or attempt to assist the consumer with any of the following: (1) Stopping, preventing, or postponing any mortgage or deed of trust

foreclosure sale for the consumer's dwelling, any repossession of the consumer's dwelling, or otherwise saving the consumer's dwelling from foreclosure or repossession" 12 C.F.R. § 1015.2.

CFPB has failed to plead any facts that CFLA and Lehman are a "service, plan or program" engaged in the "stopping, preventing, or postponing any mortgage or deed of trust foreclosure sale for the consumer's dwelling, any repossession of the consumer's dwelling or otherwise saving the consumer's dwelling from foreclosure or repossession" 12 C.F.R § 1015.2

The Audit is a good not a "service, plan or program." The sale of good does not have the same character or conduct as the offering of a service to the consumer. Once CFLA sells the Audit it has no other contact with anyone regarding that loan. CFLA sells goods and thus not a "services, plan, or program" as required under 12 C.F.R. § 1015.2. Once the Securitization Audit is received, the characterizations at the time of receipt a product and not a service, plan or program.

By the definition of "mortgage relief service provider" within 12 C.F.R. § 1015.2, it was enacted to prevent companies that perform services, or provide a plan or program that engages in the foreclosure procedure such as a loan modification company that claims to actively deal with the banks on behalf of consumers. CFLA provides research material- an Audit. The statute does not include, nor contemplate, the sale of a Securitization Audit which CFLA provides.

**4.    CFPB has Failed to Plead Facts to Show a Substantial Injury to Consumers or that the Substantial Injury is not Outweighed by Countervailing Benefits to the Homeowner.**

Count III of CFPB's complaint alleges a violation of 12 U.S.C. § 5531 (a) which provides that the CFPA prohibits a covered person from engaging in "unfair, deceptive or abusive act or practice under federal law in connection with any transaction with a consumer for a consumer financial product or service, or the offering of a consumer financial product or service."

U.S Code § 5531  (c) (1) further provides that "The Bureau shall have no authority under this section to declare an act or practice in connection with a transaction with a consumer for a consumer financial product or service, or the offering of a consumer financial product or service, to be unlawful on the grounds that such act or practice is unfair, unless the Bureau has a reasonable basis to conclude that—

(A) the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers; and

(B) such substantial injury is not outweighed by countervailing benefits to consumers or to competition."

First, CFLA does not serve consumers or provide consumer financial products. CFLA serves licensed professionals only such as lawyers, real estate brokers and hedge funds.

Secondly, CFBP has failed to sufficiently plead that CFLA engages in a practice that is likely to cause substantial injury to consumers and if there is any purported, substantial injury (which there is not) CFPB failed to show any such alleged injury is not outweighed by the benefit to consumers.  CFLA provides

1) informative data through "securitization audits";

2) complaint packages purchased by licensed Attorneys;

3) training seminars on how to perform audits and

4) State Bar Approved MCLE's.

*Where is the injury to homeowners?*  If Plaintiff conjured up some purported injury it failed to plead those facts in the Complaint.   CFBP is abusing its extreme and unconstitutional power (currently up for decision with the United States Supreme Court) by bringing this claim against CFLA absent any authority.

i.      **The CFPB Cannot and, Has Not, Established That Defendants Have Engaged in a Practice Likely to Cause Substantial Injury to the Consumer.**

CFPB has failed to allege any substantial injury its Complaint. At no time, has an injury to a homeowner existed by selling any one of CFLA's Audits, or CFLA conducting any one of its training seminars or holding MCLE State Bar Approved seminars and selling legal templates such an Ex Parte or Lis Pendens (from which many courts have ordered an injunction for a trustee sale).   At no time was a homeowner injured through any one of those services.   The CFPB has failed to allege any injury to a consumer.

Through a Civil Information Demand ("CID"), CFPB has had the entire (a) email database, (b) every one of the Bloomberg Securitization Audits & Quiet Title Packages produced by CFLA since 2014, (c) copies of the executed CFLA service agreements, (d) complete customer lists of CFLA Clients, (e) complete and full disclosure of all information since December of 2017  when CFLA produced more than 750,000 pages of documents to the CFPB, more than 50,000 emails to the CFPB and answered numerous specially prepared interrogatories to the CFPB.  Through all that discovery obtained, CFPB has not alleged in its complaint that a single homeowner has been injured as a result of CFLA's services.  Even after two years of investigation, the CFPA has alleged no facts in its complaint to show an injury to a homeowner as no such injury exists.

ii.     **The CFPB Cannot Establish That Any Substantial Injury to the Consumers is Not Outweighed by Countervailing Benefits to Consumers or to Competition.**

CFPB has failed to meet the first prong of 12 U.S.C Section 5531 (a) as it failed to show a substantial injury to homeowners but even if, *assuming for the sake of arguendo*, CFPB pleads an injury to homeowners it fails to further establish that any such purported injury is not outweighed by the benefit to consumers.

17

There is a great benefit to consumers having access to a securitization search of their mortgage.   The audits provide homeowners with transparency, data and information.  Information is power.  Under no circumstance can facts be fraudulent. The securitization audits inform professionals as to pertinent data pertaining the securitization of a mortgage.  There is no substantial injury, CFPB failed to plead any such injury and failed to plead that any such injury.  There can be no substantial injury as the purchaser of the Audit wishes to know the information the Audit provides and chooses to purchase that data.

**5.     The CFPA Has No Authority Under CFPA to Declare the Conduct of CFLA Abusive as it Does not Meet the Requirements Under 12 USC Section 5531 (d).**

Under *12 U.S.C. § 5531 (d)* the Bureau shall have no authority under this section (i.e. the C.F.P.A.) to declare an act or practice abusive in connection with the provision of a consumer financial product or service, unless the act or practice—

(1) materially interferes with the ability of a consumer to understand a term or condition of a consumer financial product or service; or

(2) takes unreasonable advantage of—

(A) a lack of understanding on the part of the consumer of the material risks, costs, or conditions of the product or service;

(B) the inability of the consumer to protect the interests of the consumer in selecting or using a consumer financial product or service; or

(C) the reasonable reliance by the consumer on a covered person to act in the interests of the consumer.  *12 U.S.C. § 5531 (d).*

**i.     CFLA Does Not Materially interfere with the ability of a consumer to understand a term or condition of a consumer financial product or service;**

CFPB has failed to sufficiently plead that CFLA materially interferes with the ability of a consumer to understand a term or condition of a consumer financial product pursuant to 12 U.S.C.§ 5531(d).  The professional purchases the Audit with

the understanding that it is compilation of data found regarding the security of their home through a search, similar to a title search.  Further, lawyers have a wealth of understanding of the complaint package prior to purchasing.

### ii.   CFLA Does Not take unreasonable advantage of the consumer.

The CFPB has failed to plead any facts in its compliant that CFLA has taken unreasonable advantage on the part of the consumer of the material risks, costs or conditions of the product or service pursuant to 12 U.S.C § 5531 (d).  CFLA contracts with professionals to sell "securitization Audits" and CFLA gives its clients extensive agreements, in clear terms, to have their clients sign which states in clear terms all the material aspects of the Securitization Audit.  The purchaser of the Audit has seen a template prior to purchase.  The Audit is purchased with sole intent of knowing the parties involved in the securitization of the loan (e.g. trustee, mortgage service provider, bank, securitization holder).  All Audits contain that information that is unique to that individual loan.

CFLA makes no guarantees as to the work product or the results of the work product and charges a very small fee for the securitization Audit (i.e. between $500 - $1,000) depending on the volume of client files that the Attorney is generating.  There are very few risks, if any, CFLA does not contact the dwelling lien holder, or transact on behalf of the consumer in any way.  The total risk is the cost of the service and the cost is very low considering the consumer would have to spend more than $10,000.00 to get a Bloomberg Terminal themselves and lookup the same information, and this assumes that the Consumer would have the advanced skills to navigate the terminal themselves.

### iii.   CFLA Does Not take Unreasonable Advantage of the Interests of the Consumer in Selecting or Using a Consumer Financial Product or Service.

The CFPB has failed to plead any sufficient facts that CFLA is taking advantage of its clients.  Consumers, which are law firms, mortgage brokers and professionals

know what they are purchasing, which is information pertaining to the securitization of the loan. The consumer wishes to know the assignment, purchase, sale and transfer of the loan. The CFLA as a business to business provider cannot be reasonably considered to be taking advantage of its Law Firm clients whose practice in this Industry is their expertise.

### iv. CFLA Does Not take Unreasonable Advantage of the Reasonable Reliance by the Consumer.

CFLA has no interaction with the homeowner. CFLA works directly and only with professionals such as lawyers, mortgage brokers and hedge funds. Thus, the consumer cannot as a practical matter expect CFLA to act in the best interests of the consumer. Further, CFLA only sells an Audit, there is no reasonable reliance by the consumer other than to purchase the information contained in the Audit.

### 6. CFLA and Lehman Do Not Provide "Consumer Financial Products and Services as Defined Under 12 U.S.C. Section 5531 (A)

The CFPB's complaint alleges Defendants' are covered persons Under 12 USC Section 5531 (defined as any person that engages in offering or providing a consumer financial product or service), because Defendants' have it "offers or provides consumer financial related products or services, including financial advisory services, such as providing services to assist a consumer with debt management or debt settlement, modifying the terms of any extension of credit, or avoiding foreclosure." (Plntfs. FAC P. 11, ¶ 55, L 14)

CFLA and Lehman do not engage in any service of credit or debt counseling or debt management to the consumer. Defendants have never consulted with, advised, or provided any advice to a consumer at any time. CFLA sells factual data to professionals. CFPB fails to state specifically any actual consumers that were advised, consulted, or offered any advice from CFLA. Quite to the contrary, CFLA makes its customers expressly acknowledge that CFLA does not offer any advisory services, consulting or otherwise to any consumer at any time. CFLA is merely a source for Securitized Data for licensed Attorneys and Professionals. Plaintiff's

20

complaint fails to state a cognizable legal theory as to how CFLA is a covered person and fails in its entirety.

### i.   Defendants' Do Not Do Business with Consumers as Defined Under 12 U.S.C. § 5536

CFLA sells only to Attorneys and businesses its Bloomberg Securitization Audits & Quiet Title Forms and has never been engaged in any financial advisory services or selling any products to any consumer. CFLA states clearly on its website with bold disclaimers, as well as in its client agreements that "CFLA Does not engage in any Loan Modification Services or Transact on behalf of the Consumer in any way, including negotiating with any consumer's dwelling lien holder," rather, it is CFLA advanced work product "The Bloomberg Property Securitization Report" that correctly identifies for the attorney or licensed real estate broker who the actual consumer dwelling lien holder actually is.  CFLA does not, and has never, contracted with any unrepresented parties, even though services may be ordered over the internet the client must expressly acknowledge that (a) they have an attorney representing them in the instant matter, and that (b) they are not requesting this Securitization Audit on their own personal residential owner occupied residence."

### ii.   CFLA Never Consults with the Consumer or   Obtains   an Agreement with the Consumer Dwelling Lien Holder at Any Time

To ask CFLA a data service and auditing service provider to secure an agreement with a "consumers dwelling lien holder" would require CFLA to act outside the scope of its business model as it sells to professionals.  CFLA does not engage in any services, plans or programs to the consumer to secure an agreement.

### iii.   To Force Defendants to Obtain an Agreement with the Consumers Dwelling Lien Holder Violates Public Policy

Further, to require Defendants' to consult with Consumer's Dwelling Lien Holder and obtain an agreement on behalf of the consumer would violate public policy as it would encourage Defendants' to violate 10th Amendment Rights Afforded to the

Respective States such as the Unlawful Practice of Law or other Service requiring State Licensing and Specialization that Defendants Never Purport to Possess.

## VII. CONCLUSION

In conclusion, Plaintiff CFPB is an unconstitutional agency that has overreaching unconstitutional powers that are executive, judicial and legislative. All investigations and conduct stemming from CFPB must be dismissed, including this FAC, as it is the fruit of a poisonous tree and violates Defendants constitutional rights.

Moreover, Plaintiff's FAC is fundamentally defective. Defendants CFLA LLC, TX, and Andrew P. Lehman respectfully pray that the Court grant its motion for dismissal under Federal Rule of Civil Procedure 12(b)(6), and that Plaintiff's FAC be dismissed in its entirety with prejudice or in the alternative, the Court Stay this proceeding pending a resolution by the USC on the ripe issue of the constitutionality of the CFPB.

Dated: December 4, 2019                    Respectfully submitted,


                                           _____/s/ Maryam Atighechi_____
                                           Attorney(s) For Defendants,
                                           CERTIFIED FORENSIC
                                           LOAN AUDITORS, LLC, TX
                                           and ANDREW P. LEHMAN

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served upon the counsel of record by the Central District of California ECF method or by certified mail, return receipt requested on the fourth (4th) day of December 2019.

_____/s/ Maryam Atighechi_____
Attorney(s) For Defendants,
CERTIFIED FORENSIC
LOAN AUDITORS, LLC (TX), AND
ANDREW P. LEHMAN