BENJAMIN VAUGHN, DC Bar #999347
E-mail: Benjamin.vaughn@cfpb.gov
Phone: (202) 435-7964
GABRIEL HOPKINS, NY Bar #5242300
Email: Gabriel.hopkins@cfpb.gov
Phone: (202) 435-7842
1700 G Street, NW
Washington, DC 20552
Fax: (202) 435-7722

LEANNE E. HARTMANN, CA Bar #264787 - Local Counsel
E-mail: Leanne.hartmann@cfpb.gov
301 Howard St., Suite 1200
San Francisco, CA 94105
Phone: (415) 844-9787
Fax: (415) 844-9788

*Attorneys for Plaintiff Bureau of Consumer Financial Protection*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Bureau of Consumer Financial Protection,

Plaintiff,

vs.

Certified Forensic Loan Auditors, LLC (CA); Certified Forensic Loan Auditors, LLC (TX); Andrew Lehman; and Michael Carrigan,

Defendants.

Case No.: 2:19−cv−07722 ODW (JEMx)

OPPOSITION TO MOTION TO DISMISS BY CERTIFIED FORENSIC LOAN AUDITORS (TX) AND ANDREW LEHMAN

# Table of Contents

Introduction.......................................................................................... 1

Background........................................................................................... 2

Legal Standard...................................................................................... 4

Argument............................................................................................... 5

I. CFLA and Lehman are subject to the CFPA and Regulation O...................... 5

a. Defendants are subject to the CFPA and Regulation O because they provided financial-advisory services and mortgage-assistance-relief services.................. 6

b. The FAC properly alleges that Defendants' Audits are financial-advisory services and mortgage-assistance-relief services. ........................................... 7

II. The FAC states claims for relief under the CFPA and Regulation O.............. 9

a. Substantial injury and balance of countervailing benefits are not elements of deception or abusiveness under the CFPA. ................................................... 9

b. The FAC has stated a claim for abusive acts or practices under the CFPA.. 11

c. Defendants have waived any argument that the Bureau has failed to state a claim in its remaining CFPA and Regulation O claims.................................. 13

III. Defendants' constitutional objections do not warrant dismissal. .................. 13

IV. Conclusion.......................................................................................... 16

## Table of Authorities

### Cases

*Caltex Plastics v. Lockheed Martin Corp.*, 824 F.3d 1156 (9th Cir. 2016)........... 4, 5

*CFPB v. Access Funding, LLC*, 270 F. Supp. 3d 831 (D. Md. 2017)................ 10, 12

*CFPB v. Gordon*, 819 F.3d 1179 (9th Cir. 2016) ..........................................7, 10

*CFPB v. Navient Corp.*, No. 3:17-CV-101, 2017 WL 3380530 (M.D. Pa. Aug. 4, 2017)........................................................................................ 15

*CFPB v. Think Fin., LLC*, No. CV-17-127-GF-BMM, 2018 WL 3707911 (D. Mont. Aug. 3, 2018) ........................................................................... 12

*Clark v. Ocwen Loan Servicing, LLC,* No. 1:17-CV-03027-TCB-AJB, 2018 WL 1804349 (N.D. Ga. Jan. 18, 2018) ...................................................4

*Collins v. Mnuchin*, 938 F.3d 553 (5th Cir. 2019) .............................................. 15

*Davis v. Select Portfolio Servicing, Inc.*, No. 1:17-CV-02359-CC-JCF, 2017 WL 8186844 (N.D. Ga. Nov. 13, 2017)...................................................4

*FEC v. Legi-Tech, Inc.*, 75 F.3d 704 (D.C. Cir. 1996) ........................................ 15

*Frausto v. Murray*, No. 17-cv-00177-SVW-PLA, 2017 WL 5468175 (C.D. Cal. Oct. 4, 2017) ..................................................................................... 13

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010)....... 15

*FTC v. Cantkier*, 767 F. Supp. 2d 147 (D.D.C. 2011)......................................... 10

*FTC v. Good Ebusiness, LLC*, No. 2:16-CV-01048-ODW-JPR, 2016 WL 3704489 (C.D. Cal. July 12, 2016) .......................................................7

*FTC v. Lights of Am. Inc.*, No. 10-CV-1333-JVS (MLGx), 2012 WL 13064911 (C.D. Cal. Apr. 25, 2012)................................................................. 10

*FTC v. Pantron I Corp.*, 33 F.3d 1088 (9th Cir.1994)........................................ 10

*FTC. v. Freecom Commc'ns, Inc.*, 401 F.3d 1192 (10th Cir. 2005)....................... 10

*Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)...........................5

*Goode v. PennyMac Loan Servs.*, LLC, No. 14 C 01900, 2014 WL 6461689 (N.D. Ill. Nov. 18, 2014)....................4

*Hakimi v. Bank of N.Y. Mellon*, No. 2:14-CV-2215 JCM (CWH), 2015 WL 2097872 (D. Nev. May 5, 2015)....................3

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) .................... 5, 7, 12

*M.M. v. Lafayette Sch. Dist.*, 681 F.3d 1082 (9th Cir. 2012).................... 14

*Marder v. Lopez*, 450 F.3d 445 (9th Cir. 2006)....................5

*Mitsevich v. Nat'l City Mortg.*, No. 09-CV-1465-JCC, 2010 WL 11688503 (W.D. Wash. Mar. 17, 2010)....................4

*Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035 (9th Cir. 2010)..........4

*Stephens v. Bank of Am. Home Loans, Inc.*, No. 5:16-CV-660-F, 2017 WL 384315 (E.D.N.C. Jan. 25, 2017)....................4

*Warren v. Hancock Mortg. Corp.,* No. 16-CV-00514, 2016 WL 6689092 (W.D. La. Oct. 6, 2016) ....................4

*Warren v. Hancock Mortg. Corp.*, No. 6:16-CV-00514, 2016 WL 6684611 (W.D. La. Nov. 14, 2016)....................4

*Wilson v. Hewlett–Packard Co.*, 668 F.3d 1136 (9th Cir. 2012)....................5

*Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169 (9th Cir. 2009).................... 13

**Statutes**

12 C.F.R. § 1015.1 ....................7

12 C.F.R. § 1015.2 ....................6

12 C.F.R. § 1015.3(b)(1)....................9

12 C.F.R. § 1015.3(c) ....................9

12 C.F.R. § 1015.5(a) ....................9

12 C.F.R. part 1015 ....................7

12 C.F.R. pt. 1015....................1

12 U.S.C. § 5302 ........ 15

12 U.S.C. § 5481(15)(A) (viii)(II) ........ 6

12 U.S.C. § 5481(15)(A)(viii) ........ 6

12 U.S.C. § 5481(15)(A)(viii)(II) ........ 6

12 U.S.C. § 5481(6)(A) ........ 6

12 U.S.C. § 5491(c)(3) ........ 13

12 U.S.C. § 5531(a) ........ 1, 9

12 U.S.C. § 5531(c)(1) ........ 9

12 U.S.C. § 5531(d) ........ 11

12 U.S.C. § 5531(d)(2)(A) ........ 9, 10, 11

12 U.S.C. § 5536(a) ........ 1

12 U.S.C. § 5536(a)(1)(A) ........ 9

12 U.S.C. § 5536(a)(1)(B) ........ 9, 10

**Other Authorities**

Black's Law Dictionary (11th ed. 2019) ........ 8

FED. TRADE COMM'N, *Mortgage Relief Scams*, https://www.consumer.ftc.gov/articles/0100-mortgage-relief-scams (January 2018) ........ 1

FTC Commentary to the Mortgage Assistance Relief Services Rule ("MARS Rule"), 75 Fed. Reg. 75092-01 ........ 7

Wright & Miller, Federal Rules of Civil Procedure § 1349 (3d ed. 2004) ........ 4

## Introduction

After the 2008 financial crisis, millions of American consumers were affected by an unprecedented housing crash. Desperate homeowners, struggling to make mortgage payments and facing the prospect of foreclosure, sought assistance from companies and individuals that sold the promise of rescue. Mortgage relief scams proliferated. Consumers, who could not afford to waste another dollar, found the fees they paid to these would-be rescuers bought them nothing in return. *See generally* FED. TRADE COMM'N, *Mortgage Relief Scams*, https://www.consumer.ftc.gov/articles/0100-mortgage-relief-scams (January 2018).

The Bureau of Consumer Financial Protection ("Bureau") brought this action to halt the marketing and sale of sham mortgage-relief services to consumers. In its First Amended Complaint, the Bureau alleges that Defendants Certified Forensic Loan Auditors (CA), Certified Forensic Loan Auditors (TX) (collectively "CFLA"), and Andrew Lehman (collectively "Defendants") falsely told consumers that they had a solution to their foreclosure problems—an "advanced," "cutting edge" Securitization Audit ("Audit") of the consumer's mortgage, prepared by "experts," which would "prevent foreclosure" and provide a "powerful and successful means of bringing suit against your mortgage lender." First Am. Compl. ("FAC") ¶ 24. Defendants charged and collected substantial fees from consumers before producing and delivering the Audit, and before consumers obtained any relief. FAC ¶ 18. Based on this conduct, the Bureau alleges violations of the Consumer Financial Protection Act (CFPA), 12 U.S.C. §§ 5531(a), 5536(a); and Regulation O, 12 C.F.R. pt. 1015.

Defendants' motion presents no valid basis under Rule 12(b)(6) for dismissal. In substance, Defendants did not file a motion to dismiss at all—they filed arguments over the merits of the Bureau's factual allegations. They do not cite a single case or other authority to show that the Bureau's allegations are insufficient. Instead, their motion is composed primarily of unsubstantiated factual assertions that are outside

the Bureau's FAC and not properly before the Court on a motion to dismiss. Defendants' factual proffers are in places misleading, in others self-contradictory, and in others flatly contrary to the record developed during the Bureau's investigation.[1] But even if they were accurate, Defendants' quarrels with the merits of the Bureau's claims are entirely irrelevant at this stage.

As properly alleged in the Bureau's FAC, Defendants are subject to the CFPA and Regulation O. The Bureau has sufficiently stated claims that Defendants engaged in abusive and deceptive acts and practices in violation of the CFPA, and made prohibited representations and charged advance fees in violation of Regulation O. And Defendants' arguments regarding the constitutionality of the removal provision in the Bureau's organic statute provide no basis on which to dismiss this case. Defendants' motion to dismiss should be denied.

**Background**

Defendants offer and provide purported loan modification and foreclosure relief services to consumers. FAC ¶ 12. Andrew Lehman is the sole owner and president of CFLA and exercises day-to-day managerial control over its operations. FAC ¶ 7. Michael Carrigan was CFLA's sole auditor. FAC ¶ 11. CFLA tells consumers in marketing materials that it can sell them a solution to their foreclosure problems: a "Quiet Title Package" consisting of an Audit and Litigation Documents. The Litigation Documents, which are purportedly based on the Audit, include a civil complaint against the consumer's mortgage lender, holder, or servicer; a lis pendens; and a temporary restraining order. FAC ¶ 17. CFLA claims the "Quiet Title Package" will prevent foreclosure and allow consumers to assert claims against their mortgage lender and servicer. FAC ¶¶ 14, 21-24. CFLA charges $1,495 for its

---

[1] The Bureau is compelled to note at the outset that certain of Defendants' factual assertions are simply untrue. For example, several of their claims about the Bureau's investigation and the information produced are false, and their self-serving descriptions of their own conduct are thoroughly refuted by the investigative record.

"Quiet Title Package." FAC ¶ 18. CFLA charges the fees before conducting and delivering an Audit and before consumers obtain any mortgage-assistance-relief. *Id*.

CFLA's misrepresentations regarding the Audits and Litigation Documents generally fall into two categories: 1) they will stop foreclosure, keep homeowners in their homes; and 2) they are prepared by qualified industry experts, with specific relevant experience and certifications. FAC ¶¶ 21-24, 34-35. In fact, the Audits are not an effective means to avoid foreclosure or for consumers to otherwise remain in their homes. FAC ¶ 73. The legal conclusions on which the Audits rely have no apparent support in case law. FAC ¶ 33. Courts reviewing Carrigan's work product have excoriated it. *Id*. Before selling an Audit, Defendants make no effort to determine whether the Audits will help a consumer prevent foreclosure. FAC ¶ 30. CFLA and Lehman knew the Audits were not effective—Lehman called some conclusions in the Audits "boilerplate" and "garbage." FAC ¶ 31. The Audits were not prepared by experts. FAC ¶ 73. Contrary to CFLA's marketing claims, CFLA is not "attorney-owned and operated," FAC ¶ 43, it does not have multiple auditors on staff, FAC ¶ 40, and Carrigan did not have any specialized experience in the residential-mortgage industry, FAC ¶ 44. Ultimately, Carrigan did not even understand whether his conclusions were relevant to foreclosure. FAC ¶ 33.

Courts that have considered CFLA's Audits have not viewed them favorably, and the pro se litigants who bought and then filed CFLA Audits in court have fared poorly in their attempts to use them as Defendants advertised. One court noted, while discussing a CFLA Audit, that the "Federal Trade Commission describes so-called 'forensic loan audits' as a technique used by '[f]raudulent foreclosure 'rescue' professionals [who] use half-truths and outright lies to sell services that promise relief to homeowners in distress." *Hakimi v. Bank of N.Y. Mellon*, No. 2:14-CV-2215 JCM (CWH), 2015 WL 2097872, at *4 n.2 (D. Nev. May 5, 2015). Another court, in rejecting a Carrigan-authored Audit, stated that securitization audits of this type

"have been discredited and are insufficient to rehabilitate an otherwise deficient pleading." *Davis v. Select Portfolio Servicing, Inc.*, No. 1:17-CV-02359-CC-JCF, 2017 WL 8186844, at *3 (N.D. Ga. Nov. 13, 2017). Courts have characterized Carrigan's conclusions as "erroneous," *Stephens v. Bank of Am. Home Loans, Inc.*, No. 5:16-CV-660-F, 2017 WL 384315, at *1 n.2 (E.D.N.C. Jan. 25, 2017), "unintelligible," and an "unwarranted deductions of facts." *Clark v. Ocwen Loan Servicing, LLC,* No. 1:17-CV-03027-TCB-AJB, 2018 WL 1804349, at *2 (N.D. Ga. Jan. 18, 2018). The foregoing results are not unique. *See, e.g.*, *Warren v. Hancock Mortg. Corp.,* No. 16-CV-00514, 2016 WL 6689092, at *4 (W.D. La. Oct. 6, 2016), *report and recommendation adopted*, No. 6:16-CV-00514, 2016 WL 6684611 (W.D. La. Nov. 14, 2016); *Goode v. PennyMac Loan Servs.*, LLC, No. 14 C 01900, 2014 WL 6461689, at *5 (N.D. Ill. Nov. 18, 2014).

Based on CFLA's conduct when selling its Audits and Litigation Documents, the Bureau has alleged that Defendants charged advanced fees in violation of Regulation O, made prohibited representations in violation of Regulation O, committed deceptive and abusive acts and practices under the CFPA, and violated the CFPA when they violated Regulation O. FAC ¶¶ 60-91.

## Legal Standard

"A complaint may be dismissed for failure to state a claim only when it fails to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories." *Caltex Plastics v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016) (citing *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010)). "A motion to dismiss under Rule 12(b)(6) is not a forum in which to litigate the merits of underlying allegations." *Mitsevich v. Nat'l City Mortg.*, No. 09-CV-1465-JCC, 2010 WL 11688503, at *1 (W.D. Wash. Mar. 17, 2010) (citing Wright & Miller, Federal Rules of Civil Procedure § 1349 (3d ed. 2004)). With the exception of certain documents on which the complaint relies, "the scope of review

on a motion to dismiss for failure to state a claim is limited to the contents of the complaint." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). "[F]actual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (*overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002)). The Court "must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff." *Caltex Plastics,* 824 F.3d at 1159 (citing *Wilson v. Hewlett–Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012)).

## Argument

Defendants' motion asserts that the Bureau's FAC has failed to state a claim in five ways. First, Defendants argue that the Bureau is unconstitutional and therefore cannot state a claim for relief. Second, they argue that Defendants and their practices are not covered by Regulation O. Third, Defendants claim that the Bureau lacks the authority to bring a claim under the CFPA against Defendants because Defendants have not engaged in any practice likely to cause substantial harm to consumers (and even if they did, such harm would be outweighed by countervailing benefits). Fourth, they argue that the FAC does not state a claim because CFLA does not provide "Consumer Financial Services & Products." And fifth, Defendants assert that the FAC has failed to state a claim for abusive practices under the CFPA. *See* ECF No. 42, Defs.' Mem. in Support Mot. to Dismiss ("Defs.' Mem.") at 8-10. None of these grounds constitute a valid basis for dismissal of the FAC.

### I. CFLA and Lehman are subject to the CFPA and Regulation O.

The assertions in Defendants' second and fourth grounds for dismissal (that they are not subject to the CFPA or Regulation O) fundamentally rely on their improper efforts to litigate the merits of the Bureau's claims on a motion to dismiss. *Lee*, 250 F.3d at 688 ("[F]actual challenges to a plaintiff's complaint have no bearing

on the legal sufficiency of the allegations under Rule 12(b)(6).”). Defendants assert that they did not sell Audits to consumers, *see* Defs.’ Mem. at 21, and that their Audits are merely “factual informative material,” as opposed to “services” falling under the CFPA or Regulation O. Defs.’ Mem. at 14. The Bureau properly alleges that Defendants are subject to the CFPA and Regulation O and that Defendants’ Audits are financial-advisory services under the CFPA and mortgage-assistance-relief services under Regulation O.

**a. Defendants are subject to the CFPA and Regulation O because they provided financial-advisory services and mortgage-assistance-relief services.**

Defendants, by virtue of their sale of Audits and Litigation Documents, are subject to regulation under the CFPA and Regulation O. Defendants are “covered persons” under the CFPA because they provide a service “to *assist a consumer with* . . . modifying the terms of any extension of credit, or *avoiding foreclosure*.” 12 U.S.C. § 5481(15)(A) (viii)(II) (emphasis added). Defendants are “mortgage assistance relief service providers” under Regulation O because they sell a “service, plan, or program . . . *to the consumer* in exchange for consideration, that is represented, expressly or by implication, *to assist or attempt to assist the consumer with* ... [s]topping, preventing, or postponing any mortgage or deed of trust foreclosure sale for the consumer's dwelling, any repossession of the consumer's dwelling, or otherwise *saving the consumer's dwelling from foreclosure* or repossession.” 12 C.F.R. § 1015.2 (emphasis added). The FAC alleges that Defendants market and sell Audit and Litigation Documents to consumers that they claim will prevent foreclosure, or otherwise permit a homeowner to modify the terms of their mortgage. FAC ¶¶ 14-16, 21-24. Defendants are therefore squarely within the purview of the CFPA, 12 U.S.C. §§ 5481(6)(A), (15)(A)(viii), (15)(A)(viii)(II), and Regulation O. 12 C.F.R. § 1015.2

Courts addressing "forensic audit" providers similar to CFLA have found those providers to be covered by the CFPA and Regulation O. *See, e.g.*, *CFPB v. Gordon*, 819 F.3d 1179, 1192, 1198 (9th Cir. 2016) (upholding summary judgment under the CFPA and Regulation O against a provider of "forensic audits"); *FTC v. Good Ebusiness, LLC*, No. 2:16-CV-01048-ODW-JPR, 2016 WL 3704489, at *1, *4 (C.D. Cal. July 12, 2016) (finding prima facie case for violation of Regulation O based, in part, on the sale of forensic loan audits). And the Federal Trade Commission clearly intended Regulation O to cover forensic audits, noting the rule "encompasses 'forensic audits' . . . to avert foreclosure or obtain concessions from the lender or servicer." *See* FTC Commentary to the Mortgage Assistance Relief Services Rule ("MARS Rule"),[2] 75 Fed. Reg. 75092-01 at 75100 FN110.

**b. The FAC properly alleges that Defendants' Audits are financial-advisory services and mortgage-assistance-relief services.**

The Bureau alleges that (1) CFLA sells the Audits to consumers, with (2) the promise of assistance in foreclosure, and that (3) the Audits are a service. Those three categorical allegations would be enough to satisfy the elements of "financial advisory services" and "mortgage assistance relief services" under the CFPA and Regulation O, but the Bureau's First Amended Complaint goes even further.

First, the Bureau's First Amended Complaint alleges, in detail, how the Audits were marketed and sold to consumers. FAC at ¶¶ 16, 18-24, 34-35, 45. Defendants' contention that they do "not serve consumers," Defs.' Mem. at 16, is contrary to the well-pled factual allegations in the FAC and cannot properly be considered at the motion to dismiss stage. *Lee*, 250 F.3d at 688

---

[2] The FTC originally published the MARS Rule at 16 C.F.R. part 322, and published this guidance when it had rulemaking authority over the rule. Section 1097 of the CFPA transferred rulemaking authority for this rule to the Bureau effective July 21, 2011. The Bureau republished the rule at 12 C.F.R. part 1015, "Mortgage Assistance Relief Services (Regulation O)." *See* 12 C.F.R. § 1015.1.

Second, the Bureau properly alleges that Defendants sold those Audits to consumers to provide assistance in foreclosure—indeed, the Bureau identifies specific instances of Defendants making this representation in marketing materials and on their website, such as "Quiet Title Audits stop foreclosure and keep homeowners in their homes." FAC ¶ 24(h); *see also id*. at ¶¶ 14, 16, 21-22.

Third, the Bureau properly alleges that CFLA marketed and sold a "service," FAC ¶¶ 12, 14. Black's Law Dictionary defines "services" as "the performance of some useful act or series of acts for the benefit of another, usu[ally] for a fee . . . In this sense, service denotes an intangible commodity in the form of human effort, such as labor, skill, or advice." Black's Law Dictionary (11th ed. 2019). The FAC alleges that Defendants offered consumers an investigation by an "expert" who would analyze a consumer's mortgage and identify the consumer's defenses to foreclosure. FAC ¶¶ 34-35. Defendants told consumers that this "expert" would prepare "the most advanced Audit Report on Residential Mortgages in existence," FAC ¶ 24(j), that the Audits would find defects in the assignment of a consumer's mortgage or in the securitization of the consumer's mortgage, FAC ¶ 22, and provide the consumer with legal conclusions, recommendations, and defenses, FAC ¶ 15, "tailored" to the consumer's circumstances," FAC ¶ 24(g). The consumer could then hire Carrigan as an "expert witness" to testify about the Audit's conclusions. *Id.* at ¶ 16. Indeed, Defendants own motion touts the "advanced skills" needed to produce an Audit. Defs.' Mem. at 19. The FAC plainly alleges a service.

The FAC properly alleges that Defendants' Audits and Litigation Documents are financial-advisory-services and mortgage-assistance-relief-services covered by the CFPA and Regulation O.

**II. The FAC states claims for relief under the CFPA and Regulation O.**

Like their challenge to the applicability of the CFPA and Regulation O, Defendants' challenge to the adequacy of the Bureau's claims almost completely ignores the allegations in the FAC. In support of their fifth ground for dismissal, one of Defendants' primary arguments appears to be that the Bureau has failed to allege elements of abusiveness claims that are not even part of the FAC. *See* Defs.' Mem. at 18-20. In support of their third ground for dismissal, Defendants seem to challenge the adequacy of elements of an unfairness claim, which the Bureau also has not pled. *See id.* at 15-18.

The Bureau has properly pled all of the requisite elements of its claims. Defendants' deceptive and abusive acts and practices violate the CFPA. 12 U.S.C. §§ 5531(a), 5531(d)(2)(A), 5536(a)(1)(B). Defendants violate Regulation O by charging advanced fees and making prohibited representations. Regulation O, 12 C.F.R. § 1015.5(a); 12 C.F.R. § 1015.3(b)(1), (c). And Defendants violate the CFPA by virtue of violating Regulation O. CFPA, 12 U.S.C. § 5536(a)(1)(A).

**a. Substantial injury and balance of countervailing benefits are not elements of deception or abusiveness under the CFPA.**

Defendants argue that either the Bureau's deception claim (Count III), or the Bureau's CFPA claims generally, are deficient because the Bureau does not allege that Defendants cause substantial injury to consumers or that any alleged injury outweighs any benefit to consumers. *See* Defs.' Mem. at 15-18. Substantial injury and countervailing benefits are not elements of *any* of the Bureau's claims in this action. They are elements of an unfairness claim under the CFPA, which the Bureau does not allege here. *See* 12 U.S.C. § 5531(c)(1).

To the extent Defendants' motion can be construed to assert some kind of general requirement to allege the elements of an unfairness claim for deception and abusiveness claims under the CFPA, that argument fails. An act or practice is

deceptive if: "(1) 'there is a representation, omission, or practice that,' (2) 'is likely to mislead consumers acting reasonably under the circumstances,' and (3) 'the representation, omission, or practice is material.'" *Gordon*, 819 F.3d at 1192–93 (9th Cir. 2016) (citing *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095 (9th Cir.1994)). According to the Ninth Circuit, deception under the CFPA is coterminous with deception under the FTC Act. *See Gordon*, 819 F.3d at 1193 n.7. And substantial injury is not an element of deception under the FTC Act. *See FTC. v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1203 (10th Cir. 2005); *FTC v. Cantkier*, 767 F. Supp. 2d 147, 152 (D.D.C. 2011); *FTC v. Lights of Am. Inc.*, No. 10-CV-1333-JVS (MLGx), 2012 WL 13064911, at *2 (C.D. Cal. Apr. 25, 2012). The result is therefore the same under the CFPA. *See Gordon*, 819 F.3d at 1193 n.7.

Substantial injury and the weighing of countervailing benefits are also not requisite elements of abusiveness under the CFPA. To state a claim for abusiveness, the Bureau must allege that CFLA took unreasonable advantage of a consumer's "lack of understanding . . . of the material risks, costs, or conditions of the product or service." 12 U.S.C. §§ 5531(d)(2)(A), 5536(a)(1)(B); *see also CFPB v. Access Funding, LLC*, 270 F. Supp. 3d 831, 850 (D. Md. 2017) (rejecting defendants' 12(b)(6) motion in part because "§ 5531(d) … does not require the CFPB to prove [substantial injury and the weighing of countervailing benefits] in order to make out its claim for 'abusive' acts or practices").

In any event, the Bureau's First Amended Complaint does allege that Defendants caused injury to consumers. Affected consumers paid $1,495 for foreclosure relief services that were not as CFLA described and were not as CFLA promised. *See, e.g.,* FAC ¶¶ 18, 24- 25, 35-36.

**b. The FAC has stated a claim for abusive acts or practices under the CFPA.**

The crux of Defendants' argument that the Bureau failed to adequately allege abusive acts or practices again appears to be an insistence that the Bureau is required to plead elements which simply are not components of the claim here. The Bureau pled the requisite elements of the claim it actually alleged and Defendants' motion has not shown otherwise.

The CFPA prohibits four different types of abusive conduct, that which:

> (1) materially interferes with the ability of a consumer to understand a term or condition of a consumer financial product or service; ***or***
> (2) takes unreasonable advantage of—
> (A) a lack of understanding on the part of the consumer of the material risks, costs, or conditions of the product or service;
> (B) the inability of the consumer to protect the interests of the consumer in selecting or using a consumer financial product or service; ***or***
> (C) the reasonable reliance by the consumer on a covered person to act in the interests of the consumer.

12 U.S.C. § 5531(d) (emphasis added). Defendants contend that the Bureau's First Amended Complaint is deficient for failing to allege the elements of each iteration of abusiveness. *See* Defs.' Mem. at 18-20. However, the Bureau only alleged one abusiveness prong, not all four. Specifically, the Bureau alleged that Defendants took "unreasonable advantage of a lack of understanding on the part of the consumer of the material risks, costs, or conditions of the product or service." FAC ¶ 77 (quoting 12 U.S.C. § 5531(d)(2)(A)).

With respect to the claim that the Bureau has actually alleged, Defendants' motion makes no specific argument or showing that the Bureau has failed to plead the elements of § 5531(d)(2)(A). *See* Defs'. Mem. at 18-20. Instead, Defendants make a conclusory statement that the Bureau has not pled the elements of the

statutory provision, and then proceed to dispute the factual merits of the Bureau's claims, which, once again, is improper on a motion to dismiss. *Lee*, 250 F.3d at 688 ("[F]actual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6).").

The Bureau's First Amended Complaint adequately alleges a claim for abusiveness under 12 U.S.C. § 5531(d)(2)(A). The Bureau alleges that Defendants charged consumers up to $1,495 for their services, *see* FAC ¶ 18, and that Defendants made numerous false or misleading representations that their services would allow homeowners to defeat foreclosure or sue their lenders for damages, *see id.* ¶¶ 14-17, 21-24, 82. The Bureau also alleges that Defendants made numerous false or misleading representations to consumers about their own expertise and the expertise of the individuals providing the services to consumers. *See id.* ¶¶ 34-35. The Bureau also alleges that Defendants concealed material information about these representations to consumers, *see id.* ¶¶ 45, 84-85. Finally, the Bureau alleges that a reasonable consumer would not be able to independently assess the quality of Defendants' services or the truthfulness of their representations, and thus could not assess the risks or costs of engaging Defendants. *See id.* ¶¶ 78-88. Simply stated, the Bureau alleges that CFLA took money from consumers when the consumers did not understand the true quality and effectiveness of the services they were purchasing. Those allegations are sufficient to state a claim for abusiveness. *See Access Funding*, 270 F. Supp. 3d at 849-50 (finding a valid claim for abusiveness under 12 U.S.C. § 5531(d)(2)(A) based on allegations that the defendant misrepresented the nature of the service or product that it sells to consumers); *CFPB v. Think Fin., LLC*, No. CV-17-127-GF-BMM, 2018 WL 3707911, at *8 (D. Mont. Aug. 3, 2018) (denying motion to dismiss abusiveness claim under 12 U.S.C. § 5531(d)(2)(A) where defendants were alleged to have collected loan payments from consumers that lacked an understanding of their repayment obligations).

**c. Defendants have waived any argument that the Bureau has failed to state a claim in its remaining CFPA and Regulation O claims.**

Aside from the argument that the CFPA and Regulation O do not cover Defendants and their activities, Defendants do not contend that the Bureau failed to adequately plead the elements of its claims for collecting advanced fees in violation of Regulation O (Count I), making prohibited representations under Regulation O (Count II), or violation of Section 1036(a)(1)(A) of the CFPA (Count V). Any arguments to dismiss these counts for failure to state a claim are therefore waived. *See Frausto v. Murray*, No. 17-cv-00177-SVW-PLA, 2017 WL 5468175, at *1 (C.D. Cal. Oct. 4, 2017) ("Arguments not raised by a party in its opening brief are waived.") (citing *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n.8 (9th Cir. 2009)).

**III. Defendants' constitutional objections do not warrant dismissal.**

Defendants argue this this case must be dismissed because a provision in the CFPA that limits the grounds on which the Bureau's Director can be removed to "inefficiency, neglect of duty, or malfeasance in office," 12 U.S.C. § 5491(c)(3), violates the constitutional separation of powers. Defs.' Mem. at 11-13. Although the Bureau agrees that the removal provision is unconstitutional, the Ninth Circuit held to the contrary in *Consumer Fin. Prot. Bureau v. Seila Law LLC*, 923 F.3d 680, 683 (9th Cir. 2019), *cert. granted*, No. 19-7 (2019). Dismissal of the case on that basis is therefore currently foreclosed by binding circuit precedent. *See In re Zermeno-Gomez*, 868 F.3d 1048, 1052 (9th Cir. 2017). Moreover, if the Supreme Court vacates the Ninth Circuit's decision in *Seila Law*, as the Bureau has urged, its decision is unlikely to require dismissal of the Bureau's claims in this case because the removal provision should be severed from the rest of the statute. Thus, although it would be appropriate to defer resolution of Defendants' constitutional argument

until the Supreme Court decides the issue while allowing other aspects of this litigation to move forward, the constitutional argument provides no basis for the case to be dismissed.

It would be well within the Court's discretion to defer its resolution of the constitutional argument until after the Supreme Court issues its decision in *Seila Law*, while allowing the parties to engage in discovery in the meantime. "It is well established that a district court has broad discretion to control its own docket." *M.M. v. Lafayette Sch. Dist.*, 681 F.3d 1082, 1091 (9th Cir. 2012). More particularly, Federal Rule of Civil Procedure 12 provides that a court may defer resolution of "any defense listed in Rule 12(b)(1)-(7) … until trial." Rule 12(i); accord Rule 12(a)(4)(A) (court may "postpone[] its disposition" of Rule 12 defenses up until trial). Postponing decision on Defendants' constitutional argument while this case proceeds would allow the Court to resolve that issue later, with the benefit of the Supreme Court's ruling, while—crucially—providing the parties a chance to begin gathering evidence in the meantime and ultimately speeding the resolution of this matter. (As explained in the Bureau's Opposition to Defendants' Motion for a Stay, ECF No. 30, the balance of equities leans convincingly in favor of this case moving forward in the ordinary course.)

That approach would be particularly appropriate here because the Supreme Court's decision in *Seila Law* is unlikely to require dismissal of this action. If the Supreme Court concludes that the removal provision is constitutional, that is of course no obstacle to the Bureau seeking relief in this case. And if the Court holds the provision invalid, its own recent precedent as well as the express language of the statute call for simply severing the removal provision from the CFPA while leaving the rest of the statute in place.[3] That is what the Supreme Court did in 2010 when it

[3] Defendants baldly assert that "the remedy cannot be to sever" the removal provision. Defs.' Mot. at 12. But nowhere do they explain why that would be so. Defendants' remedial argument is nothing more than *ipse dixit*.

last confronted an unconstitutional removal restriction (with no justice disagreeing that severance would be the appropriate remedy). *See Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 508-10 (2010). And that is what Congress provided for here by including an express severability clause in the statute stating that "[i]f any provision of this Act … is held to be unconstitutional, the remainder of this Act … shall not be affected thereby." 12 U.S.C. § 5302. Thus, as then-Judge Kavanaugh explained, if the Supreme Court holds that the removal provision is unconstitutional, the appropriate remedy is to sever it and allow the Bureau to "continue to operate … as an executive agency." *PHH Corp. v. Consumer Fin. Prot. Bureau*, 881 F.3d 75, 200 (D.C. Cir. 2018) (en banc) (Kavanaugh, J., dissenting).

With the removal provision severed, the Bureau should then be given the opportunity to choose to ratify this action as necessary. Assuming that the Bureau determined that it was appropriate to do so, this case could then proceed with the Bureau headed by a Director who is removable at will by the President. *See FEC v. Legi-Tech, Inc.*, 75 F.3d 704, 708 (D.C. Cir. 1996) (dismissal of agency enforcement action was "neither necessary nor appropriate" after court severed unconstitutional statutory provision and agency ratified its decision to file suit); *Consumer Fin. Prot. Bureau v. Navient Corp.*, No. 3:17-CV-101, 2017 WL 3380530, at *18-19 (M.D. Pa. Aug. 4, 2017) ("[I]n the event that the Bureau's structure is found to be unconstitutional and the problematic provisions are severed …, the severance would not affect the CFPB's ability to maintain the present suit."); *cf. Collins v. Mnuchin*, 938 F.3d 553 (5th Cir. 2019) (en banc) (any "ongoing injury" to plaintiffs challenging the constitutionality of another independent agency headed by a single person "is remedied by a declaration that the 'for cause' restriction is declared removed").

Accordingly, it would be appropriate to either reject the claim as a basis for dismissal at this stage or defer its resolution to a later stage, while allowing the

parties to proceed to discovery in the interim. Either way this case should go forward.

**IV. Conclusion.**

There is no basis to dismiss the Bureau's First Amended Complaint. CFLA and Lehman are subject to the CFPA and Regulation O, and the Bureau's allegations are well-pled. Defendants' constitutionality arguments have already been litigated in this Circuit. The Court should deny Defendants' Motion.

Dated: December 16, 2019

/s/ Benjamin Vaughn
Benjamin Vaughn (pro hac vice)
Gabriel Hopkins (pro hac vice)
Leanne E. Hartmann

Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552

*Attorneys for Plaintiff*
*Bureau of Consumer Financial Protection*

# CERTIFICATE OF SERVICE

I, Benjamin Vaughn, certify that the foregoing opposition to Defendants' Motion to Dismiss was served on all parties via the Court's Electronic Filing System.

Dated: December 16, 2019

/s/ Benjamin Vaughn
Benjamin Vaughn