Maryam Atighechi, Esq. 249318
*maryam@familylaw-firm.com*
ATIGHECHI LAW GROUP
9465 Wilshire Blvd., Suite 300
Beverly Hills, California 90212
Telephone: (424) 284-4258
Facsimile: (310) 773-4541
Attorney(s) For Defendants,
CERTIFIED FORENSIC
LOAN AUDITORS, LLC, AND
ANDREW P. LEHMAN

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BUREAU OF CONSUMER FINANCIAL PROTECTION,<br>Plaintiff,<br>vs.<br>CERTIFIED FORENSIC LOAN AUDITORS, LLC, ANDREW P. LEHMAN, ET AL.,<br>Defendants. | CASE NO.: 2:19−cv−07722<br><br>DEFENDANTS REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P RULE 12B6<br><br>DATE: January 13, 2019<br>TIME: 1:30 p.m.<br>DEPT.: 5D<br>JUDGE: Honorable Judge Otis D. Wright |

**TO THE CLERK OF THE COURT OF THE ABOVE-ENTITLED COURT, ALL PARTIES AND ATTORNEYS OF RECORD**, Defendant Andrew Lehman and Certified Forensic Loan Auditors (TX) hereby submit their Reply in Support of their Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"), pursuant to Federal Rules of Civil Procedure Rule 12b6.

## I. INTRODUCTION

"This case illustrates what happens to civil liberties when an administrative agency lacking any semblance of control or oversight from the executive or legislative branches turns on the citizens it purportedly exists to serve. Only the judicial branch

can vindicate Defendant's civil liberties by restoring accountable, constitutional government." — Michael P. DeGrandis, NCLA Senior Litigation Counsel. https://finance.yahoo.com/news/ncla-lawsuit-says-cfpb-funded-163727418.html "The serial investigations of the Plaintiff expose the CFPB's cynical investigatory practices and reprehensible litigation tactics for what they truly are—brazenly unconstitutional abuses of process. It is long past time for CFPB to face the judicial scrutiny that it has so contemptuously circumvented over the last two and a half years." — Jessica Thompson, NCLA Litigation Counsel. *Id.*

As Amicus Briefs continue to be filed in support of Seila Law in the United States Supreme Court Case of *Seila Law v. CFPB*, addressing the same issues as the instant case; (1) whether the CFPB is a constitutional agency sufficient to bring this action against the Defendants, and whether (2) the appropriate remedy is to (a) sever the unconstitutional provision of the Dodd Frank, or (b) invalidate the entire Act that relates to the CFPB and leave the reconstruction up to the Legislature rather than the courts; the position of constitutional scholars is clear—the CFPB is long overdue for a reconstruction with a multi member committee, with proper judicial and legislative oversight, accountable to the people and the President. See generally *Seila Law v. CFPB*, U.S. Docket 19-7.

Former Director of the CFPB Mick Mulvaney a former South Carolina representative, said in a 2014 interview with the Credit Union Times: *"It turns up being a joke, and that's what the CFPB really has been, in a sick, sad kind of way, because you've got an institution that has tremendous authority over what you all do for a living"*https://www.vox.com/policy-and-politics/2017/11/16/16667266/mick-mulvaney-cfpb-cordray-omb-joke

The CFPB has forced small businesses and average Americans including consumers into costly and burdensome investigations that could potentially lead to bankruptcy, based the whim decision of a lone, partisan director, without experience and with unconstitutional and unfettered authority; it is the CFPB that is a detriment to

consumers. Former CFPB Director Mick Mulvane properly stated that the agency is run by *"essentially a one-person dictator"* and added he had *"probably had more complaints about the CFPB in my office, from small local banks and credit agencies, than every other governmentagencyputtogether."*https://www.vox.com/policy-and-politics/2017/11/16/16667266/mick-mulvaney-cfpb-corday-omg-joke

Further, the CFPB having received full discovery more than two years ago, including more than 100 Interrogatories that includes a financial statement Interrogating Defendants financial affairs in violation of their right to privacy under Article 1 of the Constitution of the State of California, more than 52,000 documents totaling over 750,000 pages of documents and had several days of depositions of all Defendants, collectively, the CFPB still has failed to allege one consumer complaint, failed to list any consumers that were harmed in its initial disclosures, and failed to state with specificity any such consumer related complaints. (Dckt. 36, Dec. Lehman ¶ 10-18; FAC). The CFPB has been on a witch-hunt based on speculation rather than prosecuting based on evidence. The CFPB needs to be disbanded, structured appropriately, given a multi-member leadership of experts, and guided by a stated purpose.

## II. The Court Should Dismiss This Action by CFPB for All Claims Under the Consumer Financial Protection Act, and Regulation O as an Unconstitutional Agency Cannot Pursue Those Claims and All Conduct by the CFPB is Unconstitutional, Including the Underlying Civil Investigation Demand ("CID").

This case arises out of the CFPB's complaint against defendants for violations of various consumer financial protection laws. The CFPB itself concedes that the CFPB's structure is unconstitutional, and thus proper remedy in this case is to dismiss the entire action as an agency that lacks Constitutional authority to bring any action and thus the CFPB cannot lawfully state a claim upon which relief may be granted under Federal Rules of Civil Procedure Rule 12(b)(6).

**A. A Timely Challenge to the CFPB's Constitutionality Has Been Raised and Has Been Accepted and Thus Defendants Are Entitled to Dismissal.**

A party that raises a "timely challenge" to the constitutional validity of the structure of an agency is entitled to "whatever relief may be appropriate if a [constitutional] violation indeed occurred." *Ryder v. United States*, 515 U.S. 177, 182-183 (1995). In a wide variety of contexts, the Court has set aside actions by officers laboring under structural constitutional defects. See, *e.g.*, *Lucia v. SEC*, 138 S. Ct. 2044, 2055-2056 (2018); *Stern v. Marshall*, 564 U.S. 462, 503 (2011); *Ryder*, 515 U.S. at 188; *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 87-88 & n.40 (1982).

In particular, because an agency with a structural constitutional defect lacks the authority to take executive action, any exercise of executive power by the agency is void. See *FEC v. NRA Political Victory Fund*, 6 F.3d 821, 822, 828 (D.C. Cir. 1993), cert. granted, 512 U.S. 1218, and cert. dismissed, 513 U.S. 88 (1994); see also *Noel Canning v. NLRB*, 705 F.3d 490, 493 (D.C. Cir. 2013), aff'd, 134 S. Ct. 2550 (2014) "That principle applies with full force to the exercise of power by an officer who has been impermissibly insulated from removal by the President. Article II vests the entire executive power in the President and charges him with ensuring the proper administration of the laws. If the President lacks the ability to remove an agency's head, the agency is unaccountable and cannot be "entrusted with executive powers." *Bowsher v. Synar*, 478 U.S. 714 at 732.

That is precisely what took place here, the CFPB exercised executive power by enforcing a two year long CID on Defendants to investigate potential violations of consumer-protection laws but the Director lacked the presidential supervision necessary to exercise that power, rendering the CFPB without authority to issue the CID. Thus, the CID is void and all conduct stemming from the CID including the FAC is void. Defendants made a timely challenge to that exercise of power by raising the unconstitutionality of the CFPB's structure in Defendants' Motion to Dismiss. The

"here-and-now" injury of the impermissible limitation on the President's, direction and control of the CFPB renders its actions void, *Bowsher*, 478 U.S. at 727 and petitioner is consequently "entitled to relief," *Lucia*, 138 S. Ct. at 2055.

Dismissing the underlying action would provide the relief Defendants seek, furthering the "structural purposes" of the separation of powers and "creat[ing] incentives" for litigants to challenge structural constitutional defects. *Lucia v. SEC, 138 S. Ct. 2044 at 2055*.

**B. The Same Constitution Deprivations in this Case Are Before the United States Supreme Court in *Seila Law* and Will Dispose of the CFPB in Its Entirety Leaving No Option but to Dismiss this Case in its Entirety.**

The appropriate remedy for the constitutional violation here is similar to that sought in *Seila La*w to enforce the CID issued to Seila Law, as here in the instant action Defendants seek the appropriate remedy for the constitutional violation to dismiss the CFPB action against Defendants. The CFPB’s argument that the Court can "sever," instead leaving to Congress the determination of how to address the constitutional defect in its structure is impossible. The only way the Court can sever would be to invalidate Title X of the Dodd-Frank Act in its entirety.

**1. The CFPB is an Agency of the Federal Government Created and Empowered with Unconstitutional Authority.**

The CFPB admits that the Consumer Financial Protection Bureau wields executive power—and it recognizes that the Bureau *“possesses substantially more executive power than the FTC [Federal Trade Commission] did back in 1935*.” *Seila Law v. CFPB US 19-7*, Amicus of New Civil Liberties Alliance (“NCLA”) p.7 citing to Pet.App.5a, Pet.App3a and PHH Corp. v. CFPB, 839 F.3d 1, 16 (emphasis added) (acknowledging that “*[t]he Director exercises substantial executive power similar to the power exercised by heads of Executive Branch departments”);* and *PHH Corp. v. CFPB*, 839 F.3d 1, 16 (D.C. Cir. 2016), rev’d and remanded en banc, 881 F.3d 75 (D.C. Cir. 2018) (“*Indeed, other than the President the Director of the CFPB is the single most powerful official in the entire United States Government, at least when measured in terms of unilateral power*.”).

It is unconstitutional for a statutory Agency that shields the Bureau's director from presidential removal (and thus control) be squared with the Constitution that provides "[*t]he executive Power shall be vested in a President of the United States of America."* U.S. Const. art. II, § 1. The CFPB relied entirely on judicial precedent, claiming the court could simply sever the statute. The proper approach, however, is to begin not with judicial precedent but with the constitution. *Graves v. 8 New York*, 306 U.S. 466, 491–92 (1939) *("[T]he ultimate touchstone of constitutionality is the Constitution itself and not what we have said about it.")* (Frankfurter, J., concurring). Article II requires the executive power to be *"vested in a President of the United States of America,"* and that means Congress violates the vesting clause if it attempts to vest any portion of executive power in an officer outside the President's direction and control. Upon recognizing that the Director of the CFPB wields executive power, and severance was not plausible as Courts have held the first step is a constitutional analysis of the constitution, the CFPB cannot escape the conclusion that the statute that protects the Director from presidential removal violates Article II's vesting clauses. *Id.*

**2. Severance 12 U.S.C. § 5302 of the Unconstitutional Provisions of Dodd Frank under are Not the Appropriate Remedy in the Instant action.**

If the court rules the CFPB is unconstitutional as set forth in the Dodd Frank Act Title X, it should not use the general severability clause 12 U.S.C. § 5302, to fix the problem because it would create far more severe problems than the current CFPB because (1) the Courts would have to rewrite the statute, (2) the new CFPB would no longer have freedom of independence from Presidential control, (3) Congress would have enacted a specific severability clause to title X if they intended for that section to be severable.

**(i) Severability Changes the Entire Structure & Intent of Title X Such that it would Require the United States Supreme Court to Rewrite the Statute in its Entirety.**

Under the familiar test for severability, the question is whether Congress would have enacted *"those provisions which are within its power, independently of those*

*which are not." Murphy, 138 S. Ct. at 1482*. Applied here, that test would leave the Court with a choice: (1) to sever the limitation on removal from the remainder of Title X, leaving the Director removable by the President at will despite Congress's obvious intent to insulate the CFPB from presidential influence, or (2) to invalidate the CFPB in its entirety. Credit Union National Association (“CUNA”) Amicus brief, P7; US No. 19-7

The Congress would have chosen a different option (assuming it were constitutionally able to do so, see pp. 31-34, *supra*): to structure the CFPB as a multimember commission. In fact, Congress seriously contemplated a multimember commission throughout the legislative process. That was the structure proposed in the original bill in the House of Representatives. *See H.R. 3126, 111th Cong., 1st Sess. § 112 (July 8, 2009).* Subsequent markups of the bill wavered between multimember and single-director structures. Compare, e.g., House Committee on Financial Services, 111th Cong., Discussion Draft of Consumer Financial Protection Agency Act of 2009, § 112 (Sept. 25, 2009) (single-director structure), with H.R. Rep. No. 367, 111th Cong., 1st Sess., pt. 1, at 8-9, 93, 96, 98 (2009) (multimember structure). The House compromised in which the proposed Consumer Financial Protection Agency would initially be led by a single director but then would convert to a multimember commission after two years. See H.R. 4173, 111th Cong., 1st Sess. §§ 4101(b), 4102-4103 (as passed by House, Dec. 11, 2009); 155 Cong. Rec. 30,826-30,827 (2009) (Rep. Waxman). The Senate, by contrast, proposed structuring the Bureau of Consumer Financial Protection as a single-director agency, and that structure ultimately emerged from the reconciliation process. See H.R. 4173, 111th Cong., 2d Sess. § 1011(b) (as passed by Senate, May 20, 2010); H.R. Rep. No. 517, 111th Cong., 2d Sess. 874 (2010) (Conf. Rep.).

Given Congress's desire to make the CFPB independent and its serious consideration of a multimember structure, it is all but certain that Congress would have preferred an independent, multimember CFPB to a single-director agency under direct

presidential control. However, the Court cannot mandate constitutionality under existing severability doctrine. The Courts have emphasized that it may use severability only to delete statutory provisions, not to revise the statutory language more broadly. *Hill v. Wallace*, 259 U.S. 44, 68-70 (1922). But that is precisely what would be required to restructure the CFPB as a multimember commission: the Court would need to specify how many members to place on the commission, whether and how their terms would be staggered, how the chair would be selected, and so on.

**(ii) When Congress Established the CDFPB it Was Clearly Important for Title X and the CFPB to Have "Independence from Political Accountability--and from the President in Particular.**

In the very sentence that establishes the CFPB, Congress expressly characterizes it as an "independent" bureau, see 12 U.S.C. 5491(a)--a term connoting that an agency's principal officers are insulated from presidential control. See *Free Enterprise Fund*, 561 U.S. at 483; *Buckley*, 424 U.S. at 136. In creating the CFPB, therefore, Congress "tie[d] [its] very existence to its freedom from the President." *PHH*, 881 F.3d at 161 (Henderson, J., dissenting). Congress also transferred powers from presidentially supervised agencies and vested them in the CFPB, outside the President's direct control. 12 U.S.C. 5581. Those structural features show that Congress affirmatively sought to prevent the President from exercising control over the CFPB. Congress underscored its intent to make the CFPB independent from outside influence in other ways, too.

While Congress nominally located the CFPB within the Federal Reserve System (itself an independent agency), Congress exempted the CFPB's rules and orders from review by the Federal Reserve's Board of Governors--unlike those of other bureaus. 12 U.S.C. 5492(c)(3). Congress also exempted the CFPB from consulting with the Office of Management and Budget on matters related to its financial planning. 12 U.S.C. 5497(a)(4)(E). Essentially, Congress did not just seek to insulate the CFPB from presidential control; it gave up its own control of the CFPB through the appropriations process.

**(iii) Congress Would Have Enacted A Specific Severability Clause to Title X if it Wanted to Leave Severability Available for Title X.**

As the Court has explained, severability *"rarely turn[s] on the presence or absence of such a clause." United States v. Jackson*, 390 U.S. 570, 585 n.27 (1968). To be sure, a severability clause creates a presumption that Congress would prefer the statute without the invalid provision to no statute at all. See *Alaska Airlines*, 480 U.S. at 686. But if ever there were a case where that presumption carries little force, it is here: the severability clause applies to the entire, 848-page Dodd-Frank Act, and it appears almost 600 pages before the removal provision at issue. Compare Dodd-Frank Act § 3, 124 Stat. 1390 (12 U.S.C. 5302), with id. § 1011(c)(3), 124 Stat. 1964 (12 U.S.C. 5491(c)(3)).

The general severability clause indicates at most that Congress viewed the various *titles* as severable from each other. Whatever its boilerplate language, the clause does not reflect a congressional judgment that every single provision within each title is severable from the title in which it resides. The best evidence of that is when Congress wanted specific provisions within a title of the Dodd-Frank Act to be severable, it included an *additional* severability clause within that title. *See Dodd-Frank Act § 542, 124 Stat. 1596 (15 U.S.C. 8232)*. Congress conspicuously did not do so in Title X.

“Put simply, the Dodd-Frank Act's general severability clause says nothing about Congress's intent on the specific question whether Congress would have preferred a mutant CFPB stripped of its core structural feature to no CFPB at all.” *PHH, 881 F.3d at 163* (Henderson, J., dissenting). This is overwhelming evidence that Congress believed the independence of the CFPB's Director from presidential control to be of paramount importance.

**C. Holding that the Removal Provision cannot be Severed Would Restore the Status Quo before the Enactment of the Dodd-Frank Act and Not Harm the Public.**

To strike the Dodd-Frank Act would not eliminate federal consumer-financial protection; instead, it would return authority under the eighteen preexisting federal consumer-protection laws to other federal agencies--ironically enough, most of them independent, multimember agencies of experts--to administer and enforce those laws. *See 12 U.S.C. 5481(12),* 5581(a)(2)(A).

**D. The Supreme Court's Findings to Invalidate the CFPB and Remand to this Court to Dismiss the Instant Action Would Still Leave these Defendants Accountable to the Federal Trade Commission.**

As discussed above, any dismissal in this action would not leave the Consumers or the public without redress for alleged harms suffered. The Federal Trade Commission ("FTC") enacted the Mortgage Assistance Relief Act ("MARS") back in 2010 to protect consumers from person's that mortgage assistance relief services. Further, the Federal Trade Commission ("FTC") is a parallel agency providing the same consumer protections. The FTC works for the consumer to prevent deceptive and unfair practices and to help businesses comply with the law. See FTC MARS Rule Compliance guide for Businesses;https://www.ftc.gov/tips-advice/business-center/guidance/mortgage-assistance-relief-services-rule-compliance-guide As a result, if the multimembered constitutionally structured FTC wishes to commence an action then let them that are accountable to the people of this country proceed with due process and lawful authority.

**III. CONCLUSION**

Based on the foregoing, the entire First Amended Complaint must be dismissed in its entirety as the CFPB has no constitutional authority for its actions.

Respectfully submitted,

By: /s/ Maryam Atighechi
Attorney(s) For Defendants,
CERTIFIED FORENSIC
LOAN AUDITORS, LLC and
ANDREW LEHMAN

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon the counsel of record by the Central District of California ECF method or by certified mail, return receipt requested on the 30th day of December 2019.

By: /s/ Maryam Atighechi
Attorney(s) For Defendants,
CERTIFIED FORENSIC
LOAN AUDITORS, LLC and
ANDREW LEHMAN