O

# United States District Court
# Central District of California

BUREAU OF CONSUMER FINANCIAL PROTECTION,

Plaintiff,

v.

CERTIFIED FORENSIC LOAN AUDITORS, LLC et al.,

Defendants.

Case No. 2:19-cv-07722-ODW (JEMx)

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND MOTION FOR ENLARGEMENT OF TIME AND GRANTING WITHDRAWAL OF COUNSEL [42] [43] [60] [65]**

## I.   INTRODUCTION

Plaintiff Consumer Financial Protection Bureau (the "Bureau") filed this action against Defendants Certified Forensic Loan Auditors, LLC ("CFLA") and Andrew P. Lehman ("Lehman") (collectively "Defendants")[1], to address violations of the Consumer Financial Protection Act ("CFPA"), and other consumer protection regulations. (*See* First Am. Compl. ("FAC"), ECF No. 29.) Now before the Court is Defendants' Motion to Dismiss ("Motion") the Bureau's First Amended Complaint ("FAC") for failure to state a claim. (Mot. to Dismiss ("Mot."), ECF No. 42.) Defendants also move for enlargement of time to answer the Bureau's FAC and leave for Atighechi Law Group, PC ("Atighechi") to withdraw as Lehman's Counsel. (Mot.

---

[1] The Bureau's FAC also named Defendant Michael Carrigan, but Bureau and Carrigan stipulated to entry of final judgment against Carrigan on October 29, 2019. (*See* Stip. Final J., ECF No. 25.)

for Enlargement ("Mot. II"), ECF No. 43; Mot. for Withdrawal ("Mot. III"), ECF No. 60.)  For the reasons that follow, the Court **DENIES** the Motion; **DENIES** the request for enlargement of time; and **GRANTS** Lehman's request to proceed *pro se*.[2]

## II.   BACKGROUND

The Bureau brings this action against CFLA and Lehman in connection with their offering, advertising, marketing, and selling of purported financial-advisory and mortgage-assistance-relief services.  (FAC ¶ 2.)  The Bureau alleges the following facts. The Bureau is an independent agency of the United States charged with regulating the offering and provision of consumer-financial products or services under federal consumer financial law, including the CFPA and Regulation O.  (FAC ¶ 4.)  CFLA operates through two separate limited liability companies that are incorporated under the laws of the State of California and the State of Texas.  (FAC ¶ 6.)  Lehman is the president and sole owner of CFLA, directs every facet of the business, and has co-mingled his finances with CFLA.  (FAC ¶¶ 7, 9.)  CFLA and Lehman, acting alone or in concert, provided "mortgage assistance relief services" as defined in Regulation O, 12 C.F.R. section 101.5.2, and "financial advisory services" within the meaning of the CFPA, 12 U.S.C. § 5481(15)(A)(viii), which included loan modification and foreclosure relief services.   (FAC ¶ 12.)   Further, CFLA has ignored corporate formalities.  (FAC ¶ 9.)  For instance, CFLA failed to keep accurate financial records and failed to meet California's state-tax requirements.  (FAC ¶ 9.)

As of 2014, Defendants marketed and sold their services to consumers, held themselves out as "The Nation's Leading Experts in Foreclosure Defense," and represented that they provided a "[c]omplete turn-key lawsuit to sue your lender for damages."  (FAC ¶¶ 14, 16, 24.)  Defendants' services included Securitization Audits ("Audits") and litigation documents, which they marketed as a "Quiet Title Package." (FAC ¶ 14.)  Defendants told consumers that the Audits and litigation documents would

---

[2] After considering the papers filed in connection with the motions, the Court deemed the matters appropriate for decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

1    provide them an effective defense to a foreclosure action or help them obtain loan

2    modifications.  (FAC ¶ 21.)  Defendants told consumers that the Audits and litigation

3    documents contained specific categories of cutting-edge, advanced analyses, and that

4    the Audits would uncover information that included defects in the assignment of a

5    consumer's mortgage or in the securitization of the consumer's mortgage.  (FAC ¶ 22.)

6    Defendants also advertised to consumers that "in addition to the written report, a

7    purchase of an Audit includes the services of Carrigan as an 'expert witness' to testify

8    in consumers' foreclosure proceedings or related litigation."  (FAC ¶ 16.)

9        In actuality, Defendants made no effort to determine whether the Audits could

10   help a consumer prevent foreclosure or obtain a favorable settlement either based on

11   the consumer's jurisdiction or the consumer's circumstances.  (FAC ¶ 30.)  Defendants

12   knew the Audits were worthless and even referred to the conclusions as "boilerplate"

13   and "garbage."  (FAC ¶ 31.)  The Audits consisted largely of template materials and

14   contain legal conclusions and recommendations to the borrower.   (FAC ¶ 15.)

15   Moreover, the litigation documents also consisted largely of template pleadings that

16   Defendants claim could be filed in connection with a homeowner's response to a

17   foreclosure proceeding, including a civil complaint, *lis pendens*, and temporary

18   restraining order.  (FAC ¶ 17.)  The form, structure, and content of each Audit and

19   package of litigation documents were substantially similar to all others.  (FAC ¶ 30.)

20   Defendants used neither experts to perform the Audits nor lawyers to prepare the Audits

21   and litigation documents.  (FAC ¶¶ 40, 42.)  CFLA is not attorney-owned or operated.

22   (FAC ¶ 43.)  Therefore, Defendants concealed material facts regarding the Audits and

23   litigation documents from consumers and misrepresented the likely effectiveness of the

24   Audits and the qualifications of the individual that performed them in order to convince

25   consumers to purchase Defendants' services.  (FAC ¶ 45.)

26       Defendants charged and collected $1,495 from consumers prior to producing and

27   delivering an Audit and its litigation documents.  (FAC ¶ 18.)  Ultimately, Defendants

28   sold  more  than  2,000  of  these  purported  Audits  to  consumers.    (FAC  ¶ 20.)

Accordingly, the Bureau alleges that Defendants violated the CFPA, 12 U.S.C. §§ 5531, 5536(a), as well as Regulation O, 12 C.F.R. pt. 1015.  (FAC ¶¶ 46–59.)  The Bureau asserts five counts against Defendants which include: (1) Advance Fees in Violation of Regulation O; (2) Prohibited Representations in Violation of Regulation O; (3) Deceptive Acts or Practices in Violations of the CFPA; (4) Abusive Acts or Practices in Violation of the CFPA; (5) Violations of the CFPA Arising from Regulation O Violations.  (FAC ¶¶ 60–91.)  Defendants now move to dismiss the Bureau's Complaint, enlargement of time, and withdrawal of counsel as to Lehman.  (*See* Mots.)

### III.   LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim.  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  The factual "allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  A court is generally limited to the pleadings and "must construe all factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks omitted).  But a court need not blindly accept conclusory allegations, "unwarranted deductions of fact, and unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

1

## IV.    DISCUSSION

2      The Court first considers Defendants' motion to dismiss, then the motion for

3   enlargement, and finally the motion for withdrawal.

4   **A.    Defendants' Motion to Dismiss**

5      Although presented in a scrambled-egg fashion, Defendants contend that the

6   Court must dismiss the Bureau's FAC for the following reasons: (1) the Bureau is an

7   unconstitutional agency; (2) Defendants fall within neither the CFPA nor Regulation O;

8   (3) the Bureau has failed to adequately allege claims pursuant to the CFPA or

9   Regulation O.  (Mot. 11–21.)  The Court addresses each argument in turn.

10      *1.    Defendants' Constitutional Objections*

11      Defendants make two constitutional arguments as to why the Bureau cannot

12   assert claims, which include (1) the Bureau's establishment violates separation of

13   powers; (2) the Bureau is an unconstitutional agency, and thus, it cannot bring an

14   enforcement action.  (Mot. 11–13.)  Defendants' arguments fail.  Binding precedent

15   holds that the Bureau as an organization and its establishment are constitutionally

16   permissible.  *Consumer Fin. Prot. Bureau v. Seila Law LLC*, 923 F.3d 680, 683 (9th

17   Cir.), *cert. granted*, 140 S. Ct. 427 (2019).  Therefore, Defendants motion to dismiss on

18   this basis is **DENIED**.

19      *2.    Whether the CFPA and Regulation O Apply to CFLA and Lehman*

20      Defendants assert that the Bureau has failed to allege facts to establish that they

21   are subject to the CFPA or Regulation O.  (Mot. 14–15.)  However, Defendants'

22   arguments dispute the alleged facts and attempt to argue the merits of the case, rather

23   than address whether the Bureau has sufficiently pleaded.  For instance, Defendants

24   contend that they do not sell Audits to consumers, the alleged Audits are "factual

25   informative material," they provide only forensic audits, and thus, the Audits are not

26   services falling under the CFPA or Regulation O. (Mot. 14–15, 20–22.) At the pleading

27   stage, Defendants argument fails where the Court "must construe all factual allegations

28

5

set forth in the complaint . . . as true and . . . in the light most favorable" to the Bureau. *Lee*, 250 F.3d at 688.

Here, the Bureau adequately pleads that Defendants are covered by the CFPA and Regulation O.  The CFPA holds that an entity providing financial advisory services is one that "assist a consumer with . . . modifying the terms of any extension of credit, or avoiding foreclosure."  12 U.S.C. § 5481(15)(A)(viii)(II).  Regulation O provides that Mortgage Assistance Relief Service means sale of any service, plan, or program to assist or attempt to assist the consumer with "[s]topping, preventing, or postponing any mortgage or deed of trust foreclosure sale for the consumer's dwelling, any repossession of the consumer's dwelling, or otherwise saving the consumer's dwelling from foreclosure or repossession."  12 C.F.R. § 1015.2.  The Bureau alleges that Defendants market and sell Audit and litigation documents to consumers, which Defendants claim will prevent foreclosure or modify the terms of their mortgage.  (FAC ¶¶ 14–16, 21–24.)  For instance, the Bureau asserts that Defendants held themselves out as "The Nation's Leading Experts in Foreclosure Defense," and provided a "[c]omplete turn-key lawsuit to sue your lender for damages."  (FAC ¶¶ 14, 16, 24.)  Moreover, before providing mortgage-assistance-relief, Defendants charged and collected $1,495 from consumers before producing and delivering an Audit and litigation documents.  (FAC ¶ 18.)  Therefore, as alleged, Defendants are subject to the CFPA and Regulation O. *See Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1192–95 (9th Cir. 2016) (finding the CFPA and Regulation O covered a defendant who offered forensic audits).

Accordingly, Defendants motion to dismiss on this basis is **DENIED**.

### 3. *Whether The Bureau Asserts a Claim Under CFPA and Regulation O*

Defendants assert two reasons why the Bureau's third and fourth claims for deceptive and abusive acts or practices in violation of the CFPA fail.  First, Defendants argue the Bureau has failed to plead facts establishing a substantial injury to consumers or that the injury is not outweighed by countervailing benefits to homeowners.  (Mot. 15–18.)  Second, Defendants argue the Bureau has failed to plead any facts that

Defendants have taken unreasonable advantage of consumers pursuant to section 5531(d).  (Mot. 19.)  The Bureau argues it has sufficiently pleaded all the requisite elements of its claims and need not allege the facts demanded by Defendants.  (Opp'n to Mot. 9, ECF No. 47.)

First, Defendants argue that the Bureau has no authority under section 5531(a) to bring claims pursuant to section 5531(d)(2)(A) and 5536(a)(1)(B) as the Bureau has not alleged facts to establish that Defendants engaged in a practice likely to cause substantial injury.  (Mot. 17.)  This argument is unpersuasive.  The Bureau correctly highlights that substantial injury and countervailing benefits are elements to an unfairness claim under section 5531(c)(1), and not to the deceptive and abusive practices claims that the Bureau pleads.  (Opp'n 9.)

The Ninth Circuit holds that an act or practice is "deceptive" pursuant to section 5536(a)(1)(B) if: (1) "there is a representation, omission, or practice that," (2) "is likely to mislead consumers acting reasonably under the circumstances," and (3) "the representation, omission, or practice is material." *Gordon*, 819 F.3d at 1192.  "An act or practice is 'abusive' if, among other things, defendants have taken 'unreasonable advantage of the consumer's lack of understanding of the material risks, costs, or conditions' of, the service or product they are selling." *Consumer Fin. Prot. Bureau v. Nationwide Biweekly Admin., Inc.*, No. 15-CV-02106-RS, 2017 WL 3948396, at *2 (N.D. Cal. Sept. 8, 2017) (quoting 12 U.S.C. § 5531(d)(2)(A)).  Thus, substantial injury and countervailing benefits are not requisite elements of the Bureau's third and fourth claims for deceptive and abusive acts or practices.  Therefore, Defendants motion to dismiss on this basis is **DENIED**.

Second, Defendants argue that the Bureau cannot assert a claim under section 5531(d) because Defendants have not taken unreasonable advantage of consumers.  (Mot. 19.)  Here, at the pleading stage, Defendants inappropriately argue the merits of the Bureau's claims, and scantily state that the Bureau "failed to plead any facts." *See Lee*, 250 F.3d at 688; (Mot. 19.)  Not so.  For instance, the Bureau alleged that

Defendants made numerous false and misleading representations by: telling consumers that the Audits and litigation documents would provide them an effective defense to a foreclosure action or help them obtain loan modifications (FAC ¶ 21); telling consumers that the Audits and litigation documents would contain certain specific categories of cutting-edge, advanced analyses, and that the Audits would uncover information that included defects in the assignment or securitization of a consumer's mortgage (FAC ¶ 22); and charging consumers up to $1,495 for their services before providing any mortgage-assistance-relief (FAC ¶ 18).  Therefore, the Bureau has adequately pleaded that Defendants took money from consumers by misleading consumers such that they did not understand the true quality and effectiveness of the purchased services.  *See* 12 U.S.C. § 5531(d)(2)(A); *Nationwide Biweekly Admin., Inc.*, 2017 WL 3948396, at *2. Defendants motion to dismiss on this basis is **DENIED**.

**B.    Request for Enlargement of Time to Answer FAC**

Defendants request that the Court grant them an enlargement of time to respond to the Bureau's FAC.  Defendants assert that CFLA California is suspended and cannot respond to the Bureau's FAC until it is reinstated and revived.  (Mot. II 2.)  Therefore, it requires additional time to start the process of revivor.  (Mot. II 2–4.)  Defendants assert that CFLA California began the process on December 3, 2019, and estimates that the suspended status should be lifted in or about March 2020.  (Mot. II 4.)  However, Defendants have proffered no current information regarding the status of the revivor to this Court.  Therefore, the Court **DENIES without prejudice** Defendants' request for enlargement of time to answer the FAC.

**C.    Withdrawal of Counsel**

Defendant Lehman seeks to proceed *pro se* and have Atighechi withdraw as his counsel.  (*See* Mot. III.)  Counsel asserts that Lehman desires to act as co-counsel during trial, which is only possible if he is self-represented, and wishes autonomy in all aspects of litigation including filing motions, discovery, and handling his trial.  (Mot. III 3.)  Counsel noticed the motion for hearing on April 20, 2020, at 1:30 p.m., making any

written opposition due no later than March 31, 2020.  C.D. Cal. L.R. 7-9.  Lehman and the Bureau did not file an opposition.

"An attorney may not withdraw as counsel except by leave of court."  C.D. Cal. L.R. 83-2.3.2; *see also Darby v. City of Torrance*, 810 F. Supp. 275, 276 (C.D. Cal. 1992).  "A motion for leave to withdraw must be made upon written notice given reasonably in advance to the client and to all other parties who have appeared in the action . . . and must be supported by good cause."  C.D. Cal. L.R. 83-2.3.2.   In determining whether good cause is shown, a court may consider: "(1) the reasons why withdrawal is sought; (2) the prejudice withdrawal may cause to other litigants; (3) the harm withdrawal might cause to the administration of justice; and (4) the degree to which withdrawal will delay the resolution of the case."  *Liang v. Cal-Bay Int'l, Inc.*, No. 06-cv-1082–WMc, 2007 WL 3144099, at *1 (S.D. Cal. Oct. 24, 2007).

Counsel argues that permissive withdrawal is warranted because Lehman wishes to proceed *pro se* and independently run his own defense.  (Mot. III 3.)  Lehman has not challenged Counsel's representations, and seeks to proceed *pro se*.  (Decl. of Andrew P. Lehman ¶¶ 12–16, ECF No. 60-1.)  However, "[u]nless good cause is shown and the ends of justice require, no substitution or relief of attorney will be approved that will cause delay in prosecution of the case to completion."  C.D. Cal. L.R. 83-2.3.5.  Here, although Counsel's withdrawal will leave Lehman *pro se*, it should not cause delay or prejudice in this action.  The Court has not set a trial date yet and no scheduling conference date has been set, so the likelihood of delay is minimal.  It is apparent from Lehman's Declaration that Counsel has notified Lehman in writing that Counsel seeks leave to withdraw as his attorney and afforded Lehman time to seek substitute counsel.  (*See generally* Decl. of Andrew P. Lehman.)  Further, the Court received no opposition or objection to Counsel's Motion, including from the Bureau or Lehman, indicating a lack of prejudice to other litigants.  Accordingly, the Court finds good cause to permit Counsel to withdraw from representation.

As Counsel has established good cause for withdrawal, and it does not appear

that withdrawal will unduly prejudice the parties, harm the administration of justice, or unduly delay the resolution of this case.  Accordingly, the Court **GRANTS** Counsel's Motion for Leave to Withdraw as Lehman's Counsel pending the conditions below.

## V.    CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendants' Motion to Dismiss (ECF No. 42), **DENIES** Defendants' Motion for Enlargement of Time (ECF No. 43), and conditionally **GRANTS** Defendants' Motion for Leave to Withdraw as Counsel for Defendant Lehman (ECF No. 60).  Therefore, the Parties application for order is **DENIED** as moot.  (ECF No. 65.)  It is hereby ordered that:

1.  Counsel shall file with the Court a (Proposed) Order on Request for Approval of Substitution or Withdrawal of Attorney, G-01 Order, providing Lehman's contact information, including his mailing address, e-mail address, and telephone number, **within five days** of the date of this Order.

2.  Counsel may withdraw from representation of Lehman in this action upon filing the (Proposed) Order.

3.  Counsel shall serve a copy of this Order on Lehman and file a proof of such service with the Court **within five days** of the date of this Order.

**IT IS SO ORDERED.**

May 20, 2020

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**