O

# United States District Court
# Central District of California

| | |
|---|---|
| BUREAU OF CONSUMER FINANCIAL PROTECTION,<br><br>    Plaintiff,<br><br>    v.<br><br>CERTIFIED FORENSIC LOAN AUDITORS, LLC et al.,<br><br>    Defendants. | Case № 2:19-cv-07722-ODW (JEMx)<br><br>**ORDER DENYING MOTION TO INTERVENE AND REOPEN [98]** |

## I.    INTRODUCTION

On June 24, 2025, nearly five years after the Court entered Final Judgment in this case, nonparties Mark Burke and his mother, Joanna Burke (the "Burkes"), proceeding pro se, move to reopen the case and intervene as a matter of right under Federal Rule of Civil Procedure ("Rule") 24(a).  (Mot. Intervene & Reopen ("Motion" or "Mot") 1, Dkt. No. 98; *see* Final J. ¶¶ 10–30, Dkt. No. 93.)   For the reasons discussed below, the Court **DENIES** the Burkes' Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND[2]

On September 6, 2019, Plaintiff Bureau of Consumer Financial Protection (the "Bureau") filed this civil enforcement action against Defendants Certified Forensic Loan Auditors, LLC (California); Certified Forensic Loan Auditors, LLC (Texas); Andrew Lehman; and Michael Carrigan, alleging violations of the Consumer Financial Protection Act ("CFPA") and other applicable regulations in connection with offering, advertising, marketing, and selling purported financial-advisory and mortgage assistance relief services. (Compl., Dkt. No. 1.)

On July 20, 2020, pursuant to the parties' stipulation, the Court entered a Final Judgment resolving all claims in this case against Defendants. (*See generally* Final J., Dkt. No. 93.) The Final Judgment required Defendants to pay restitution damages, civil penalties, and other monetary relief to provide redress to affected consumers. (*Id.* ¶¶ 10–30.) Subsequently, from November 2020 to October 2024, the Bureau administered a comprehensive redress distribution program. (Decl. Rumana Ahmad ISO Opp'n ("Ahmad Decl.") ¶¶ 2–6, Dkt. No. 101-1.) In February 2024, the Bureau stopped accepting new claims relating to this case, and in October 2024, the Bureau concluded the distribution of funds. (*Id.* ¶ 6.)

On June 24, 2025, nearly five years after the Court entered Final Judgment in this case, and over a year after the Bureau closed its redress distribution program, the Burkes filed the instant Motion. (Mot.) The Burkes ask the Court to reopen the case and allow them to intervene as of right under Rule 24(a). (*Id.* at 1, 11)

## III. LEGAL STANDARD

Intervention is a procedure by which a nonparty can gain party status without the consent of the original parties. *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933 (2009) ("[I]ntervention is the requisite method for a nonparty

---

[2] The Court restates only the factual background that is relevant to the disposition of this Motion. All factual references following the Court's entry of Final Judgment in this case derive from the parties' papers filed in connection with this Motion.

to become a party to a lawsuit."). Rule 24 contemplates two types of intervention: intervention as a matter of right and permissive intervention. Fed. R. Civ. P. 24.

Intervention as a matter of right under Rule 24(a) requires an applicant to show that (1) the application is timely; (2) the applicant has a "significant protectable interest relating to the property or transaction" at issue; (3) "the disposition of the action may, as a practical matter, impair or impede" the applicant's ability to protect that interest; and (4) the applicant's interest is inadequately represented by the existing parties. *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). The applicant bears the burden of establishing these four elements. *Id.* "Failure to satisfy any one of the requirements is fatal to the application, and [the court] need not reach the remaining elements if one of the elements is not satisfied." *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

## IV.  DISCUSSION

Timeliness is a "threshold requirement" for intervention under Rule 24(a). *Donnelly v. Glickman*, 159 F.3d 405, 409–12 (9th Cir. 1998). The Court finds that the Burkes fail to meet this requirement.

To determine whether a motion to intervene is timely, the Ninth Circuit considers three factors: (1) the "stage of the proceedings" at which an applicant seeks to intervene; (2) the prejudice to the existing parties; and (3) the reason for and length for the delay. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997) (quoting *Orange County v. Air Cal.*, 799 F.2d 535, 539 (9th Cir. 1986)). Prejudice is the "most important" consideration in deciding whether a motion for intervention is timely. *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990).

All three factors strongly weigh against timeliness. First, the Burkes seek intervention nearly five years after the Court entered Final Judgment in this case. (J. (entered July 20, 2020); *see* Mot. (filed June 24, 2025).) "Allowing intervention after final judgment is highly disfavored because it results in severe prejudice to the other parties to the action." *Roman Cath. Bishop of Monterrey v. Cota*, No. 2:15-cv-08065-

JFW (RAOx), 2016 WL 320741, at *4 (C.D. Cal. Jan. 8, 2016), *aff'd sub nom.*, *Roman Cath. Bishop of Monterey v. Cota*, 711 F. App'x 428 (9th Cir. 2018). Indeed, this matter was fully resolved on July 20, 2020, when the Court entered the Final Judgment. (*See* Final J.) Following the entry of judgment, the Bureau "oversaw a redress distribution process to [a]ffected [c]onsumers, which closed in February 2024." (Opp'n 1–2, Dkt. No. 101; *see* Ahmad Decl. ¶ 6.)

On June 24, 2025, the Burkes filed this Motion, nearly five years after the entry of Final Judgment and a year after the Bureau closed the redress distribution program. (Opp'n 1–2; Ahmad Decl. ¶ 6.) Intervention at this stage is untimely as there is no ongoing proceeding in which to intervene. *See Air Cal.*, 799 F.2d at 538 (finding motion to intervene untimely when filed after a court-approved settlement following five years of litigation).

Second, allowing intervention here would significantly prejudice the parties and undermine the finality of judgment. *See Oregon*, 913 F.2d at 588 (finding prejudice where intervention would challenge a complex and balanced plan achieved after four years of negotiation); *Wilson*, 131 F.3d at 1304 (finding prejudice where the applicant waited twenty-seven months before moving to intervene). The Bureau indicates that it completed its obligations under the Final Judgment and closed the redress distribution program. (*See* Final J.; Opp'n 1–2; *see also* Ahmad Decl. ¶ 6–7.) Specifically, the Bureau "stopped accepting new claims relating to this case in February 2024 and concluded distribution of funds in October 2024." (Ahmad Decl. ¶ 6.) Moreover, "[t]he dedicated phone line and email address were deactivated on December 31, 2024," and [t]he dedicated matter website was deactivated on January 8, 2025." (*Id.*) The Bureau "did not identify anyone by the name of Joanna Burke or Mark Burke" as an affected consumer using the data provided by the Defendants. (*Id.* ¶ 7 (indicating that the Bureau has "no record of either individual submitting a claim form, a request for a claim form, or a request for information about the claims process in connection with this case").) Allowing the Burkes to intervene would require the Court to reopen

4

a case that has been fully resolved for years, disrupt the Bureau's completed administration of monetary redress, and undermine the certainty and finality of judgment promised to the affected consumers and the regulated entities. *See Cota*, 2016 WL 320741, at *4 (holding that delayed intervention "would not only be attempting to undermine the final judgment" but "would also unfairly disturb the myriad of subsequent agreements negotiated and entered into in good faith" by the original parties to this action).

Finally, the Burkes offer no compelling justification for their years-long delay. *See Alisal*, 370 F.3d at 923 (holding that an intervenor must provide a reason for its delay in seeking intervention). The Burkes merely contend that this Motion "follows Lehman's attempt to domesticate a void judgment of nearly $2 million and [Lehman's] threat's to foreclose on the Burkes residence, further emphasizing the urgency of their intervention." (*Id.* at 13.) In support of their argument that the Motion is timely, the Burkes also state that "[t]his case involves a 5-year period tied to the suspended judgment and deferred penalties." (*Id.*) They also make a vague reference to certain "recent developments" that follow "political changes after the 2024 election and the [Bureau's] 'deactivation.'" (*Id.*)

It is unclear, however, how any of these assertions, alone or in the aggregate, support the finding that the Burkes' Motion is timely. The Burkes do not explain how Lehman's judgment against Mark Burke, whether void or not, is related to *this* civil enforcement action. (*See id.*) The Burkes also fail to explain to what "suspended judgment and deferred penalties" they are referring. (*Id.*) While the Final Judgment here contains an order-distribution and record-keeping provision that is effective for five years after the entry of the Final Judgment, (Final J. ¶ 36), the Burkes fail to explain how this provision justifies their delay in seeking to intervene in this case. The Burkes also fail to explain how the alleged "recent developments" or "[p]olitical changes" following the 2024 election support their position that the Motion is timely. (*See* Mot. 13.)

By their own admission, the Burkes have been litigating issues relating to Lehman for years. (*Id.* at 9–11.) None of their contentions help the Court understand why they did not move to intervene during the pendency of the proceedings, at the time of the Final Judgment, or even during the Bureau's administration of the redress distribution program. The significant lapse of time, coupled with the Burkes' failure to justify their delay in seeking intervention, defeats their Motion. *See Wilson*, 131 F.3d at 1304 (holding that untimeliness defeats a motion for intervention).

The Court finds the Burkes' Motion untimely. Accordingly, the Court need not reach the other requirements for intervention. *See Perry*, 587 F.3d at 950 ("Failure to satisfy any one of the requirements is fatal to the application, and [the court] need not reach the remaining elements if one of the elements is not satisfied."). Accordingly, the Burkes' request for intervention is **DENIED**.

## V. CONCLUSION

For the reasons discussed above, the Burkes failed to satisfy the requirements for intervention. Accordingly, the Court **DENIES** their Motion to Intervene and Reopen. (Dkt. No. 98.)

**IT IS SO ORDERED.**

December 11, 2025

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　**OTIS D. WRIGHT, II**
　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**